IN THE UNITED STATES DISTRICT COURT     JUDGE KAPLAN
SOUTHERN DISTRICT OF NEW YORK

Saadya Mastafa                )
                       )
and                         )
                       )
Kafia Ismail                 )
           Plaintiffs,        )
                       )
      v.                    )
                       )
Australian Wheat Board Limited aka AWB )
Limited and AWB (U.S.A.) Limited       )
ODS Tower                )
601 SW Second Avenue, Suite 1510     )
Portland, Oregon 97204          )
                       )
and                         )
                       )
Banque Nationale de Paris Paribas     )
BNP Paribas              )
787 Seventh Avenue           )
New York, NY 10019          )
                       )
          Defendants.        )

Case No.: 07 CIV 7955

Judge:

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

RECEIVED
SEP 1 0 2007
U.S.D.C. S.D.N.Y.
CASHIERS

## I.  Introduction

The Defendants in this action provided support and aid for Saddam Hussein and the individuals who carried out the atrocities hereafter complained of ("Saddam Hussein regime") during a period of time when such support and aid was used to commit massive instances of torture, cause widespread disappearances, and the unlawful killings of the Plaintiffs' spouses and the members of their class.  The claims herein arise out of the Defendants' support and aid of the Saddam Hussein regime which openly and routinely committed torture, caused forced

disappearances, and committed widespread extrajudicial killings during the period in which the Defendants were supporting the Saddam Hussein regime through kickbacks and other unlawful payments.

The Defendants negligently and/or knowingly aided and abetted the most egregious abuses of human rights by paying kickbacks and other unlawful payments to the Saddam Hussein regime in violation of international law under the United Nations Oil-for-Food Program which was instituted through Security Council Resolution 986. **Exhibit 1.** The Defendants conspired with the Saddam Hussein regime to maintain control and power over Iraq in order to secure mutual financial benefits through the egregious affronts on the human rights of the Plaintiffs and the members of their class. The Defendants were accomplices in the egregious human rights violations complained of herein. These claims arise out of common law tort under the Alien Tort Statute 28 U.S.C. §1350, the Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. §1350 (2000), and the common law of New York.

## II. Jurisdiction and Venue

### A. Subject Matter Jurisdiction

1.     Defendants are liable for the egregious human rights abuses that they participated in, including extrajudicial killings, torture, and/or the other actions complained of herein as prohibited by customary international law and Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. §1350 (2000)) (hereinafter "TVPA").

2.     The international community, including Nation-States, non-governmental organizations, and International Organizations, have arrived at a universal consensus prohibiting acts of torture,

2

extrajudicial killings, inhumane and degrading treatment, acts of terrorism, and other actions included in the crimes of genocide, war crimes, and crimes against humanity.

3.    Defendants are liable for violations of customary international law and treaty law prohibiting the commission of crimes against humanity and/or human rights violations.

4.    This Court has jurisdiction based upon Alien Tort Claims Act 28 U.S.C. §1350 (hereinafter "Alien Tort Statute"); 28 U.S.C. §1331; and §28 U.S.C. §1332. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

5.    No Nation-State (hereinafter "State") condones the acts of torture, extrajudicial killings, inhumane and degrading treatment, acts of terrorism, and other acts included in the crimes of genocide, war crimes, and crimes against humanity.

6.    The prohibition against acts of torture, extrajudicial killings, inhumane and degrading treatment, acts of terrorism, and other acts included in the crimes of genocide, war crimes, and crimes against humanity is non-derogable and therefore binding at all times against all actors.

7.    The prohibition against acts of torture, extrajudicial killings, inhumane and degrading treatment, acts of terrorism, and other acts included in the crimes of genocide, war crimes, and crimes against humanity are jus cogens violations and are thus subject to universal jurisdiction.

8.    The egregious nature of the acts, including but not limited to acts of torture, extrajudicial killings, inhumane and degrading treatment, acts of terrorism, and other acts included in the crimes of genocide, war crimes, and crimes against humanity and the extensive documentation of such acts is sufficient criteria to determine that the acts indeed amount to the prohibited acts and those acts do violate the law of nations, the Alien Tort Statute, and the TVPA.

**B.  Personal Jurisdiction**

9.      This Court has personal jurisdiction over all of the named Defendants as each of the Defendants availed itself to this Court's jurisdiction by conducting the bulk of the underlying transaction at issue in this case within the Southern District of New York.  Both of the Defendants maintained and operated offices within the Southern District of New York during all times relevant to this complaint.

10.     Each of the Defendants was doing business in New York and is therefore subject to the jurisdiction of this forum.

**C.  Venue**

11.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§1391(b)(3) and (d) because a substantial part of the actions and omissions giving rise to the claims herein complained of occurred in this District. Specifically, at all times relevant, AWB maintained a bank account in New York through which it made unlawful payments to the Saddam Hussein regime.  Also, AWB maintained an office in New York which it used to plan, monitor, and effect the scheme of shipments and payments to the Saddam Hussein regime under the guise of, but outside the scope of, the UN Oil For Food Program (which was headquartered in New York City).  The General Manager of the AWB New York Office knowingly and actively participated in the illegal payment scheme to the Saddam Hussein regime which served to aid and abet the torture and murder of the Plaintiffs' spouses and the members of their class.

12.     BNP Paribas maintained and operated an office within the Southern District of New York during all times relevant which it used to conduct activity related to the escrow account complained of herein.

**D.  Standing**

13.     The Plaintiffs' causes of action are for personal injury, specifically the wrongful death of spouses and their pain and suffering.

14.     The Plaintiffs' damages were directly and proximately caused by the actions of the Defendants.   The Defendants acting together with the Saddam Hussein regime, supported, assisted, bolstered, and aided the Saddam Hussein regime in violation of international law, with full knowledge of the acts of torture, extrajudicial killings, inhumane and degrading treatment, acts of terrorism, and other acts included in the crimes of genocide, war crimes, and crimes against humanity.

15.     The injuries which the Plaintiffs and the members of their class have sustained are properly subject to redress from the Defendants through the causes of action herein asserted

**E.  Forum Non Conveniens**

16.     Due to the nature of the alleged acts, including but not limited to the fact that there are several jus cogens violations at issue, the United States has a substantial interest in affording alleged victims of atrocities a method by which they may vindicate their rights.

17.     Due to the special relationship between the United States and Iraq, the United States has a substantial interest in affording victims of the atrocities conducted by the Saddam Hussein regime a method by which they may vindicate their rights.

18.     Due to the current and past state in security, instability, and lack of rule of law, there is no better or more convenient forum for the Plaintiffs and the members of their class to have their case heard.

19.     Due to the unique circumstances of the United Nations involvement in the issues of this matter and the fact that they are headquartered and that much of the documentation and

witnesses are located in New York, the United States and specifically New York has a special interest and is a uniquely convenient location for the adjudication of this matter.

**F.  Act of State Doctrine Does Not Apply**

20.     Iraq has a new government and new Constitution.  The adjudication of this case in this Court will not interfere with United States/Iraqi relations.  The new government of Iraq has and will repudiate the actions of the Saddam Hussein regime.  Specifically, the Iraqi government tried, convicted, and executed the former head of the regime, Saddam Hussein, for some of the atrocities that the Plaintiffs and the members of their class complain of herein.

**G.  Statute of Limitations**

21.     The conduct of the Defendants complained of herein is part of a joint action which constitutes crimes against humanity, war crimes, and genocide.  Therefore, no statute of limitations applies to the claims of the Plaintiffs and the members of their class.

22.     Any claims that may be determined to be subject to a statute of limitations were tolled until the Plaintiffs and the members of their class were on notice of their potential claims which did not occur until after the Saddam regime fell and the investigations into to Oil For Food Program were disclosed to the public.

**H.  Equitable Tolling Doctrine**

23.     The Plaintiffs and members of their class could not have learned of their claims against the Defendants any earlier than 2003, when the conduct of the Defendants was discovered by the public.  The Plaintiffs and the members of their class did not know what had become of their spouses or loved ones and/or did know of AWB's and BNP's Paribas involvement.

24.    The Plaintiffs had no ability to bring their claims before a court of law until some point after the fall of the Saddam Hussein regime. They had no access to justice within Iraq and no means of bringing their claims outside of Iraq.

### III.    Parties

#### A.  Plaintiffs

25.    Plaintiff Saadya Unis Mastafa ("Mastafa")is a Kurdish woman who has lived and continues to live in Erbil, Iraq. Her husband, Khalid Ibrahim Ahmed was a nurse in Northern Iraq until September 1, 1996 when he was captured by the Saddam Hussein regime and held until July 24, 1997 when the Saddam Hussein regime hung him along with fourteen other individuals. Mastafa's place of residence has been withheld for her own protection. It will be disclosed to the parties of this case when protective agreements are in place.

26.    Plaintiff Kafia Tahir Ismail ("Ismail")is a Kurdish woman who has lived and continues to live in Erbil, Iraq. Her husband was imprisoned and tortured by the Saddam Hussein regime from 2002 until he died on December 6, 2003 as a direct result of such torture. Ismail's place of residence has been withheld for her own protection. It will be disclosed to the parties of this case when protective agreements are in place.

#### B.  Defendants in the Food Stuff Industry who paid kickbacks and illegal surcharges in the Humanitarian Relief Program

27.    Defendant Australian Wheat Board Limited aka AWB Limited is an Australian corporation with headquarters located at 380 La Trobe Street, Melbourne, 2000, Victoria, Australia. AWB (U.S.A.) Limited is a Delaware corporation with its headquarters located at ODS Tower, Suite 1510, 601 SW Second Avenue, Portland, Oregon 97204. AWB (U.S.A.) Limited is a wholly owned subsidiary of AWB Limited. AWB Limited owns and controls its U.S.A. subsidiary. (The AWB Defendants as defined in this paragraph will be referred to

7

collectively as "AWB").  AWB is one of the largest wheat managers and marketers in the world.
It controls all of the wheat production in Australia and manages and markets such wheat as an
export throughout the world.

### C. Defendant who was the Escrow Bank, issued Letters of Credit, and Monitored Financial Transactions

28.     Defendant Banque Nationale de Paris Paribas S.A. ("BNP Paribas") is a French bank
headquartered at 16 Boulevard des Italiens, 75009 PARIS, France and has a United States
location at BNP Paribas, 787 Seventh Avenue, New York, NY 10019.  BNP Paribas is one of the
ten largest banks in the world.  It has about 150,000 employees and operates in over 85 countries.
It is a full service bank with core businesses including, Corporate and Investment Banking,
Retail Banking, Asset Management and Services, Real Estate Investment Company, and Capital
Investment Group.

## IV. Factual Allegations

29.     The Defendant Australian Wheat Board engaged in a pattern and practice of corruption
with utter disregard for the consequences of their actions beyond that of retaining market share in
one of their largest profit centers in the world, Iraq.

30.     Defendants AWB and BNP Paribas conducted itself with utter disregard for the law and
the sanctity of human life.

31.     As cited in the *Report of the Inquiry into Certain Australian Companies in Relation to the
UN Oil-For-Food Programme, Prologue,* pages xi-lxxix of 260 **(Exhibit 3)** ("Cole Inquiry"), the
independent investigation conducted by the Australian government into the AWB Oil For Food
scandal, AWB had a corporate culture which promoted the aid and substantial support of the
Saddam regime in order to reap substantial corporate profits.  The Report states:

> The conduct of AWB and its officers was due to a failure in corporate
> culture. The question posed within AWB was:  What must be done to

> maintain sales to Iraq? The answer given was: Do whatever is necessary
> to retain the trade. Pay the money required by Iraq. It will cost AWB
> nothing because the extra costs will be added into the wheat price and
> recovered from the UN escrow account. But hide the making of those
> payments for they are in breach of sanctions. (Cole Inquiry, Volume 1,
> Summary, recommendations, and background, Prologue, page xii.)

32.     The Saddam regime introduced an inland transportation fee of $12.00 per metric ton of

imported wheat.  This kickback was purportedly to transport the wheat from Umm Qasr to the

destination silo.  This fee was not allowed under the UN Oil For Food Program.

33.     The Cole Inquiry enumerates the actions and knowledge of Defendant AWB in the

kickback scheme to the Saddam regime, specifically to the Iraqi Grain Board ("IGB"):

> Mr. Emons, AWB's Regional Manager for Middle East and Africa, and
> Mr Hogan, from AWB's office in Cairo, went to Iraq in June 1999 to
> discuss the terms of tender with the IGB Director General, Mr Daoud.
> AWB learnt that the US$12.00 per metric tonne was to be included in the
> price quoted by AWB and thus recouped from the UN escrow account. It
> also learnt that the money was to be paid to 'maritime agents' in Iraq but
> that the payment could be made to an Iraqi bank in Amman, Jordan. The
> IGB was to provide to AWB details of the bank account into which the
> 'discharge and land transport' fee could be paid in Jordan. AWB
> understood from the June meeting that the US$12.00 fee was a payment
> going back to the Iraqi Government. (Cole Inquiry, Volume 1, Summary,
> recommendations, and background, Prologue, xiv.)

34.     According to the *Independent Inquiry Committee into the United Nations Oil-For-Food

Programme* ("Volcker Report") **(Exhibit 4, Table VII-Actual and Projected Illicit payments

on Contracts for Humanitarian Goods – Summary by Supplier. (www.iic-offp.org)**, AWB

paid $221,757,242 in kickbacks directly to the Saddam regime.

35.     Of that amount $ 139,274,494 was paid in the form of inland transportation fees.

(Volcker Report)

36.     The rest, $82,482,748, was paid in the form of After Sales Service Fee (a fee which

usually constituted 10% of the contract price and was paid to the Saddam regime.)  (Volcker

Report.)   The After Sales Service Fee was strictly enforced to all humanitarian goods providers by the Saddam regime.

37.     All illicit payments made by Defendant AWB to the Saddam regime were made possible by the Defendant BNP Paribas.

38.     All illicit payments by Defendant AWB were made directly to the UN escrow account which was exclusively by BNP Paribas.

39.     The payments made from the escrow account were made to the Saddam regime.

40.     Defendant AWB knew the payments were being made to the Saddam regime and that the purpose of the scheme was for the Saddam regime to obtain hard currency.

41.     The Saddam regime was under sanctions under Security Council Resolution 661 **(Exhibit 2)** which prohibited foreign corporations from transferring hard currency to the Saddam regime.

42.     Defendant AWB understood that payments of hard currency to the Saddam regime was prohibited by UN sanctions.

43.     Defendant AWB understood that it did not have to arrange for the transportation of the wheat from Umm Qasr to the final silo destination.  Defendant AWB knew that it was not responsible for the internal transportation of wheat within Iraq.

44.     Defendants gave substantial assistance and encouragement to the Saddam regime through their illicit payments of hard currency.

45.     Defendants agreed with the Saddam regime to violate international law in order to mutual benefit from the kickback scheme.

## V.    General Allegations

46.     Plaintiffs' causes of action arise under the violation of international and domestic law as defined in statutes, common law, agreements, declarations, conventions, resolutions and treaties,

including but not limited to the following: customary international law; treaties of the United States; resolutions of the Security Counsel of the United Nations; statutes and the common law of the United States; statutes and the common law of New York; and other applicable domestic, foreign and/or international laws.

47.    The claims herein under the law of nations are based on norms that are definable, obligatory, and universally accepted.

48.    The Defendants have breached their obligations to which they are bound by applicable international law, including but not limited to the following: Security Counsel resolutions; contractual obligations; violations of jus cogens norms; violations of international law; generally and widely accepted principles by the international community as attaching to non-state actors; customary international law; under the principles of agency law; under the principles of joint enterprise theory; and under the principles of civil conspiracy.

49.    The Defendants have breached non-derogable standards that apply to non-state actors including the jus cogens violations complained of here and are liable because they conspired and aided and abetted the Saddam Hussein regime in the commission of atrocities that amounted to crimes against humanity, war crimes, and genocide as defined by customary international law, jurisprudence of international courts and tribunals, and laws and treaties of the United States, including but not limited to the Convention Against Torture, Common Article III of the Geneva Conventions of 1949 and Protocol II of the Geneva Conventions, and the Convention on the Prevention and Punishment of the Crime of Genocide of 1948.

50.    The acts complained of herein were undertaken under color of law.

51.    The acts and injuries to Plaintiffs and to the members of their class, were part of a pattern and practice of systematic human rights violations designed, ordered, implemented and directed

with the knowledge, participation, and support of the Defendants and carried out by personnel acting at the direction of the Saddam Hussein regime and/or with their encouragement or acquiescence.

52.     The acts of torture, extrajudicial killings and other actions herein complained of were perpetrated as a part of a campaign of war crimes, crimes against humanity, and genocide conducted by the Saddam Hussein regime, and specifically the police, military and other persons under the control of the Saddam Hussein regime.

53.     The Defendants are vicariously liable to the Plaintiff under the ATS.  The Defendants acted as a part of a conspiracy with the Saddam Hussein regime, aided and abetted the regime, and they acted as an accomplice to the regime.

54.     The Defendants acted as part of a conspiracy to profit from violating the law of nations, specifically the Security Council Resolution 986 in an effort and with the intent to profit from such violations.

55.     The Defendants created an unlawful association with the Saddam Hussein regime in violation of the Security Council Resolution 986.

56.     The Defendants had the unlawful objection of profiting from violations of the Security Council Resolution 986 which was intended to bring the Saddam Hussein regime into compliance with international standards.

57.     An agreement, understanding and/or meeting of the minds existed between each Defendant and the Saddam Hussein regime in that each Defendant regularly transacted with the Saddam Hussein regime in violation of the Security Council Resolution 986 for mutual illicit profit.

58.     The Defendants committed a series of illegal acts by paying kickbacks to the Saddam Hussein regime in violation of the Security Council Resolution 986.

59.     The direct and proximate results of the violations of Security Council Resolution 986 were the injuries suffered by the Plaintiffs and the members of their class.

60.     The Defendants knowingly gave practical assistance and encouragement to the former regime of Iraq which had a substantial effect on the perpetration of the crimes.  The significant aid and financial support of the Defendants gave and/or boosted the means of the former regime of Iraq to continue its campaign of violence, crimes against humanity, war crimes, and genocide.

61.     The Defendants acted in concert with the Saddam Hussein regime to profit illicitly from the United Nations Oil for Food Program which was a direct and proximate cause of the harm suffered by the Plaintiffs and the members of their class.

62.     The Defendants acted as part of a common design with the Saddam Hussein regime to violate international law and receive illicit profits which was a direct and proximate cause of the harm suffered by the Plaintiffs and the members of their class.

63.     The Defendants knew that the Saddam Hussein regime was using the funds of the Oil for Food Program and the illicit payments paid by the Defendants to the Saddam Hussein regime to violate the law of nations and commit egregious human rights abuses including but not limited to jus cogens violations.

64.     Defendants gave substantial assistance and/or encouragement to the Saddam Hussein regime and its conduct of the campaign of genocide, crimes against humanity, and war crimes.

65.     The Defendants gave substantial assistance to the Saddam Hussein regime through the form of kickbacks and/or financial assistance in violation of the Security Council Resolution 986 which constitutes a breach of their duty to the Plaintiffs and the members of their class.  The

13

Security Council Resolution was designed and intended to weaken the Saddam Hussein regime to a point that it would be apt to follow and comply with international standards. The substantial assistance for the Saddam Hussein regime, in violation of the Security Council resolutions, thwarted the design and was a direct and proximate cause of the harm done to the Plaintiffs and the members of their class.

66.    The Defendants contributed to the injuries and damages sustained by the Plaintiffs and the members of their class in a material way by giving substantial assistance, encouragement, and funding in violation of the law of nations for the egregious atrocities committed by the Saddam Hussein regime, specifically the injuries suffered by the Plaintiffs and members of their class.

67.    The Defendants were reckless and indifferent as to the commission of the acts of torture, extrajudicial killings, inhumane and degrading treatment, acts of terrorism, and other acts included in the crimes of genocide, war crimes, and crimes against humanity.

### VI.    Class Allegations

68.    The Plaintiffs bring this action on their own behalf and as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23 (b)(3) on behalf of the following Class:

69.    All persons or their surviving immediate family members who were victims of torture, extrajudicial killings, disappearances, rape and/or murder by and through the actions of the Saddam regime within the territory of Iraq from 1996 through March 2003.

70.    Plaintiffs do not know the exact number of members of their class. However, the members of their class are at least in the thousands based on the multitude of reports by international organizations and non-governmental organizations which document the Saddam

Hussein regime violations during the relevant time period.  Their class is sufficiently numerous and are so geographically dispersed, across Iraq and the world, that joinder is impracticable.

71.     Plaintiffs' claims are typical of the claims of the other Class members.

72.     There are questions of law and fact common to all their class members, including but not limited to:

a)     Whether AWB's and BNP Paribas's conduct constitutes aiding and abetting the Saddam Hussein regime in their violent campaign to maintain power;

b)     Whether AWB and  BNP Paribas's participation in the conspiracy was the proximate cause of  the death and suffering the of Plaintiffs and their families;

c)     Whether the Saddam Hussein regime's actions during the relevant time period constitute war crimes;

d)     Whether the Saddam Hussein regime's actions during the relevant time period constitute crimes against humanity;

e)     Whether the Saddam Hussein regime's actions during the relevant time period constitute genocide;

f)     Whether the Saddam Hussein regime's actions during the relevant time period constitute extrajudicial killings;

g)     Whether the Saddam Hussein regime's actions during the relevant time period constitute forced disappearances;

h)     Whether the Saddam Hussein regime's actions during the relevant time period constitute cruel, inhuman, and/or degrading treatment and/or punishment;

i)     Whether the Saddam Hussein regime's actions during the relevant time period constitute violations of the TVPA;

j)     Whether the Defendants are liable under the wrongful death statute, N.Y. Estates, Powers and Trusts Laws §5-4.1 (McKinney 2007) ;

k)     Whether the Saddam Hussein regime's actions during the relevant time period constitute negligence;

l)     Whether the Saddam Hussein regime's actions during the relevant time period constitute battery;

m)     Whether the Saddam Hussein regime's actions during the relevant time period constitute intentional infliction of emotional distress;

n)       Whether the Saddam Hussein regime's actions during the relevant time period constitute negligent infliction of emotional distress;

o)       Whether AWB, the Saddam Hussein regime and its agency the IGB, and BNP Paribas agreed to participate in an unlawful act; and

p)       Whether AWB and BNP Paribas acted intentionally, recklessly, or negligently in its unlawful support and aid of the Saddam regime.

73.    The common questions of law and fact predominate over any questions that may affect only individual members.

74.    Plaintiffs are represented by counsel competent and experienced in the prosecution of class action litigation, and will fairly and adequately protect he interests of the members of their class.

75.    Plaintiffs' interests are aligned with, and not antagonistic to, the interests of the other members of their class with respect to the subject matter of this litigation.

76.    A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.

### First Claim For Relief
### Crimes Against Humanity

77.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 76 as if fully set forth herein.

78.    The abuses committed against the Plaintiffs and the members of their class by the Defendants constitute crimes against humanity.

79.    Defendants supported, contributed to, aided and abetted, and participated in the furtherance of the murder and torture of the spouses of the Plaintiffs and the members of their class.

16

80.    The murders and torture perpetuated by the Saddam Hussein regime was part of a systematic and/or widespread attack against the Plaintiffs and the members of their class, all of whom were a part of a civilian population.

81.    The Plaintiffs' spouses and the members of their class did not bear arms, were not part of a militia or fighting force, and did wear a uniform of a fighting faction.  The spouses of the Plaintiffs and the members of their class were civilians.

82.    Defendants, by participating in the furtherance of those inhuman actions, caused great suffering, serious bodily injury, death and serious mental and emotional suffering for the Plaintiffs and the members of their class.

83.    Defendants' acts and omissions constitute "torts committed in violation of the law of nations or a treaty of the United States" under 28 U.S.C. §1350 and also customary international law prohibiting crimes against humanity as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

84.    The Defendant Australian Wheat Board aided and abetted the Saddam Hussein regime by knowingly providing practical assistance and/or encouragement through direct payments in violation of international law which had the substantial effect on the perpetration of the torture, genocide and other actions herein complained of.

85.    The Defendant BNP Paribas aided and abetted the Saddam Hussein regime by knowingly providing knowing practical assistance and/or encouragement through offering and providing an escrow account where the funds were held, analyzed for compliance with the Security Counsel Resolution 986, and nevertheless disbursed to the Saddam Hussein Regime and used in furtherance of the actions herein complained of.

86.     The acts and omissions constituting crimes against humanity caused Plaintiffs and the members of their class to suffer damages, including severe physical and mental pain, suffering and death, in amounts to be determined at trial.

87.     Defendants' acts and omissions were deliberate, willful, intentional, wanton, malicious, and/or oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.

**Second Claim for Relief**
**War Crimes**

88.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 87 as if fully set forth herein.

89.     The Saddam Hussein regime with the aid, support, and participation of the Defendants committed acts of violence against persons taking no active part in the hostilities, including:

   a)     violence to the Plaintiffs' spouses, in particular, murder, mutilation, cruel treatment and torture;

   b)     committed outrages upon personal dignity, in particular humiliating and degrading treatment; and/or

   c)     the carrying out of executions without previous judgments pronounced by any regularly constituted court, affording no judicial processes which are universally recognized as indispensable.

90.     The actions of the Saddam Hussein regime were more than a discrete disturbance or tension, such as a riot.  The continued violence against the Plaintiffs and the members of their class were not isolated and/or sporadic acts of violence.  The continued campaign against the members of their class constituted an internal armed conflict.

91.     As an example of the actions herein complained of, the Saddam Hussein regime captured, tortured, and murdered Saadya Mustafa's spouse, Khalid Mustafa, a nurse, caring for individuals who had been wounded in Saddam Hussein regime's attacks on the Kurdish people.  He was a

18