Robert S. Bennett
Alan Kriegel
Jennifer L. Spaziano (pro hac vice)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue NW
Washington, DC 20005
(202) 371-7000
Email: jen.spaziano@skadden.com

William J. O'Brien, III
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Email: wobrien@skadden.com

Attorneys for Defendant BNP Paribas

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

SAADYA MASTAFA and KAFIA ISMAIL,

               Plaintiffs,

     - against -

AUSTRALIAN WHEAT BOARD LIMITED a/k/a
AWB LIMITED and AWB (U.S.A.) LIMITED; and
BNP PARIBAS,

               Defendants.

------------------------------------------------------------- x

| : |
| : |

Civil Action No.
07-CV-7955 (GEL)

ECF CASE

**DECLARATION OF JENNIFER L. SPAZIANO
IN SUPPORT OF THE MOTION OF DEFENDANT BNP PARIBAS TO DISMISS
<u>PLAINTIFFS' CLASS ACTION COMPLAINT</u>**

I, Jennifer L. Spaziano, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a partner of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, in Washington, D.C.  I am duly licensed to practice before the courts of the State of California and the District of Columbia and have been admitted to appear pro hac vice in the captioned matter.  I am counsel for BNP Paribas in the captioned matter and make this Declaration in support of the Motion of Defendant BNP Paribas to Dismiss Plaintiffs' Class Action Complaint.  I make this Declaration based on my own personal knowledge, and if called upon to do so I could and would testify competently thereto.

2.      Attached hereto as Exhibit A is a true and correct copy of Security Council Resolution 661, U.N. Doc. S/RES/0661, dated August 6, 1990, that I obtained on December 14, 2007 from the United Nations website (www.un.org).  This document is available at:  http://daccessdds.un.org/doc/RESOLUTION/GEN/NR0/575/11/IMG/NR057511.pdf?OpenElement.

3.      Attached hereto as Exhibit B is a true and correct copy of Security Council Resolution 986, U.N. Doc. S/RES/986, dated April 14, 1995, that I obtained on December 14, 2007 from the United Nations website (www.un.org).  This document is available at http://daccessdds.un.org/doc/UNDOC/GEN/N95/109/88/PDF/N9510988.pdf?OpenElement.

4.      Attached hereto as Exhibit C is a true and correct copy of the Memorandum of Understanding Between the Secretariat of the United Nations and the Government of Iraq on the Implementation of Security Council Resolution 986, U.N. Doc. S/1996/356, dated May 20, 1996, that I obtained on December 14, 2007 from the United Nations website (www.un.org).  This document is available at http://daccessdds.un.org/doc/UNDOC/GEN/N96/127/71/PDF/N9612771.pdf?OpenElement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 14, 2007, at Washington, District of Columbia.

/s/ Jennifer L. Spaziano
Jennifer L. Spaziano

747198-D.C. Server 2A - MSW

EXHIBIT A

Security Council as soon as possible a further detailed report on his implementation plan, containing, in particular, an estimate of the cost of the United Nations Mission for the referendum in Western Sahara, on the understanding that this further report should be the basis on which the Council would authorize the establishment of the Mission.

*Adopted unanimously at the 2929th meeting.*

## THE SITUATION BETWEEN IRAQ AND KUWAIT

### Decision

At its 2932nd meeting, on 2 August 1990, the Council decided to invite the representatives of Iraq and Kuwait to participate, without vote, in the discussion of the item entitled:

"The situation between Iraq and Kuwait:

"Letter dated 2 August 1990 from the Permanent Representative of Kuwait to the United Nations addressed to the President of the Security Council (S/21423);[104]

"Letter dated 2 August 1990 from the Permanent Representative of the United States of America to the United Nations addressed to the President of the Security Council (S/21424)".[104]

### Resolution 660 (1990)
#### of 2 August 1990

*The Security Council,*

*Alarmed* by the invasion of Kuwait on 2 August 1990 by the military forces of Iraq,

*Determining* that there exists a breach of international peace and security as regards the Iraqi invasion of Kuwait,

*Acting* under Articles 39 and 40 of the Charter of the United Nations,

1. *Condemns* the Iraqi invasion of Kuwait;

2. *Demands* that Iraq withdraw immediately and unconditionally all its forces to the positions in which they were located on 1 August 1990;

3. *Calls upon* Iraq and Kuwait to begin immediately intensive negotiations for the resolution of their differences and supports all efforts in this regard, and especially those of the League of Arab States;

4. *Decides* to meet again as necessary to consider further steps to ensure compliance with the present resolution.

*Adopted at the 2932nd meeting by 14 votes to none. One member (Yemen) did not participate in the vote.*

### Decision

At its 2933rd meeting, on 6 August 1990, the Council proceeded with the discussion of the item.

### Resolution 661 (1990)
#### of 6 August 1990

*The Security Council,*

*Reaffirming* its resolution 660 (1990) of 2 August 1990,

*Deeply concerned* that that resolution has not been implemented and that the invasion by Iraq of Kuwait continues, with further loss of human life and material destruction,

*Determined* to bring the invasion and occupation of Kuwait by Iraq to an end and to restore the sovereignty, independence and territorial integrity of Kuwait,

*Noting* that the legitimate Government of Kuwait has expressed its readiness to comply with resolution 660 (1990),

*Mindful* of its responsibilities under the Charter of the United Nations for the maintenance of international peace and security,

*Affirming* the inherent right of individual or collective self-defence, in response to the armed attack by Iraq against Kuwait, in accordance with Article 51 of the Charter,

*Acting* under Chapter VII of the Charter,

1. *Determines* that Iraq so far has failed to comply with paragraph 2 of resolution 660 (1990) and has usurped the authority of the legitimate Government of Kuwait;

2. *Decides*, as a consequence, to take the following measures to secure compliance of Iraq with paragraph 2 of resolution 660 (1990) and to restore the authority of the legitimate Government of Kuwait;

3. *Decides* that all States shall prevent:

(a) The import into their territories of all commodities and products originating in Iraq or Kuwait exported therefrom after the date of the present resolution;

(b) Any activities by their nationals or in their territories which would promote or are calculated to promote the export or trans-shipment of any commodities or products from Iraq or Kuwait; and any dealings by their nationals or their flag vessels or in their territories in any commodities or products originating in Iraq or Kuwait and exported therefrom after the date of the present resolution, including in particular any transfer of funds to Iraq or Kuwait for the purposes of such activities or dealings;

(c) The sale or supply by their nationals or from their territories or using their flag vessels of any commodities or products, including weapons or any other military equipment, whether or not originating in their territories but not including supplies intended strictly for medical purposes, and, in humanitarian circumstances, foodstuffs, to any person or body in Iraq or Kuwait or to any person or body for the purposes of any business carried on in or operated from Iraq or Kuwait, and any activities by their

---

[104] See *Official Records of the Security Council, Forty-fifth Year, Supplement for July, August and September 1990.*

nationals or in their territories which promote or are calculated to promote such sale or supply of such commodities or products;

4. *Decides* that all States shall not make available to the Government of Iraq, or to any commercial, industrial or public utility undertaking in Iraq or Kuwait, any funds or any other financial or economic resources and shall prevent their nationals and any persons within their territories from removing from their territories or otherwise making available to that Government or to any such undertaking any such funds or resources and from remitting any other funds to persons or bodies within Iraq or Kuwait, except payments exclusively for strictly medical or humanitarian purposes and, in humanitarian circumstances, foodstuffs;

5. *Calls upon* all States, including States non-members of the United Nations, to act strictly in accordance with the provisions of the present resolution notwithstanding any contract entered into or licence granted before the date of the present resolution;

6. *Decides* to establish, in accordance with rule 28 of the provisional rules of procedure, a Committee of the Security Council consisting of all the members of the Council, to undertake the following tasks and to report on its work to the Council with its observations and recommendations:

(a) To examine the reports on the progress of the implementation of the present resolution which will be submitted by the Secretary-General;

(b) To seek from all States further information regarding the action taken by them concerning the effective implementation of the provisions laid down in the present resolution;

7. *Calls upon* all States to co-operate fully with the Committee in the fulfilment of its tasks, including supplying such information as may be sought by the Committee in pursuance of the present resolution;

8. *Requests* the Secretary-General to provide all necessary assistance to the Committee and to make the necessary arrangements in the Secretariat for that purpose;

9. *Decides* that, notwithstanding paragraphs 4 to 8 above, nothing in the present resolution shall prohibit assistance to the legitimate Government of Kuwait, and calls upon all States:

(a) To take appropriate measures to protect assets of the legitimate Government of Kuwait and its agencies;

(b) Not to recognize any régime set up by the occupying Power;

10. *Requests* the Secretary-General to report to the Security Council on the progress made in the implementation of the present resolution, the first report to be submitted within thirty days;

11. *Decides* to keep this item on its agenda and to continue its efforts to put an early end to the invasion by Iraq.

*Adopted at the 2933rd meeting by 13 votes to none, with 2 abstentions (Cuba and Yemen).*

### Decision

At its 2934th meeting, on 9 August 1990, the Council decided to invite the representative of Oman to participate, without vote, in the discussion of the item entitled:

"The situation between Iraq and Kuwait:

"Letter dated 2 August 1990 from the Permanent Representative of Kuwait to the United Nations addressed to the President of the Security Council (S/21423);[104]

"Letter dated 2 August 1990 from the Permanent Representative of the United States of America to the United Nations addressed to the President of the Security Council (S/21424);[104]

"Letter dated 8 August 1990 from the Permanent Representatives of Bahrain, Kuwait, Oman, Qatar, Saudi Arabia and the United Arab Emirates to the United Nations addressed to the President of the Security Council (S/21470)".[104]

### Resolution 662 (1990)
#### of 9 August 1990

*The Security Council,*

*Recalling* its resolutions 660 (1990) of 2 August 1990 and 661 (1990) of 6 August 1990,

*Gravely alarmed* by the declaration by Iraq of a "comprehensive and eternal merger" with Kuwait,

*Demanding once again* that Iraq withdraw immediately and unconditionally all its forces to the positions in which they were located on 1 August 1990,

*Determined* to bring the occupation of Kuwait by Iraq to an end and to restore the sovereignty, independence and territorial integrity of Kuwait,

*Determined also* to restore the authority of the legitimate Government of Kuwait,

1. *Decides* that annexation of Kuwait by Iraq under any form and whatever pretext has no legal validity, and is considered null and void;

2. *Calls upon* all States, international organizations and specialized agencies not to recognize that annexation, and to refrain from any action or dealing that might be interpreted as an indirect recognition of the annexation;

3. *Demands* that Iraq rescind its actions purporting to annex Kuwait;

4. *Decides* to keep this item on its agenda and to continue its efforts to put an early end to the occupation.

*Adopted unanimously at the 2934th meeting.*

### Decision

At its 2937th meeting, on 18 August 1990, the Council decided to invite the representative of Italy to participate, without vote, in the discussion of the item entitled:

"The situation between Iraq and Kuwait:

"Letter dated 2 August 1990 from the Permanent Representative of Kuwait to the United Nations addressed to the President of the Security Council (S/21423);[104]

EXHIBIT B

**UNITED
NATIONS**

**S**



**Security Council**

Distr.
GENERAL

S/RES/986 (1995)
14 April 1995

RESOLUTION 986 (1995)

Adopted by the Security Council at its 3519th meeting,
on 14 April 1995

The Security Council,

Recalling its previous relevant resolutions,

Concerned by the serious nutritional and health situation of the Iraqi
population, and by the risk of a further deterioration in this situation,

Convinced of the need as a temporary measure to provide for the
humanitarian needs of the Iraqi people until the fulfilment by Iraq of the
relevant Security Council resolutions, including notably resolution 687 (1991)
of 3 April 1991, allows the Council to take further action with regard to the
prohibitions referred to in resolution 661 (1990) of 6 August 1990, in
accordance with the provisions of those resolutions,

Convinced also of the need for equitable distribution of humanitarian
relief to all segments of the Iraqi population throughout the country,

Reaffirming the commitment of all Member States to the sovereignty and
territorial integrity of Iraq,

Acting under Chapter VII of the Charter of the United Nations,

1.   Authorizes States, notwithstanding the provisions of paragraphs 3 (a),
3 (b) and 4 of resolution 661 (1990) and subsequent relevant resolutions, to
permit the import of petroleum and petroleum products originating in Iraq,
including financial and other essential transactions directly relating thereto,
sufficient to produce a sum not exceeding a total of one billion United States
dollars every 90 days for the purposes set out in this resolution and subject to
the following conditions:

     (a)  Approval by the Committee established by resolution 661 (1990), in
order to ensure the transparency of each transaction and its conformity with the
other provisions of this resolution, after submission of an application by the

S/RES/986 (1995)
Page 2

State concerned, endorsed by the Government of Iraq, for each proposed purchase of Iraqi petroleum and petroleum products, including details of the purchase price at fair market value, the export route, the opening of a letter of credit payable to the escrow account to be established by the Secretary-General for the purposes of this resolution, and of any other directly related financial or other essential transaction;

(b) Payment of the full amount of each purchase of Iraqi petroleum and petroleum products directly by the purchaser in the State concerned into the escrow account to be established by the Secretary-General for the purposes of this resolution;

2. _Authorizes_ Turkey, notwithstanding the provisions of paragraphs 3 (a), 3 (b) and 4 of resolution 661 (1990) and the provisions of paragraph 1 above, to permit the import of petroleum and petroleum products originating in Iraq sufficient, after the deduction of the percentage referred to in paragraph 8 (c) below for the Compensation Fund, to meet the pipeline tariff charges, verified as reasonable by the independent inspection agents referred to in paragraph 6 below, for the transport of Iraqi petroleum and petroleum products through the Kirkuk-Yumurtalik pipeline in Turkey authorized by paragraph 1 above;

3. _Decides_ that paragraphs 1 and 2 of this resolution shall come into force at 00.01 Eastern Standard Time on the day after the President of the Council has informed the members of the Council that he has received the report from the Secretary-General requested in paragraph 13 below, and shall remain in force for an initial period of 180 days unless the Council takes other relevant action with regard to the provisions of resolution 661 (1990);

4. _Further decides_ to conduct a thorough review of all aspects of the implementation of this resolution 90 days after the entry into force of paragraph 1 above and again prior to the end of the initial 180 day period, on receipt of the reports referred to in paragraphs 11 and 12 below, and _expresses its intention_, prior to the end of the 180 day period, to consider favourably renewal of the provisions of this resolution, provided that the reports referred to in paragraphs 11 and 12 below indicate that those provisions are being satisfactorily implemented;

5. _Further decides_ that the remaining paragraphs of this resolution shall come into force forthwith;

6. _Directs_ the Committee established by resolution 661 (1990) to monitor the sale of petroleum and petroleum products to be exported by Iraq via the Kirkuk-Yumurtalik pipeline from Iraq to Turkey and from the Mina al-Bakr oil terminal, with the assistance of independent inspection agents appointed by the Secretary-General, who will keep the Committee informed of the amount of petroleum and petroleum products exported from Iraq after the date of entry into force of paragraph 1 of this resolution, and will verify that the purchase price of the petroleum and petroleum products is reasonable in the light of prevailing market conditions, and that, for the purposes of the arrangements set out in this resolution, the larger share of the petroleum and petroleum products is shipped via the Kirkuk-Yumurtalik pipeline and the remainder is exported from the Mina al-Bakr oil terminal;

/...

S/RES/986 (1995)
Page 3

7.   <u>Requests</u> the Secretary-General to establish an escrow account for the purposes of this resolution, to appoint independent and certified public accountants to audit it, and to keep the Government of Iraq fully informed;

8.   <u>Decides</u> that the funds in the escrow account shall be used to meet the humanitarian needs of the Iraqi population and for the following other purposes, and <u>requests</u> the Secretary-General to use the funds deposited in the escrow account:

(a)   To finance the export to Iraq, in accordance with the procedures of the Committee established by resolution 661 (1990), of medicine, health supplies, foodstuffs, and materials and supplies for essential civilian needs, as referred to in paragraph 20 of resolution 687 (1991) provided that:

(i)   Each export of goods is at the request of the Government of Iraq;

(ii)   Iraq effectively guarantees their equitable distribution, on the basis of a plan submitted to and approved by the Secretary-General, including a description of the goods to be purchased;

(iii)   The Secretary-General receives authenticated confirmation that the exported goods concerned have arrived in Iraq;

(b)   To complement, in view of the exceptional circumstances prevailing in the three Governorates mentioned below, the distribution by the Government of Iraq of goods imported under this resolution, in order to ensure an equitable distribution of humanitarian relief to all segments of the Iraqi population throughout the country, by providing between 130 million and 150 million United States dollars every 90 days to the United Nations Inter-Agency Humanitarian Programme operating within the sovereign territory of Iraq in the three northern Governorates of Dihouk, Arbil and Suleimaniyeh, except that if less than one billion United States dollars worth of petroleum or petroleum products is sold during any 90 day period, the Secretary-General may provide a proportionately smaller amount for this purpose;

(c)   To transfer to the Compensation Fund the same percentage of the funds deposited in the escrow account as that decided by the Council in paragraph 2 of resolution 705 (1991) of 15 August 1991;

(d)   To meet the costs to the United Nations of the independent inspection agents and the certified public accountants and the activities associated with implementation of this resolution;

(e)   To meet the current operating costs of the Special Commission, pending subsequent payment in full of the costs of carrying out the tasks authorized by section C of resolution 687 (1991);

(f)   To meet any reasonable expenses, other than expenses payable in Iraq, which are determined by the Committee established by resolution 661 (1990) to be directly related to the export by Iraq of petroleum and petroleum products permitted under paragraph 1 above or to the export to Iraq, and activities

S/RES/986 (1995)
Page 4

directly necessary therefor, of the parts and equipment permitted under
paragraph 9 below;

    (g)  To make available up to 10 million United States dollars every 90 days
from the funds deposited in the escrow account for the payments envisaged under
paragraph 6 of resolution 778 (1992) of 2 October 1992;

    9.  <u>Authorizes</u> States to permit, notwithstanding the provisions of
paragraph 3 (c) of resolution 661 (1990):

    (a)  The export to Iraq of the parts and equipment which are essential for
the safe operation of the Kirkuk-Yumurtalik pipeline system in Iraq, subject to
the prior approval by the Committee established by resolution 661 (1990) of each
export contract;

    (b)  Activities directly necessary for the exports authorized under
subparagraph (a) above, including financial transactions related thereto;

    10.  <u>Decides</u> that, since the costs of the exports and activities authorized
under paragraph 9 above are precluded by paragraph 4 of resolution 661 (1990)
and by paragraph 11 of resolution 778 (1991) from being met from funds frozen in
accordance with those provisions, the cost of such exports and activities may,
until funds begin to be paid into the escrow account established for the
purposes of this resolution, and following approval in each case by the
Committee established by resolution 661 (1990), exceptionally be financed by
letters of credit, drawn against future oil sales the proceeds of which are to
be deposited in the escrow account;

    11.  <u>Requests</u> the Secretary-General to report to the Council 90 days after
the date of entry into force of paragraph 1 above, and again prior to the end of
the initial 180 day period, on the basis of observation by United Nations
personnel in Iraq, and on the basis of consultations with the Government of
Iraq, on whether Iraq has ensured the equitable distribution of medicine, health
supplies, foodstuffs, and materials and supplies for essential civilian needs,
financed in accordance with paragraph 8 (a) above, including in his reports any
observations he may have on the adequacy of the revenues to meet Iraq's
humanitarian needs, and on Iraq's capacity to export sufficient quantities of
petroleum and petroleum products to produce the sum referred to in paragraph 1
above;

    12.  <u>Requests</u> the Committee established by resolution 661 (1990), in close
coordination with the Secretary-General, to develop expedited procedures as
necessary to implement the arrangements in paragraphs 1, 2, 6, 8, 9 and 10 of
this resolution and to report to the Council 90 days after the date of entry
into force of paragraph 1 above and again prior to the end of the initial
180 day period on the implementation of those arrangements;

    13.  <u>Requests</u> the Secretary-General to take the actions necessary to ensure
the effective implementation of this resolution, authorizes him to enter into
any necessary arrangements or agreements, and <u>requests</u> him to report to the
Council when he has done so;

S/RES/986 (1995)
Page 5

14.  <u>Decides</u> that petroleum and petroleum products subject to this resolution shall while under Iraqi title be immune from legal proceedings and not be subject to any form of attachment, garnishment or execution, and that all States shall take any steps that may be necessary under their respective domestic legal systems to assure this protection, and to ensure that the proceeds of the sale are not diverted from the purposes laid down in this resolution;

15.  <u>Affirms</u> that the escrow account established for the purposes of this resolution enjoys the privileges and immunities of the United Nations;

16.  <u>Affirms</u> that all persons appointed by the Secretary-General for the purpose of implementing this resolution enjoy privileges and immunities as experts on mission for the United Nations in accordance with the Convention on the Privileges and Immunities of the United Nations, and <u>requires</u> the Government of Iraq to allow them full freedom of movement and all necessary facilities for the discharge of their duties in the implementation of this resolution;

17.  <u>Affirms</u> that nothing in this resolution affects Iraq's duty scrupulously to adhere to all of its obligations concerning servicing and repayment of its foreign debt, in accordance with the appropriate international mechanisms;

18.  <u>Also affirms</u> that nothing in this resolution should be construed as infringing the sovereignty or territorial integrity of Iraq;

19.  <u>Decides</u> to remain seized of the matter.

-----

EXHIBIT C

**UNITED
NATIONS**



**S**

  # Security Council

Distr.
GENERAL

S/1996/356*
20 May 1996

ORIGINAL:  ENGLISH

LETTER DATED 20 MAY 1996 FROM THE SECRETARY-GENERAL
ADDRESSED TO THE PRESIDENT OF THE SECURITY COUNCIL

I have the honour to submit to you, and through you to the members of the
Security Council, the text of a memorandum of understanding concluded today
between the Secretariat of the United Nations and the Government of Iraq on the
implementation of Security Council resolution 986 (1995) of 14 April 1995.  I am
also submitting to you a letter handed over by the Head of the Iraqi delegation
upon signing the memorandum.

The memorandum represents an important step in the arrangements that are
required under the resolution to bring it fully into effect.  Once all the
necessary actions have been taken, I will be in a position to report to the
Security Council as provided for in paragraph 13 of the resolution.  The present
letter, therefore, is submitted with a view to keeping the Council abreast of
the progress achieved so far in the implementation of the resolution.

(Signed)  Boutros BOUTROS-GHALI

_____

\*    Reissued for technical reasons.

S/1996/356
English
Page 2

<u>Memorandum of understanding between the Secretariat of
the United Nations and the Government of Iraq on the
implementation of Security Council resolution 986 (1995)</u>

<u>Section I</u>

<u>General provisions</u>

1.   The purpose of this Memorandum of Understanding is to ensure the effective
implementation of Security Council resolution 986 (1995) (hereinafter the
Resolution).

2.   The Distribution Plan referred to in paragraph 8 (a) (ii) of the
Resolution, which has to be approved by the Secretary-General of the United
Nations, constitutes an important element in the implementation of the
Resolution.

3.   Nothing in the present Memorandum should be construed as infringing upon
the sovereignty or territorial integrity of Iraq.

4.   The provisions of the present Memorandum pertain strictly and exclusively
to the implementation of the Resolution and, as such, in no way create a
precedent.  It is also understood that the arrangement provided for in the
Memorandum is an exceptional and temporary measure.

<u>Section II</u>

<u>Distribution Plan</u>

5.   The Government of Iraq undertakes to effectively guarantee equitable
distribution to the Iraqi population throughout the country of medicine, health
supplies, foodstuffs and materials and supplies for essential civilian needs
(hereinafter humanitarian supplies) purchased with the proceeds of the sale of
Iraqi petroleum and petroleum products.

6.   To this end, the Government of Iraq shall prepare a Distribution Plan
describing in detail the procedures to be followed by the competent Iraqi
authorities with a view to ensuring such distribution.  The present distribution
system of such supplies, the prevailing needs and humanitarian conditions in the
various Governorates of Iraq shall be taken into consideration with due regard
to the sovereignty of Iraq and the national unity of its population.  The plan
shall include a categorized list of the supplies and goods that Iraq intends to
purchase and import for this purpose on a six-month basis.

7.   The part of the Distribution Plan related to the three northern
Governorates of Arbil, Dihouk and Suleimaniyeh shall be prepared in accordance
with Annex I, which constitutes an integral part of this Memorandum.

8.   The Distribution Plan shall be submitted to the Secretary-General of the
United Nations for approval.  If the Secretary-General is satisfied that the

S/1996/356
English
Page 3

plan adequately ensures equitable distribution of humanitarian supplies to the Iraqi population throughout the country, he will so inform the Government of Iraq.

9.   It is understood by the Parties to this Memorandum that the Secretary-General will not be in a position to report as required in paragraph 13 of the Resolution unless the plan prepared by the Government of Iraq meets with his approval.

10.  Once the Secretary-General approves the plan, he will forward a copy of the categorized list of the supplies and goods, which constitutes a part of the plan, to the Security Council Committee established by resolution 661 (1990) concerning the situation between Iraq and Kuwait (hereinafter the 661 Committee) for information.

11.  After the plan becomes operational, each Party to the present Memorandum may suggest to the other for its consideration a modification to the plan if it believes that such adjustment would improve the equitable distribution of humanitarian supplies and their adequacy.


## Section III

### Establishment of the escrow account and audit of that account

12.  The Secretary-General, after consultations with the Government of Iraq, will select a major international bank and establish there the escrow account described in paragraph 7 of the Resolution, to be known as "the United Nations Iraq Account" (hereinafter the "Iraq Account").  The Secretary-General will negotiate the terms of this account with the bank and will keep the Government of Iraq fully informed of his actions in choosing the bank and opening the account.  All transactions and deductions mandated by the Security Council under paragraph 8 of the Resolution shall be made from the "Iraq Account", which will be administered in accordance with the relevant Financial Regulations and Rules of the United Nations.

13.  The Iraqi authorities might designate a senior banking official to liaise with the Secretariat of the United Nations on all banking matters relating to the "Iraq Account".

14.  In accordance with the United Nations Financial Regulations, the "Iraq Account" will be audited by the Board of Auditors who are external independent public auditors.  As provided for in the Regulations, the Board of Auditors will issue periodic reports on the audit of the financial statements relating to the account.  Such reports will be submitted by the Board to the Secretary-General who will forward them to the 661 Committee and to the Government of Iraq.

15.  Nothing in this Memorandum shall be interpreted to create a liability on the part of the United Nations for any purchase made by the Government of Iraq or any agents acting on its behalf pursuant to the provisions of the Resolution.

S/1996/356
English
Page 4

## Section IV

### Sale of petroleum and petroleum products originating in Iraq

16.  Petroleum and petroleum products originating in Iraq will be exported via the Kirkuk-Yumurtalik pipeline through Turkey and from the Mina al-Bakr oil terminal.  The 661 Committee will monitor the exports through those outlets to ensure that they are consistent with the Resolution.  Transportation costs in Turkey will be covered by an additional amount of oil, as foreseen in the Resolution and in accordance with procedures to be established by the 661 Committee.  The arrangement between Iraq and Turkey concerning the tariffs and payment modalities for the use of Turkish oil installations has been provided to the 661 Committee.

17.  Each export of petroleum and petroleum products originating in Iraq shall be approved by the 661 Committee.

18.  Detailed provisions concerning the sale of Iraqi petroleum and petroleum products are contained in Annex II, which constitutes an integral part of this Memorandum.

## Section V

### Procurement and confirmation procedures

19.  The purchase of medicine, health supplies, foodstuffs, and materials and supplies for essential civilian needs of the Iraqi population throughout the country, as referred to in paragraph 20 of resolution 687 (1991), will, subject to paragraph 20 below, be carried out by the Government of Iraq, will follow normal commercial practice and be on the basis of the relevant resolutions of the Security Council and procedures of the 661 Committee.

20.  The purchase of humanitarian supplies for the three northern Governorates of Arbil, Dihouk and Suleimaniyeh, as provided for in the Distribution Plan, will be carried out in accordance with Annex I.

21.  The Government of Iraq will, except as provided for in paragraph 20, contract directly with suppliers to arrange the purchase of supplies, and will conclude the appropriate contractual arrangements.

22.  Each export of goods to Iraq shall be at the request of the Government of Iraq pursuant to paragraph 8 (a) of the Resolution.  Accordingly, exporting States will submit all relevant documentation, including contracts, for all goods to be exported under the Resolution to the 661 Committee for appropriate action according to its procedures.  It is understood that payment of the supplier from the "Iraq Account" can take place only for items purchased by Iraq that are included in the categorized list referred to in Section II of the present Memorandum.  Should exceptional circumstances arise, applications for the export of additional items may be submitted to the 661 Committee for its consideration.

S/1996/356
English
Page 5

23.  As noted above, the 661 Committee will take action on applications for the export of goods to Iraq in accordance with its existing procedures subject to future modifications under paragraph 12 of the Resolution.  The 661 Committee will inform the Government of Iraq, requesting States, and the Secretary-General of the actions taken on the requests submitted.

24.  After the 661 Committee has taken action on the applications for export in accordance with its procedures, the Central Bank of Iraq will request the bank holding the "Iraq Account" to open irrevocable letters of credit in favour of the beneficiaries.  Such requests shall be referred by the bank holding the "Iraq Account" to the United Nations Secretariat for approval of the opening of the letter of credit by the latter bank, allowing payment from the "Iraq Account" upon presentation of credit-conform documents.  The letter of credit will require as condition of payment, _inter alia_, the submission to the bank holding the "Iraq Account" of the documents to be determined by the procedures established by the 661 Committee, including the confirmations by the agents referred to in paragraph 25 below.  The United Nations, after consultations with the Government of Iraq, shall determine the clause to be inserted in all purchase orders, contracts and letters of credit regarding payment terms from the "Iraq Account".  All charges incurred in Iraq are to be borne by the applicant, whereas all charges outside Iraq are for the account of the beneficiary.

25.  The arrival of goods in Iraq purchased under the plan will be confirmed by independent inspection agents to be appointed by the Secretary-General.  No payments can be made until the independent inspection agents provide the Secretary-General with authenticated confirmation that the exported goods concerned have arrived in Iraq.

26.  The independent inspection agents may be stationed at relevant Iraqi entry points, customs areas or other locations where the functions set out in paragraph 27 of this Section can be performed.  The number and location of the stationing points for the agents will be designated by the United Nations after consultations with the Government of Iraq.

27.  The independent inspection agents will confirm delivery to Iraq of shipments.  They will compare the appropriate documentation, such as bills of lading, other shipping documents or cargo manifests, and the documents issued by the 661 Committee, against goods actually arriving in Iraq.  They will also have the authority to perform duties necessary for such confirmation, including: quantity inspection by weight or count, quality inspection including visual inspection, sampling, and, when necessary, laboratory testing.

28.  The inspection agents will report all irregularities to the Secretary-General and to the 661 Committee.  If the problem is related to normal commercial practice (e.g., some shortlanded goods), the 661 Committee and the Government of Iraq are informed, but normal commercial resolution practices (e.g., claims) go forth.  If the matter is of serious concern, the independent inspection agents will hold the shipment in question pending guidance from the 661 Committee.

S/1996/356
English
Page 6

29.  As regards the export to Iraq of parts and equipment which are essential for the safe operation of the Kirkuk-Yumurtalik pipeline system in Iraq, the requests will be submitted to the 661 Committee by the national Government of the supplier.  Such requests will be considered for approval by the Committee in accordance with its procedures.

30.  If the 661 Committee has approved a request in accordance with paragraph 29, the provisions of paragraph 24 shall apply.  However, since the supplier can expect payment against future oil sales, as stated in paragraph 10 of the Resolution, the proceeds of which are to be deposited in the "Iraq Account", the bank holding the "Iraq Account" will issue an irrevocable letter of credit stipulating that payment can only be effected when at the time of drawing the "Iraq Account" has sufficient disposable funds and the United Nations Secretariat approves the payment.

31.  The requirement of authenticated confirmation of arrival provided for in this Section shall apply also to the parts and equipment mentioned in paragraph 29.


<u>Section VI</u>

<u>Distribution of humanitarian supplies purchased
under the Distribution Plan</u>

32.  The distribution of humanitarian supplies shall be undertaken by the Government of Iraq in accordance with the Distribution Plan referred to in Section II of the present Memorandum.  The Government of Iraq will keep the United Nations observation personnel informed about the implementation of the plan and the activities that the Government is undertaking.

33.  The distribution of humanitarian supplies in the three northern Governorates of Arbil, Dihouk and Suleimaniyeh shall be undertaken by the United Nations Inter-Agency Humanitarian Programme on behalf of the Government of Iraq under the Distribution Plan with due regard to the sovereignty and territorial integrity of Iraq in accordance with Annex I.


<u>Section VII</u>

<u>Observation of the equitable distribution of humanitarian
supplies and determination of their adequacy</u>

<u>GENERAL PROVISIONS</u>

34.  The United Nations observation process will be conducted by United Nations personnel in Iraq under the overall authority of the Department of Humanitarian Affairs at United Nations Headquarters in New York in accordance with the provisions described below.  Such observation shall apply to the distribution of humanitarian supplies financed in accordance with the procedures set out in the Resolution.

S/1996/356
English
Page 7

35.  The objectives of the United Nations observation process shall be:

(a)  to confirm whether the equitable distribution of humanitarian supplies to
     the Iraqi population throughout the country has been ensured;

(b)  to ensure the effectiveness of the operation and determine the adequacy of
     the available resources to meet Iraq's humanitarian needs.


## OBSERVATION PROCEDURES

36.  In observing the equitable distribution and its adequacy, United Nations
personnel will use, _inter alia_, the following procedures.


### Food items

37.  The observation of the equitability of food distribution will be based on
information obtained from local markets throughout Iraq, the Iraqi Ministry of
Trade, the information available to the United Nations and its specialized
agencies on food imports, and on sample surveys conducted by United Nations
personnel.  The observation will also include the quantity and prices of food
items imported under the Resolution.

38.  To provide regular updated observation of the most pressing needs, a survey
undertaken by United Nations agencies in cooperation with the appropriate Iraqi
ministries will serve as a baseline for the continuing observation of
nutritional status of the population of Iraq.  This information will take
account of public health data generated by the Ministry of Health (MOH) and the
relevant United Nations agencies.


### Medical supplies and equipment

39.  Observation regarding distribution of medical supplies and equipment will
focus on the existing distribution and storage system and will involve visits to
hospitals, clinics as well as medical and pharmaceutical facilities where such
supplies and equipment are stored.  Such observation will also be guided by
health statistics data from MOH and surveys by relevant United Nations agencies.


### Water/sanitation supplies and equipment

40.  Observation of distribution of water/sanitation supplies and equipment will
focus on the determination that they are used for their intended purposes.
Confirmation will be carried out by collecting data on the incidence of water-
borne diseases and by water quality control checks by visits to water and
sanitation facilities by representatives of relevant United Nations agencies.
In this regard the United Nations will rely on all relevant indicators.

S/1996/356
English
Page 8

### Other materials and supplies

41.  With reference to materials and supplies which do not fall within the three areas indicated above, in particular, those needed for the rehabilitation of infrastructures essential to meet humanitarian needs, observation will focus on confirmation that such materials and supplies are delivered to the predefined destinations in accordance with the Distribution Plan and that they are used for their intended purposes, and on the determination of whether these materials and supplies are adequate or necessary to meet essential needs of the Iraqi population.

### COORDINATION AND COOPERATION

42.  The United Nations observation activities will be coordinated by the Department of Humanitarian Affairs at United Nations Headquarters in New York. Observation will be undertaken by United Nations personnel.  The exact number of such personnel will be determined by the United Nations taking into account the practical requirements.  The Government of Iraq will be consulted in this regard.

43.  The Iraqi authorities will provide to United Nations personnel the assistance required to facilitate the performance of their functions.  United Nations personnel will coordinate with the Iraqi competent authorities.

44.  In view of the importance of the functions which United Nations personnel will perform in accordance with the provisions of this Section of the Memorandum, such personnel shall have, in connection with the performance of their functions, unrestricted freedom of movement, access to documentary material which they find relevant having discussed the matter with the Iraqi authorities concerned, and the possibility to make such contacts as they find essential.

### Section VIII

### Privileges and Immunities

45.  In order to facilitate the successful implementation of the Resolution the following provisions concerning privileges and immunities shall apply:

(a)  officials of the United Nations and of any of the Specialized Agencies performing functions in connection with the implementation of the Resolution shall enjoy the privileges and immunities applicable to them under Articles V and VII of the Convention on the Privileges and Immunities of the United Nations, or Articles VI and VIII of the Convention on the Privileges and Immunities of the Specialized Agencies to which Iraq is a party;

(b)  independent inspection agents, technical experts and other specialists appointed by the Secretary-General of the United Nations or by heads of the Specialized Agencies concerned and performing functions in connection with

/...

S/1996/356
English
Page 9

the implementation of the Resolution, whose names will be communicated to the Government of Iraq, shall enjoy the privileges and immunities accorded to experts on mission for the United Nations or for the Specialized Agency under Article VI of the Convention on the Privileges and Immunities of the United Nations or the relevant Annexes of the Convention on the Privileges and Immunities of the Specialized Agencies respectively;

(c)   persons performing contractual services for the United Nations in connection with the implementation of the Resolution, whose names will be communicated to the Government of Iraq, shall enjoy the privileges and immunities referred to in sub-paragraph (b) above concerning experts on mission appointed by the United Nations.

46.  In addition, officials, experts and other personnel referred to in paragraph 45 above shall have the right of unimpeded entry into and exit from Iraq and shall be issued visas by the Iraqi authorities promptly and free of charge.

47.  It is further understood that the United Nations and its Specialized Agencies shall enjoy freedom of entry into and exit from Iraq without delay or hindrance of supplies, equipment and means of surface transport required for the implementation of the Resolution and that the Government of Iraq agrees to allow them to, temporarily, import such equipment free of customs or other duties.

48.  Any issue relating to privileges and immunities, including safety and protection of the United Nations and its personnel, not covered by the provisions of this Section shall be governed by paragraph 16 of the Resolution.


## Section IX

### Consultations

49.  The Secretariat of the United Nations and the Government of Iraq shall, if necessary, hold consultations on how to achieve the most effective implementation of the present Memorandum.


## Section X

### Final clauses

50.  The present Memorandum shall enter into force following signature, on the day when paragraphs 1 and 2 of the Resolution become operational and shall remain in force until the expiration of the 180 day period referred to in paragraph 3 of the Resolution.

/...

```
S/1996/356
English
Page 10
```

51.  Pending its entry into force, the Memorandum shall be given by the United Nations and the Government of Iraq provisional effect.

     SIGNED this 20th day of May 1996 at New York in two originals in English.


     For the United Nations                    For the Government of Iraq


(<u>Signed</u>)  Hans CORELL                       (<u>Signed</u>)  Abdul Amir AL-ANBARI
         Under-Secretary-General                       Ambassador Plenipotentiary
           The Legal Counsel                         Head of the Delegation of Iraq

S/1996/356
English
Page 11

Annex I

1.   In order to ensure the effective implementation of paragraph 8 (b) of the Resolution, the following arrangements shall apply in respect of the Iraqi Governorates of Arbil, Dihouk and Suleimaniyeh.  These arrangements shall be implemented with due regard to the sovereignty and territorial integrity of Iraq, and to the principle of equitable distribution of humanitarian supplies throughout the country.

2.   The United Nations Inter-Agency Humanitarian Programme shall collect and analyze pertinent information on humanitarian needs in the three northern Governorates.  On the basis of that information, the Programme will determine the humanitarian requirements of the three northern Governorates for discussion with the Government of Iraq and subsequent incorporation in the Distribution Plan.  In preparing estimates of food needs, the Programme will take into consideration all relevant circumstances, both within the three northern Governorates and in the rest of the country, in order to ensure equitable distribution.  Specific rehabilitation needs in the three northern Governorates shall receive the necessary attention.

3.   Within a week following the approval of the Distribution Plan by the Secretary-General, the Programme and the Government of Iraq will hold discussions to enable the Programme to determine how the procurement of humanitarian supplies for the three northern Governorates can be undertaken most efficiently.  These discussions should be guided by the following considerations.  The bulk purchase by the Government of Iraq of standard food commodities and medicine may be the most cost-effective means of procurement. Other materials and supplies for essential civilian needs, specifically required for the three northern Governorates, may be more suitably procured through the United Nations system in view of technical aspects related to their proper use.

4.   To the extent that purchases and deliveries are made by the Government of Iraq in response to the written communication of the Programme, an amount corresponding to the cost of the delivered goods will be deducted from the amount allocated to the Programme from the "Iraq Account".

5.   Humanitarian supplies destined for distribution in the three northern Governorates shall be delivered by the Programme to warehouses located within these Governorates.  Such supplies can also be delivered by the Government of Iraq or the Programme, as appropriate, to warehouses in Kirkuk and Mosul.  The warehouses shall be managed by the Programme.  The Government of Iraq shall ensure the prompt customs and administrative clearances to enable the safe and quick transit of such supplies to the three northern Governorates.

6.   The Programme shall be responsible in the three northern Governorates for the storage, handling, internal transportation, distribution and confirmation of equitable distribution of humanitarian supplies.  The Programme will keep the Government of Iraq informed on the implementation of distribution.

7.   Whenever possible and cost-effective, the Programme shall use appropriate local distribution mechanisms which are comparable to those existing in the rest

/...

S/1996/356
English
Page 12

of Iraq in order to effectively reach the population.  Recipients under this arrangement will pay a fee for internal transportation, handling, and distribution as in the rest of the country.  The Programme shall ensure that the special needs of internally displaced persons, refugees, hospital in-patients and other vulnerable groups in need of supplementary food are appropriately met, and will keep the Government of Iraq informed.

8.   The Programme will observe that humanitarian supplies are used for their intended purposes, through visits to sites and by collecting relevant data.  The Programme will report to the Department of Humanitarian Affairs at United Nations Headquarters in New York and the Government of Iraq any violation observed by the Programme.

S/1996/356
English
Page 13

Annex II

1.   The State concerned or, if the 661 Committee so decides, the national petroleum purchaser authorized by the 661 Committee, shall submit to the Committee for handling and approval the application, including the relevant contractual documents covering the sales of such petroleum and petroleum products, for the proposed purchase of Iraqi petroleum and petroleum products, endorsed by the Government of Iraq or the Iraqi State Oil Marketing Organization (hereinafter SOMO) on behalf of the Government.  Such endorsement could be done by sending a copy of the contract to the 661 Committee.  The application shall include details of the purchase price at fair market value, the export route, opening of a letter of credit payable to the "Iraq Account", and other necessary information required by the Committee.  The sales of petroleum and petroleum products shall be covered by contractual documents.  A copy of these documents shall be included in the information provided to the 661 Committee together with the application for forwarding to the independent inspection agents described in paragraph 4 of this Annex.  The contractual documents should contain the following information:  quantity and quality of petroleum and petroleum products, duration of contract, credit and payment terms and pricing mechanism. The pricing mechanism for petroleum should include the following points:  marker crude oil and type of quotations to be used, adjustments for transportation and quality, and pricing dates.

2.   Irrevocable confirmed letters of credit will be opened by the oil purchaser's bank with the irrevocable undertaking that the proceeds of the letter of credit will be paid directly to the "Iraq Account".  For this purpose, the following clauses will have to be inserted in each letter of credit:

"-   Provided all terms and conditions of this letter of credit are complied with, proceeds of this letter of credit will be irrevocably paid into the "Iraq Account" with ...... Bank."

"-   All charges within Iraq are for the beneficiary's account, whereas all charges outside Iraq are to be borne by the purchaser."

3.   All such letters of credit will have to be directed by the purchaser's bank to the bank holding the "Iraq Account" with the request that the latter adds its confirmation and forwards it to the Central Bank of Iraq for the purpose of advising SOMO.

4.   The sale of petroleum and petroleum products originating in Iraq will be monitored by United Nations independent oil experts appointed by the Secretary-General of the United Nations to assist the 661 Committee.  The monitoring of oil exports will be carried out by independent inspection agents at the loading facilities at Ceyhan and Mina al-Bakr and, if the 661 Committee so decides, at the pipeline metering station at the Iraq-Turkey border, and would include quality and quantity verification.  They would authorize the loading, after they receive the information from the United Nations oil experts that the relevant contract has been approved, and report to the United Nations.

/...

S/1996/356
English
Page 14

5.    The United Nations will receive monthly reports from SOMO on the actual
volume and type of petroleum products exported under the relevant sales
contracts.

6.    The United Nations Secretariat and SOMO shall maintain continuing contact
and in particular United Nations oil experts shall meet routinely with SOMO
representatives to review market conditions and oil sales.

S/1996/356
English
Page 15

<u>Letter dated 20 May 1996 from the Head of delegation
of Iraq addressed to the Legal Counsel</u>

    In reference to the memorandum of understanding signed today and as I advised you during the discussion that a letter would be sent to you concerning the position of Iraq as to the cost of production and transportation of oil inside Iraq, I state below Iraq's position, which I request that you include in the official record of our discussion:

    The Iraqi delegation explained during the discussion that the cost of production and transportation of petroleum excluding expenses in local currency, is currently estimated at US$ 2.00 per barrel.  Such cost had to be deducted from the sale price or recovered through the production and export of extra quantity of petroleum and petroleum products.  In either case the amount referred to above would be deposited in the "Iraq account" to be utilized for the import of spare parts and other items necessary for the maintenance and sustaining of production and transportation operations as is the established practice in the oil industry, otherwise production and transportation operations would be hindered and eventually come to a halt.

    Nevertheless, and in order to facilitate the conclusion of this memorandum of understanding, the Iraqi delegation agreed not to insist on the acceptance of its position by the United Nations Secretariat delegation at this stage and agreed to have it included in a separate letter addressed to the Head of the delegation of the United Nations Secretariat for consideration in any future discussion.

    Although the matter is not discussed, the Iraqi delegation wishes to state that a third outlet for Iraqi petroleum export could be via the Syrian Arab Republic.

                                 (<u>Signed</u>)  Ambassador A. Amir ANBARI
                                     Head of the delegation of Iraq

-----