UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAADYA MASTAFA and KAFIA ISMAIL,

                                 Plaintiffs,

           v.

AUSTRALIAN WHEAT BOARD LIMITED aka
AWB LIMITED, AWB (U.S.A.) LIMITED, and
BANQUE NATIONALE DE PARIS PARIBAS,

                               Defendants.

ECF CASE

No. 07 CIV 7955 (GEL)

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS AWB LIMITED'S AND AWB (U.S.A.) LIMITED'S
## MOTION TO DISMISS THE CLASS ACTION COMPLAINT WITH PREJUDICE

Robert H. Baron
Timothy G. Cameron
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants AWB Limited and AWB (U.S.A.) Limited*

December 14, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF PLEADED FACTS ................................................................................. 5

ARGUMENT ......................................................................................................................... 6

I.  PLAINTIFFS DO NOT HAVE ARTICLE III STANDING. .......................................... 6

II. THE COMPLAINT SHOULD BE DISMISSED ON GROUNDS OF FORUM
    NON CONVENIENS. ................................................................................................... 9

    A.  Plaintiffs' Choice of Forum in the United States Deserves Little
        Deference. ......................................................................................................... 11

    B.  Australia Is an Adequate Alternate Forum. ..................................................... 12

    C.  Private Interest Factors and Public Interest Factors Both Support
        Dismissal of This Case on Forum Non Conveniens Grounds in Favor of
        Australia. ........................................................................................................... 13

        1.  Private Interest Factors Strongly Favor Dismissal. ............................. 13

        2.  Public Interest Factors Also Strongly Favor Dismissal. ..................... 15

III. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ON COMITY GROUNDS ........... 17

IV. THE ACT OF STATE DOCTRINE REQUIRES DISMISSAL OF PLAINTIFFS'
    CLAIMS. ..................................................................................................................... 19

V.  PLAINTIFFS' ATS CLAIMS (CLAIMS 1-7) MUST BE DISMISSED. ..................... 21

    A.  Plaintiffs Fail Adequately to Plead, and Cannot Show, That AWB Aided
        or Abetted the Hussein Regime's Alleged Violations of Customary
        International Law. .............................................................................................. 24

    B.  Plaintiffs Fail Adequately to Plead, and Cannot Show, That AWB Either
        Conspired with the Hussein Regime or Served as Its Accomplice with
        Respect to Any Alleged Violations of Customary International Law. .............. 28

VI. PLAINTIFFS' TVPA CLAIM (CLAIM 8) MUST BE DISMISSED. ........................... 29

Page

VII.   PLAINTIFFS' NEW YORK STATE LAW CLAIMS (CLAIMS 9-13) MUST BE
       DISMISSED. ......................................................................................................................31

CONCLUSION...............................................................................................................................34

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Abbas v. Dixon, 480 F.3d 636 (2d Cir. 2007) .................................................................. 32

Abdullahi v. Pfizer, Inc., No. 01 Civ. 8118, 2005 WL 1870811
    (S.D.N.Y. Aug. 9, 2005) ......................................................................... 10, 12

Adamu v. Pfizer, Inc., 399 F. Supp. 2d 495 (S.D.N.Y. 2005) ......................................... 10, 11, 14

Aguinda v. Texaco, Inc., 142 F. Supp. 2d 534 (S.D.N.Y. 2001), aff'd, 303 F.3d
    470 (2d Cir. 2002) .................................................................... 10, 12, 14, 16

Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996 (2d Cir. 1993) .............................. 12, 14

Arndt v. UBS AG, 342 F. Supp. 2d 132 (E.D.N.Y. 2004) ................................................ 17, 23, 30

Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 (1964) ........................................... 19-20, 21

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) ............................................................. passim

Benjamins v. British European Airways, 572 F.2d 913 (2d Cir. 1978) ........................................ 24

Bi v. Union Carbide Chems. & Plastics Co., 984 F.2d 582 (2d Cir. 1993) .................................. 19

Bigio v. Coca-Cola Co., 239 F.3d 440 (2d Cir. 2001) ............................................................ 17, 30

Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d 234 (2d Cir. 2004) ................... 14, 15

Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc., 686 F.2d 322
    (5th Cir. 1982) ..................................................................................... 21

Corcoran v. N.Y. Power Auth., 202 F.3d 530 (2d. Cir. 1999) ...................................................... 33

Corrie v. Caterpillar, Inc., 403 F. Supp. 2d 1019 (W.D. Wash. 2005), aff'd, 503
    F.3d 974 (9th Cir. 2007) .................................................................... 20, 31

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991) ........................................... 5

DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854 (2006) ............................................................. 6, 7

Dellums v. U.S. Nuclear Regulatory Comm'n, 863 F.2d 968 (D.C. Cir. 1988) ............................. 9

Do Rosario Veiga v. World Meteorological Org., 486 F. Supp. 2d 297
    (S.D.N.Y. 2007) ..................................................................................... 15

iii

Page(s)

Doe v. Exxon Mobil Corp., 393 F. Supp. 2d 20 (D.D.C. 2005), appeal dismissed, 473 F.3d 345 (D.C. Cir. 2007), petition for cert. filed, 76 U.S.L.W. 3050 (U.S. July 20, 2007)................................................................................................................ 30

Doe v. Holy See (State of Vatican City), 17 A.D.3d 793 (N.Y. App. Div. 3d Dep't 2005) ........................................................................................ 32

Doe v. Karadzic, No. 93 Civ. 0878 (PKL), 2000 U.S. Dist. LEXIS 8108 (S.D.N.Y. June 13, 2000)........................................................................................... 33

Doe v. State of Israel, 400 F. Supp. 2d 86 (D.D.C. 2005) ............................................. 20

Flores v. S. Peru Copper Corp., 414 F.3d 233 (2d Cir. 2003) ................................. 21, 22

Friedman v. Bayer Corp., No. 99-CV-3675, 1999 WL 33457825 (E.D.N.Y. Dec. 15, 1999)............................................................................................. 30

Gorman v. Consol. Edison Corp., 488 F.3d 586 (2d Cir. 2007) ....................................... 1

Greenberg v. Bush, 150 F. Supp. 2d 447 (E.D.N.Y. 2001) .............................................. 8

Hilton v. Guyot, 159 U.S. 113 (1895)............................................................................. 17

ICC Indus., Inc. v. Israel Disc. Bank, Ltd., No. 04 Civ. 6945 (DC), 2005 WL 1844616 (S.D.N.Y. July 29, 2005)........................................................................... 14

In re Sinaltrainal Litig., 474 F. Supp. 2d 1273 (S.D. Fla. 2006)................................... 28

In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765 (S.D.N.Y. 2005)........................ 30

Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424 (D.N.J. 1999) ....................... 17, 19, 22

Javier H. v. Garcia-Botello, 239 F.R.D. 342 (W.D.N.Y. 2006) .................................... 33

Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1995).......................................................... 21, 29

Khulumani v. Barclay Nat'l Bank Ltd., 05-2141-CV, 05-2326-CV, 2007 WL 4180152 (2d Cir. Nov. 27, 2007) .............................................................................. 24

Khulumani v. Barclay Nat'l Bank Ltd., 504 F.3d 254 (2d Cir. 2007)................................... passim

Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518 (1947)............................... 10

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ...................................... 4, 6, 7, 8

Manliguez v. Joseph, 226 F. Supp. 2d 377 (E.D.N.Y. 2002) ........................................ 33

Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146 (2d Cir. 2005) ........... 11, 12

Page(s)

O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A., 830 F.2d 449
   (2d Cir. 1987) .................................................................................................. 21

Oshinsky v. N.Y. City Hous. Auth., No. 98 Civ. 5467 (AGS), 1999 U.S. Dist.
   LEXIS 11534 (S.D.N.Y. July 29, 1999) .............................................. 32

Overseas Media, Inc. v. Skvortsov, 441 F. Supp. 2d 610 (S.D.N.Y. 2006) ................................. 10

Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981).......................................................... 12

Pittman v. Grayson, 149 F.3d 111 (2d Cir. 1998)........................................................... 33

Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64 (2d Cir. 2003) ................... 11, 12, 16

Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26 (1976) .................................... 7, 8, 9

Société Nationale Industrielle Aérospatiale v. United States Dist. Court for the
   S. Dist. of Iowa, 482 U.S. 522 (1987)........................................................ 17

Sosa v. Alvarez-Machain, 542 U.S. 692 (2004) ....................................... 17, 20, 21, 31

Sotheby's Fin. Servs. v. Baran, No. 00 Civ. 7897 (BSJ), 2003 U.S. Dist. LEXIS
   13079 (S.D.N.Y. July 29, 2003)......................................................... 32

Spencer v. Kemna, 523 U.S. 1 (1998) ............................................................. 7

Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp., 421 F. Supp. 2d
   741 (S.D.N.Y. 2006) .................................................................. 11, 12

Stutts v. The De Dietrich Group, No. 03-CV-4058 (ILG), 2006 WL 1867060
   (E.D.N.Y. June 30, 2006)......................................................... 23, 33, 34

Turedi v. Coca Cola Co., 460 F. Supp. 2d 507 (S.D.N.Y. 2006) ......................... passim

Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579 (2d Cir. 2002)................. 23

VictoriaTea.com, Inc. v. Cott Beverages, Can., 239 F. Supp. 2d 377
   (S.D.N.Y. 2003) ......................................................................... 12

W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l, 493 U.S. 400 (1990) ............. 19, 20

Warth v. Seldin, 422 U.S. 490 (1975)..................................................... 6, 7, 8, 9

Williams v. Bank Leumi Trust Co. of N.Y., No. 96 Civ. 6695 (LMM), 1997 WL
   289865 (S.D.N.Y. May 30, 1997)............................................... 33

Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000)............................. 10

Page(s)

**Statutes and Rules**

18 U.S.C. § 1092 .................................................................................................... 22

28 U.S.C. § 1331 .................................................................................................... 23

28 U.S.C. § 1332 .................................................................................................... 23

28 U.S.C. § 1350 .............................................................................................. passim

28 U.S.C. § 1350 (note) .......................................................................... 2, 29, 31, 33

28 U.S.C. 1367 ...................................................................................................... 32

Fed. R. Civ. P. 12(b)(1) ................................................................................. 1, 4, 22, 27

Fed. R. Civ. P. 12(b)(6) .................................................................................... passim

Fed. R. Civ. P. 45(b)(2) .......................................................................................... 15

N.Y. C.P.L.R. § 214(5) ............................................................................................ 32

N.Y. C.P.L.R. § 215(3) ............................................................................................ 32

N.Y. Est. Powers & Trusts Law § 5-4.1(1) ................................................................ 32


**Other Authorities**

Dan E. Stigall, Courts, Confidence, and Claims Commissions: The Case for
    Remitting to Iraqi Civil Courts the Tasks and Jurisdiction of the Iraqi Property
    Claims Commission (IPCC), 2005-Mar Army Law. 28 (2005) ................................ 18

Hague Convention on the Taking of Evidence in Civil or Commercial Matters,
    March 18, 1970, 23 U.S.T. 2555 ...................................................................... 15

M. Cherif Bassiouni, Postconflict Justice in Iraq, Hum. Rts. Mag., Winter 2006 ........ 19

S. Exec. Rep. No. 101-30 (1990) ............................................................................ 22

S. Rep. No. 102-249 (1991) .................................................................................... 30

The Honourable Terence RH Cole AO RFD QC, Report of the Inquiry into
    certain Australian companies in relation to the UN Oil-for-Food Programme
    (Nov. 2006) ................................................................................................. 6, 8

The Statesman's Yearbook 2008: The Politics, Cultures and Economies of the
    World (Barry Turner ed., 2007) ...................................................................... 18

Page(s)

Transitional Justice Working Group, The Future of Iraq Project: The Road to Re-
    establishing Rule of Law and Restoring Civil Society (Mar. 2003) ....................................... 19

Trial of Bruno Tesch and Two Others (The Zyklon B Case), 1 Law Reports of
    Trials of War Crim. 93 (1947) (British Military Ct., Hamburg, Mar. 1-8, 1946) ................... 27

United Nations Development Programme: Programme on Governance in the Arab
    Region: Arab Countries Profiles: Iraq In Brief ....................................................................... 18

Defendants AWB Limited and AWB (U.S.A.) Limited ("AWB USA")

(collectively, "AWB")[1] submit this Memorandum of Law in Support of their Motion to Dismiss

with prejudice the Class Action Complaint filed herein (cited as "Complaint" or "Mastafa ¶ __"),

pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2]

## PRELIMINARY STATEMENT

The named plaintiffs in this case are two Kurdish women from Erbil, Iraq, whose

husbands were allegedly captured, tortured and killed by the Hussein regime. (Mastafa ¶¶ 25-

26.) Despite the fact that Iraq has a functioning legal system capable of entertaining plaintiffs'

claims for reparations, plaintiffs have chosen instead to try to recover damages on behalf of a

putative class of Iraqi citizens,[3] in a U.S. court, from an Australian company (AWB Limited)

which did no more than sell wheat to Iraq during only part of the proposed class period, as part

of the U.N. Oil-For-Food Programme ("OFFP").[4]  Plaintiffs do not allege – nor can they – that

---

[1] Plaintiffs purport to sue "Australian Wheat Board Limited aka AWB Limited" (Mastafa ¶ 27) for events that allegedly occurred between 1996 and March 2003 (id. ¶ 69). There is no such entity as "Australian Wheat Board Limited". The correct name of the company is AWB Limited.  In addition, AWB Limited was incorporated in Australia on March 12, 1998. (See Declaration of Craig Phillips, sworn to December 14, 2007 ("Phillips Decl.") ¶ 14.) AWB (U.S.A.) Limited was incorporated in Delaware on July 20, 1999. (See Declaration of Daniel P. Roeser, sworn to December 14, 2007 ("Roeser Decl."), Ex. A.) Those companies cannot be liable for alleged events that predate their incorporation.

[2] While, for purposes of this motion only, the Court must accept the factual allegations in the Complaint as true, see Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007), AWB rejects plaintiffs' allegations of wrongdoing and unlawfulness as asserted therein.

[3] The named plaintiffs seek to represent a putative class of "[a]ll persons or their surviving immediate family members who were victims of torture, extrajudicial killings, disappearances, rape and/or murder by and through the actions of the Saddam regime within the territory of Iraq from 1996 through March 2003". (Mastafa ¶ 69.)

[4] Plaintiffs have also named AWB (U.S.A.) Limited as a defendant (Mastafa ¶ 27), despite the fact that the Complaint is devoid of even a single allegation about either that company or its involvement in the alleged events at issue. Plaintiffs' claims against AWB (U.S.A.) Limited should be dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The third named defendant is BNP Paribas ("BNP"), a French bank. (Mastafa ¶ 28.) BNP is filing a separate motion to dismiss.

AWB itself participated directly in any of the egregious acts allegedly committed by the Hussein regime. Indeed, the death of one of the named plaintiffs' husbands occurred almost a year before AWB Limited was even incorporated, and two years before the conduct to which plaintiffs object allegedly commenced.[5]  (Id. ¶ 25.) Instead, plaintiffs premise their case entirely upon a theory of "aiding and abetting" liability on the part of AWB and BNP, by arguing that "Defendants negligently and/or knowingly aided and abetted the most egregious abuses of human rights by paying kickbacks and other unlawful payments to the Saddam Hussein regime in violation of international law under the United Nations Oil-for-Food Program". (Id. at 2.) Plaintiffs further allege that "Defendants, acting together with the Saddam Hussein regime, supported, assisted, bolstered, and aided the Saddam Hussein regime in violation of international law, with full knowledge of the acts of torture, extrajudicial killings, inhumane and degrading treatment, acts of terrorism, and other acts included in the crimes of genocide, war crimes, and crimes against humanity".[6] (Id. ¶ 14.) That is nonsense. Not only do plaintiffs fail to point to a single fact that supports their boilerplate assertion that "Defendants acted as part of a conspiracy with the Saddam Hussein regime, aided and abetted the regime, and . . . acted as an accomplice

---

[5] Plaintiff Mastafa's husband was killed on July 24, 1997. (Mastafa ¶ 25.) AWB Limited was not incorporated until March 12, 1998, and AWB (U.S.A.) Limited was not incorporated until July 20, 1999. (Phillips Decl. ¶ 14; Roeser Decl. Ex. A.) Plainly, those corporations could not have caused, directly or indirectly, or aided and abetted in causing, the death of Mr. Mastafa. In addition, the alleged conduct to which plaintiffs object did not commence until June 1999. (See Statement of Pleaded Facts and Section I, infra.)

[6] Plaintiffs assert claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, for crimes against humanity; war crimes; genocide; torture; extrajudicial killings; forced disappearances of persons; and cruel, inhuman, and/or degrading treatment and/or punishment. (See Mastafa, First through Seventh Claims for Relief.) Plaintiffs also assert a claim under the Torture Victim Protection Act of 1991, 28 U.S.C. § 1350 (note) ("TVPA"). (Mastafa, Eighth Claim for Relief.) Finally, plaintiffs assert claims under New York state law for wrongful death; negligence; battery; intentional infliction of emotional distress; and negligent infliction of emotional distress. (Id., Ninth through Thirteenth Claims for Relief.)

2

to the regime"[7] (id. ¶ 53), but those allegations make no sense.  Why would an Australian wheat

exporter ever want to conspire with the Hussein regime to commit human rights violations such

as torture and genocide?  The answer is simple – it wouldn't, and it didn't.

Plaintiffs' cursory and inadequate pleadings make clear that their claims are a

crude attempt to extract a settlement from corporate defendants with potentially deep pockets.

That is highly improper.  Plaintiffs' claims should be dismissed for the following reasons:

- **Inadequate Pleadings:**  Plaintiffs' pleadings are utterly and facially inadequate.  Plaintiffs not only fail to plead a factual predicate for any of the alleged human rights violations that underlie their claims, but also fail to plead anything that (a) connects AWB's alleged conduct – as a mere supplier of wheat to Iraq under the OFFP – to those violations; or (b) makes it more plausible than not that AWB conspired with the Hussein regime with the purpose of facilitating or enabling such violations.  Under Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007), plaintiffs' reliance throughout their Complaint solely upon conclusory and boilerplate allegations is insufficient to state a claim.[8]

- **Article III Standing:**  Plaintiffs lack Article III standing to sue because they cannot establish a causal connection between their asserted injury and defendants' alleged conduct.  The causal nexus alleged by plaintiffs – that the Hussein regime would not have committed the alleged human rights violations but for the alleged payment by AWB of "inland transportation fees" and "after sales service fees" as part of the OFFP – is blatantly and unduly speculative.  Indeed, plaintiff Mastafa's husband died two years before the alleged payments even commenced.  (See Mastafa Ex. 3; n.5, supra; Section I, infra.)  According to plaintiffs' own pleadings, the

---

[7] In the barely three pages of their Complaint devoted to "Factual Allegations", plaintiffs plead no connection between AWB's alleged payment of "an inland transportation fee" and an "After Sales Service Fee" to the Iraqi Government, and the alleged human rights violations of the Hussein regime from which plaintiffs' claims arise.  (Mastafa ¶¶ 29-45.)  Plaintiffs do not – because they cannot – explain how those alleged fee payments "supported, assisted, bolstered, and aided" the Hussein regime in its commission of alleged human rights violations, or endowed AWB "with full knowledge" of the Hussein regime's acts.  (Id. ¶ 14.)

[8] In Khulumani v. Barclay National Bank Ltd., an ATS case, Judge Korman noted that the pleading standard in Bell Atlantic is "particularly appropriate to . . . class actions . . . which are intended to coerce a settlement rather than provide the framework for a trial which we all know will never take place".  504 F.3d 254, 333 n.15 (2d Cir. 2007) (Korman, J., concurring in part and dissenting in part).  That is the case here.

Hussein regime engaged in the deplorable treatment of Iraqi citizens independent of (and beginning prior to) defendants' alleged acts. This inescapable fact breaks the required chain of causation between defendants' alleged acts and plaintiffs' alleged injury, and deprives plaintiffs of standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (for standing to exist, "there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.'").

- Forum Non Conveniens:  This is a case involving Iraqi plaintiffs and Australian and French defendants, premised upon alleged actions which all occurred entirely outside the U.S. Where, as here, plaintiffs are plainly forum-shopping, their choice of forum should be accorded little deference. This case should thus be dismissed on forum non conveniens grounds. Australia is an adequate alternate forum, and private and public interests both strongly favor dismissal in favor of an Australian forum.

- International Comity:  This case should also be dismissed under the doctrine of international comity. Iraq has a functioning, independent judiciary capable of adjudicating civil claims of the kind brought here, and the current Iraqi Government is attempting to address the legacy of the Hussein regime through the Iraqi Special Tribunal. These Iraqi plaintiffs should bring any claims for compensation in Iraq, not the U.S.

- Act of State:  From its incorporation on March 12, 1998, until July 1, 1999, AWB Limited was an instrumentality of the Australian Government. As a result, plaintiffs are claiming that, during that period, the Australian Government aided, abetted and conspired with the Hussein regime in committing human rights violations in Iraq, with full knowledge thereof. Not only is that allegation deficient for the same lack of causation that deprives plaintiffs of standing (see Section I, infra), but this case should also be dismissed under the Act of State doctrine, which bars judicial inquiry into allegations of illegal conduct by a foreign sovereign.

- Plaintiffs' ATS Claims:  Plaintiffs have not pleaded, and cannot show, a violation of the law of nations for which AWB can be held responsible. Consequently, plaintiffs' ATS claims should be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

- Plaintiffs' TVPA Claim:  Plaintiffs' TVPA claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiffs' pleadings fail to state a claim. Plaintiffs do not – and cannot – make any factual allegations to show that AWB "acted under color of law" for purposes of the TVPA.

> Moreover, corporations such as AWB and BNP are not subject to suit under the TVPA, and plaintiffs have not exhausted their remedies in Iraq.

- <u>Plaintiffs' New York State Law Claims:</u>  Plaintiffs' state law claims should be dismissed because (a) they are barred by the applicable statutes of limitations; and (b) the Complaint fails to state a claim for violation of New York state law.[9]

Because those defects cannot be remedied, and amendment would thus be futile, plaintiffs' Complaint should be dismissed with prejudice.

## STATEMENT OF PLEADED FACTS

*The OFFP:*  In August 1990, U.N. Resolution 661 imposed significant economic sanctions on Iraq that generally required member states to prevent the import and export of goods to and from Iraq.  (<u>Mastafa</u>, Ex. 2.)[10]  In April 1995, pursuant to U.N. Resolution 986, the U.N. Security Council created the OFFP as a limited exception to the sanctions regime.  (<u>Id.</u>, Ex. 1.)  The Iraqi Government was permitted to sell its oil to purchasers of its choice, subject to U.N. approval (<u>id.</u>, Ex. 1 ¶ 1), and to use the proceeds to pay for certain types of humanitarian goods and services (such as wheat) purchased from suppliers of its choice, subject to U.N. approval of the supply contracts (<u>id.</u>, Ex. 1 ¶ 8).

*Alleged Payment by AWB of Fees to the Iraqi Government:*  Commencing in June 1999, the Hussein regime imposed an "inland transportation fee" on AWB of $12 per metric ton of imported wheat.  (<u>Mastafa</u>, Ex. 3, xiv; <u>see also</u> <u>id.</u> ¶ 32.)  During the pendency of the OFFP, AWB allegedly paid $139,274,494 in inland transportation fees to the Iraqi Government.  (<u>Id.</u>

---

[9] The Complaint should also be dismissed for the reasons discussed in the Memorandum of Law in Support of the Motion of Defendant BNP Paribas to Dismiss Plaintiffs' Class Action Complaint, filed on December 14, 2007.

[10] The Court is entitled to consider the entirety of documents cited in, or integral to, the Complaint in deciding this motion to dismiss.  <u>See</u> <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991).

¶ 35.)  The Iraqi Government also imposed an "After Sales Service Fee" on "all humanitarian

goods providers" (usually constituting ten percent of the contract price), beginning in August

2000.  (Id. ¶ 36.; Cole Report Vol. 1, Ch. 3, pp. 85-86 (Roeser Decl. Ex. B).)[11]  AWB allegedly

paid $82,482,748 in "after sales service fees" to the Iraqi Government.  (Mastafa ¶ 36.)  Plaintiffs

characterize those payments as "kickbacks" that were "not allowed under the [OFFP]" (id. ¶¶ 32,

34), but which were allegedly paid to the Iraqi Government so that the Hussein regime could

"obtain hard currency" (id. ¶ 40).  Plaintiffs allege that "Defendant AWB understood that

payments of hard currency to the Saddam regime was prohibited by UN sanctions".  (Id. ¶ 42.)

### ARGUMENT

## I.    PLAINTIFFS DO NOT HAVE ARTICLE III STANDING.

Plaintiffs lack Article III standing to assert their claims.  Standing is "the

threshold question in every federal case, determining the power of the court to entertain the suit".

Warth v. Seldin, 422 U.S. 490, 498 (1975).[12]  At its "irreducible constitutional minimum",

Article III standing requires three things:

> "First, the plaintiff must have suffered an 'injury in fact' – an invasion of a
> legally protected interest which is (a) concrete and particularized, and
> (b) 'actual or imminent, not "conjectural" or "hypothetical[]"'.  Second,
> there must be a causal connection between the injury and the conduct
> complained of – the injury has to be 'fairly . . . trace[able] to the
> challenged action of the defendant, and not . . . the result [of] the
> independent action of some third party not before the court.'  Third, it
> must be 'likely,' as opposed to merely 'speculative,' that the injury will be
> 'redressed by a favorable decision.'"

---

[11] An extract from Volume 1 of The Honourable Terence RH Cole AO RFD QC, Report of the Inquiry into certain Australian companies in relation to the UN Oil-for-Food Programme (Nov. 2006) ("Cole Report") is annexed as Exhibit 3 to the Complaint.  Further extracts are attached to the Roeser Declaration, filed herewith.

[12] Courts "have an obligation to assure [them]selves of litigants' standing under Article III" of the U.S. Constitution.  DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1860-61 (2006) ("Cuno") (internal quotation marks and citation omitted); see also Lujan, 504 U.S. at 560.

Lujan, 504 U.S. at 560-61 (internal citations omitted).[13]

Here, the individual named plaintiffs assert, without support, that their damages "were directly and proximately caused by the actions of the Defendants" because defendants allegedly "aided the Saddam Hussein regime" with "full knowledge" of its alleged human rights violations. (Mastafa ¶ 14.) Plaintiffs' bald assertion of causation, however, is belied by their own insufficient factual allegations. The Complaint alleges only that AWB (1) paid the Iraqi Government certain inland transportation and after-sales-service fees imposed on suppliers under the OFFP (id. ¶¶ 32-33, 35-36), (2) allegedly knew that the purpose of those payments was for the Iraqi Government to obtain "hard currency" (id. ¶ 40), and (3) allegedly understood that payments of "hard currency" to the Iraqi Government were prohibited by U.N. sanctions (id. ¶ 42). Even if that were true – and it is not – the Complaint contains no factual allegation showing that AWB's alleged payment of those fees was in any way related to, let alone caused, any of the injuries suffered by the named plaintiffs. Rather, as plaintiffs admit, those injuries came at the hands of the Hussein regime, a third party not before the court. (See id. ¶ 52.) Plaintiffs thus lack standing, because they cannot establish a causal connection between their asserted injury and defendants' alleged conduct. See Simon, 426 U.S. at 41-42.

First, plaintiffs' theory of causation "depends on the unfettered choices made by independent actors not before the courts", which "courts cannot presume either to control or to predict". Lujan, 504 U.S. at 562 (quotation omitted). The independent actions taken by the Iraqi Government against its own citizens, while deplorable, were wholly unrelated to, and indeed

---

[13] Plaintiffs bear the burden of establishing standing under Article III. See Cuno, 126 S. Ct. at 1861; Spencer v. Kemna, 523 U.S. 1, 11 (1998). In the context of a putative class action, standing is analyzed based on whether the individual named plaintiffs (as opposed to unidentified class members or the class as a whole) can meet the requirements described above. See Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976); Warth, 422 U.S. at 502.

predated, the alleged "kickback scheme" at issue in this case. Those "independent action[s] of some third party not before the court" break the causal chain between defendants' alleged acts and plaintiffs' alleged injury. See id. at 560-61; Simon, 426 U.S. at 45-46. Indeed, "[i]t would be difficult to imagine a clearer example of a third party's actions breaking the causal chain". Greenberg v. Bush, 150 F. Supp. 2d 447, 455 (E.D.N.Y. 2001) (finding that, in an analogous decision, Jewish Israelis lacked Article III standing to bring a class action against American public officials for allegedly supporting "the enemies of the Jewish inhabitants of Palestine" through their foreign policy decisions and other actions because the "gunshots and other violence" that the plaintiffs suffered were not sufficiently traceable to the defendants' actions).

Second, plaintiffs allege no facts from which it reasonably could be inferred that, absent defendants' alleged conduct, there is a "substantial probability" that they would not have been injured by the Hussein regime's alleged human rights violations. See Warth, 422 U.S. at 504. Nor can they. Not only is it ridiculous to suggest that the Hussein regime's alleged acts of genocide, war crimes and other human rights violations can properly be traced back to the payment by a single wheat supplier of Government-mandated transportation and after sales service fees under the OFFP, but even according to plaintiffs, the Hussein regime was committing those violations long before AWB allegedly ever started paying those fees. The first directive by the Iraqi Government imposing the alleged "inland transportation fees" on wheat sellers under the OFFP was issued on June 10, 1999. (Cole Report Vol. 1, Ch. 3, p. 84 (Roeser Decl. Ex. B).) Thus, the fees were first imposed (1) three years after the commencement of the proposed class period, in 1996 (see Mastafa ¶ 69); and (2) two years after the death of plaintiff Mastafa's husband at the hands of the Hussein regime (id. ¶ 25; see also n.5, supra). Consequently, not only does plaintiff Mastafa certainly lack standing to sue defendants, but it is

plain that AWB's alleged payment of those fees under the OFFP could not have caused – and did not cause – the Hussein regime's improper conduct toward its own citizens. Such conduct, sadly, was already ongoing. For that reason, plaintiff Ismail also lacks standing. (Mastafa ¶ 26.)

Third, plaintiffs' argument that the U.N. sanctions might have worked, and the Hussein regime might have been "weaken[ed]" earlier (see id. ¶ 65), but for AWB's alleged fee payments, is pure speculation, insufficient to establish standing. See Dellums v. U.S. Nuclear Regulatory Comm'n, 863 F.2d 968, 974, 980 (D.C. Cir. 1988) (finding that the plaintiff lacked standing because the allegation that his apartheid-related injury was traceable to the defendant's action, which allegedly "blunted the effectiveness of the Anti-Apartheid Act" and thereby perpetuated the plaintiff's injuries suffered as a result of apartheid, was entirely speculative). A "change in economic incentives alone . . . is not sufficient to establish the required causal nexus". Id. at 974. To establish standing, plaintiffs here must show that, but for defendants' conduct, the injuries caused by the Hussein regime would have abated. See id. at 980. They have not made that showing, and cannot do so.[14] Plaintiffs' unsupported allegations are thus insufficient to confer standing, and plaintiffs' claims should be dismissed.

## II.    THE COMPLAINT SHOULD BE DISMISSED ON GROUNDS OF FORUM NON CONVENIENS.

This case should also be dismissed pursuant to the doctrine of forum non conveniens in favor of an adequate alternate forum:  Australia.  Under the forum non conveniens doctrine, a court may decline jurisdiction when "the convenience of the parties and the ends of justice" would be best served by having the dispute adjudicated in a foreign tribunal.

---

[14] See Simon, 426 U.S. at 45 (standing will not exist where the plaintiffs use "[s]peculative inferences" to connect their alleged injury "to the challenged actions"); Warth, 422 U.S. at 507 (the plaintiffs cannot establish standing by relying on the "remote possibility, unsubstantiated by allegations of fact, that their situation might have been better had [defendants] acted otherwise").

Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 527 (1947). That is certainly true in this case, which involves Iraqi plaintiffs and Australian and French defendants and is premised entirely upon alleged actions that occurred outside the U.S.[15]

Courts in the Second Circuit generally apply a three-step inquiry in determining whether a case should be dismissed on forum non conveniens grounds. See Overseas Media, Inc. v. Skvortsov, 441 F. Supp. 2d 610, 615 (S.D.N.Y. 2006). First, the court must decide the degree of deference to accord plaintiff's choice of forum. Id. Second, the court must determine whether defendant's proposed alternate forum is adequate and available to adjudicate the dispute. Id. Third, the court must balance applicable private and public interests to determine whether they favor dismissal. Id. Applying those factors, this Court has previously dismissed several cases asserting ATS and TVPA claims in circumstances similar to those here.[16]

In Turedi, the plaintiffs were Turkish citizens who asserted claims under, inter alia, the ATS, the TVPA, and New York state law, premised upon injuries allegedly caused by Turkish police during a labor dispute in Istanbul between plaintiffs and defendants. 460 F. Supp. 2d at 508-09. In dismissing the complaint on forum non conveniens grounds, the court observed

---

[15] For purposes of a motion to dismiss on forum non conveniens grounds, a court may make factual findings based on submissions by the parties. See, e.g., Koster, 330 U.S. at 531-32. To support such findings, AWB respectfully submits the Phillips Declaration herewith.

[16] See, e.g., Turedi v. Coca Cola Co., 460 F. Supp. 2d 507 (S.D.N.Y. 2006) (dismissing ATS and TVPA claims in favor of Turkey); Abdullahi v. Pfizer, Inc., No. 01 Civ. 8118, 2005 WL 1870811 (S.D.N.Y. Aug. 9, 2005) (dismissing ATS claims in favor of Nigeria); Adamu v. Pfizer, Inc., 399 F. Supp. 2d 495 (S.D.N.Y. 2005) (dismissing ATS claims in favor of Nigeria); Aguinda v. Texaco, Inc., 142 F. Supp. 2d 534 (S.D.N.Y. 2001) (dismissing ATS claims in favor of Ecuador), aff'd, 303 F.3d 470 (2d Cir. 2002). In Wiwa v. Royal Dutch Petroleum Co., the Second Circuit discussed the application of the forum non conveniens doctrine to TVPA cases, noting that while the TVPA expressed a policy favoring the exercise of U.S. jurisdiction, "[t]his is not to suggest that the TVPA has nullified, or even significantly diminished, the doctrine of forum non conveniens". 226 F.3d 88, 106 (2d Cir. 2000). The controlling inquiry remains whether the defendant has fully met its burden of showing that the factors strongly favor trial in the foreign forum. Id.; see also Turedi, 460 F. Supp. 2d at 523. That is certainly the case here.

that "even on the face of the litigation, the intractable difficulties these transnational conflicts present when they involve foreign plaintiffs and underlying events occurring abroad that have nominal other contacts with the United States" strongly favor dismissal under the forum non conveniens doctrine. Id. at 520. That is certainly true here.

### A.    Plaintiffs' Choice of Forum in the United States Deserves Little Deference.

A court's deference to a plaintiff's choice of forum depends, in large part, on whether that choice appears to have been motivated by forum shopping or genuine convenience. See Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp., 421 F. Supp. 2d 741, 754-55 (S.D.N.Y. 2006). Where plaintiffs are foreign residents, the court should accord little deference to their choice of a U.S. forum because "there [] is no reason to assume a U.S. forum is convenient for a foreign plaintiff's suit". Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 71 (2d Cir. 2003). Moreover, "[p]laintiffs' choice of forum is not entitled to a greater deference because they have alleged international law violations." Adamu, 399 F. Supp. 2d at 505 n.6; see also Turedi, 460 F. Supp. 2d at 522.

In their Complaint, plaintiffs assert that there is no more convenient forum than the U.S. for their case. (Mastafa ¶¶ 18-19.) That is not true. Plaintiffs are Iraqi citizens, who do not allege that they have ever even been to this country, or that any events of relevance to this case occurred here. (Id. ¶¶ 25-26.) Consequently, there is no reason to presume that the U.S. is the most convenient forum for their suit. See Pollux, 329 F.3d at 71.

It is also obvious that plaintiffs are forum-shopping.[17] By filing in the U.S.,

---

[17] The forum choice of foreign plaintiffs will be entitled to even less deference when it appears that their choice was motivated by forum-shopping concerns. See Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 154-55 (2d Cir. 2005). Forum-shopping may be demonstrated by: "[1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum

plaintiffs seek to (1) avoid the "loser pays" model for awarding costs and attorneys' fees in Australia (Phillips Decl. ¶ 39(j)), (2) take advantage of the habitual generosity of juries in the U.S., (3) exploit AWB's likely unpopularity (as an alleged aider and abetter of the Hussein regime) before a U.S. jury, and (4) impose great expense and inconvenience on AWB (id. ¶ 82). Consequently, plaintiffs' choice of forum should be given no deference.

**B.    Australia Is an Adequate Alternate Forum.**

An alternate forum is adequate if "the defendants are amenable to service of process there, and if [the forum] permits litigation of the subject matter of the dispute". Pollux, 329 F.3d at 75. Australia meets those requirements.[18] "[T]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum, nor on identical remedies". Norex, 416 F.3d at 158 (citation and internal quotation marks omitted); see also Abdullahi, 2005 WL 1870811, at *15 (dismissing ATS claims in favor of Nigeria); Aguinda, 142 F. Supp. 2d at 539-47 (same with respect to Ecuador and Peru).[19]

First, each defendant either is already subject to jurisdiction in Australia or is willing to submit to such jurisdiction in the event that this case is dismissed on forum non

---

district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, [and] [4] the inconvenience and expense to the defendant from litigation in that forum". Id. at 155 (citation and internal quotation marks omitted); Strategic Value Master Fund, Ltd., 421 F. Supp. 2d at 755. All those factors are present here.

[18] Courts, including the Second Circuit, have long recognized that Australia is an adequate alternate forum. See, e.g., Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996, 1001 (2d Cir. 1993) (affirming forum non conveniens dismissal in favor of Australian courts).

[19] An alternate forum is inadequate only in the rare circumstance "where there is a complete absence of due process and an inability of a plaintiff to obtain substantial justice". VictoriaTea.com, Inc. v. Cott Beverages, Can., 239 F. Supp. 2d 377, 383 (S.D.N.Y. 2003); see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981); Abdullahi, 2005 WL 1870811, at *15. That is certainly not the case in Australia.

conveniens grounds.[20]  Second, as evidenced by the fact that AWB is already a defendant in a

putative class action in the Federal Court of Australia based upon its participation in the OFFP

(Phillips Decl. ¶¶ 58-66), there are several potential claims available to plaintiffs under

Australian law that would address their factual allegations and the subject matter of their claims

(id. ¶¶ 46-50).  Plaintiffs could even bring those claims in Australia as a class action, just as they

did here.  (Id. ¶ 53.)  Third, there is no doubt that the Australian courts would afford all the

litigants due process and just adjudication of plaintiffs' claims.[21]

C.    **Private Interest Factors and Public Interest Factors Both Support Dismissal of This Case on Forum Non Conveniens Grounds in Favor of Australia.**

1.    **Private Interest Factors Strongly Favor Dismissal.**

The private interest factors that courts must consider on a motion to dismiss for

forum non conveniens include: "the interests of the litigants in having the case tried in a

particular forum, the relative ease of access to sources of proof; the availability of compulsory

process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;

---

[20] AWB Limited is already subject to the in personam jurisdiction of the Australian courts and will accept service of process issued in those courts.  (Phillips Decl. ¶ 55; see also Mastafa ¶ 27.)  BNP Paribas is also already subject to the in personam jurisdiction of the Australian courts (Phillips Decl. ¶ 57) and has no objection to this suit being dismissed in favor of Australia. (See Letter from Jennifer L. Spaziano, counsel for defendant BNP Paribas, dated December 13, 2007 (Roeser Decl. Ex. C).)  In the event of dismissal in favor of Australia, AWB USA is also willing voluntarily to submit to the in personam jurisdiction of the Australian courts and will accept service of process issued in those courts.  (See Letter from AWB USA Company Secretary Peter Patterson, dated December 14, 2007 (Phillips Decl. Ex. 5); see also Phillips Decl. ¶ 56.)  Plaintiffs, despite being foreign citizens, would be able to file suit in Australia, retain experienced counsel in Australia, and utilize fully the Australian judicial system to prosecute their claims.  (Phillips Decl. ¶ 54.)

[21] The Australian judicial system affords plaintiffs all of the procedural benefits of the U.S. legal system, including: (a) a pleading phase (where plaintiffs are required to set forth in writing their claims against defendants); (b) mechanisms for dismissal of groundless claims; (c) fact-gathering processes to establish the relevant facts; (d) an adjudicative process in which the court determines and applies the appropriate substantive law based on the evidence before it; (e) an array of remedies to vindicate protected interests; and (f) appellate review to correct error. (Phillips Decl. ¶¶ 33-42.)

. . . and all other practical problems that make trial of a case easy, expeditious and inexpensive".

Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d 234, 237 (2d Cir. 2004); see also

Adamu, 399 F. Supp. 2d at 505. This Court has dismissed ATS claims on forum non conveniens

grounds where, as here, evidence required for the proper adjudication of plaintiffs' claims is not

amenable to discovery in this forum.[22] While plaintiffs can identify no private interest factors

that favor trying this case in the U.S., AWB has numerous valid reasons why the claims should

be adjudicated in Australia.

     First, AWB Limited – the principal defendant in this case – is located in Australia,

along with most of the potentially relevant party and non-party witnesses and documents.[23]

(Phillips Decl. ¶¶ 77-81.) There are at least thirty current or former officers or employees of

AWB and approximately forty non-party witnesses (including Australian government officials)

located in Australia whose testimony may be necessary for a fair adjudication of this suit.[24] (Id.

¶ 70.) This fact is of crucial importance because a U.S. court will not be able to compel those

witnesses to provide live testimony at trial. See Allstate, 994 F.2d at 1001; Turedi, 460 F. Supp.

---

[22] See Adamu, 399 F. Supp. 2d at 505-06 (finding that the private interest factors clearly weighed in favor of dismissal where witnesses crucial to the factual inquiries, including government officials, were all in Nigeria; Aguinda, 142 F. Supp. 2d at 548-51 (finding that the private interest factors heavily supported dismissal in favor of Ecuador where the relevant evidence, including documentary evidence and sources of testimony bearing on the key roles of the government and its officials, was in Ecuador).

[23] Some of those witnesses and documents are potentially within the control of the Australian Government (Phillips Decl. ¶¶ 72, 80), and an Australian court is far better situated than a U.S. court to obtain those documents and that testimony. (Id. ¶ 81.)

[24] Although certain witnesses are located outside Australia, dismissal on forum non conveniens grounds is still appropriate. See ICC Indus., Inc. v. Israel Disc. Bank, Ltd., No. 04 Civ. 6945 (DC), 2005 WL 1844616, at *6-7 (S.D.N.Y. July 29, 2005) (company executives with knowledge of the action were in New York "but the vast majority of the sources of proof in this case" are in the proposed alternate forum). Indeed, Australian law provides a process for the taking of evidence from persons outside of Australia. (Phillips Decl. ¶ 39(h).)

2d at 526. Witnesses in Australia will be outside this Court's subpoena power.[25] See Fed. R.

Civ. P. 45(b)(2). Such witnesses could, however, be compelled to testify before an Australian

court if this case were proceeding in that forum. (Phillips Decl. ¶¶ 39(a), (b).) Under the

controlling Supreme Court and Second Circuit cases, the ability to compel live testimony

(particularly of non-parties) in Australia – but not in the U.S. – weighs powerfully in favor of

dismissal here. See Carey, 370 F.3d at 238.

Second, consideration of the costs and convenience of conducting this litigation

also favors dismissal. It should make no difference to plaintiffs whether this suit proceeds in the

U.S. or Australia because they have no option but to hire foreign counsel in either case. In

contrast, if this suit proceeds in Australia, AWB would be able to utilize experienced Australian

counsel who are already representing it in pending civil litigation and ongoing regulatory

investigations of these same issues in Australia. (Phillips Decl. ¶¶ 58-66, 74-76.) That would

substantially reduce the cost to AWB of this litigation.

### 2.    Public Interest Factors Also Strongly Favor Dismissal.

The public interest factors that courts must consider on a motion to dismiss for

forum non conveniens include: (1) administrative difficulties; (2) the belief that jurors should not

have to decide disputes with no relation to their community; (3) allowing those affected to view

---

[25] Indeed, if this case were to proceed in the U.S., the parties would have no mechanism to compel those witnesses to testify, except for the procedures afforded by the Hague Convention on the Taking of Evidence in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555 (the "Hague Convention"). However, the Hague Convention could not be used to secure live testimony at a U.S. trial, and the Hague Convention procedures are, at best, cumbersome and extremely time-consuming. See Do Rosario Veiga v. World Meteorological Org., 486 F. Supp. 2d 297, 306 (S.D.N.Y. 2007); Turedi, 460 F. Supp. 2d at 526. Additionally, a reservation implemented by Australia pursuant to Article 23 of the Hague Convention states that Australia will not implement letters of request issued for the purpose of pre-trial discovery of documents overseas. (Phillips Decl. ¶ 43.) The difficulties that such a reservation will cause in the U.S. will not exist if this case proceeds in Australia. Those facts strongly favor dismissal.

the suit rather than learn of it by report from a foreign forum; and (4) the interest in deciding
local controversies at home.  Pollux, 329 F.3d at 76.  They also strongly support dismissal here.

      First, Australia has a powerful interest in adjudicating this case.  From its
incorporation on March 12, 1998, until July 1, 1999, AWB Limited was an instrumentality of the
Australian Government, and for the remainder, it had the sole right to market and sell Australian
wheat internationally on behalf of Australian growers.  (Phillips Decl. ¶¶ 7, 14-16.)
Consequently, any claims against AWB are of fundamental interest to Australia.  The same is
true of claims concerning the conduct, knowledge and potential liability of the Australian
Government, and such claims should also properly be adjudicated in Australia.[26]  (See Section
IV, infra.)  Moreover, both the fact that governmental and regulatory bodies in Australia
(including the Cole Commission, the Task Force and the Australian Securities and Investment
Commission) either have investigated or are currently investigating matters pertaining to AWB's
involvement in the OFFP and the pendency in Australia of civil proceedings relating to those
same matters also strongly support dismissal of this action in favor of an Australian forum.
(Phillips Decl. ¶¶ 58-66, 68-76.)

      Second, Australia's strong interest in this case contrasts markedly with the lack of
any connection between the U.S. and the alleged unlawful conduct here at issue – all of which
was extraterritorial.  Plaintiffs are not U.S. citizens (see Mastafa ¶¶ 25-26), and neither they nor
their claims have any connection to this forum.  In an attempt to cobble together some public
interest in a U.S. court hearing these claims, plaintiffs point to their allegations of jus cogens

---

[26] See Turedi, 460 F. Supp. 2d at 528 (finding that the public interest factors tilted strongly in
favor of Turkey where ATS, TVPA, and New York law claims required resolution of "charges of
violations of local and international law by Turkish police"); Aguinda, 142 F. Supp. 2d at 551-52
(finding that public interest factors overwhelmingly supported dismissal of ATS claims in favor
of Ecuador in light of, inter alia, the foreign government's role in the activities at issue).

violations (id. ¶ 16), the "special relationship between the United States and Iraq" (id. ¶ 17), and the fact that U.N. documents and witnesses are located in New York (id. ¶ 19). Those "special interests" pale by comparison to Australia's interest in the case. Accordingly, plaintiffs' claims should be dismissed on forum non conveniens grounds in favor of Australia.

## III.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ON COMITY GROUNDS.

Comity is the respect given to the acts of foreign states, Hilton v. Guyot, 159 U.S. 113, 164 (1895), in "cases touching the laws and interests" of such states. Société Nationale Industrielle Aérospatiale v. United States Dist. Court for the S. Dist. of Iowa, 482 U.S. 522, 543 n.27 (1987). The doctrine of international comity authorizes courts to decline, at their discretion, to adjudicate matters over which they would otherwise have jurisdiction. Bigio v. Coca-Cola Co., 239 F.3d 440, 454 (2d Cir. 2001). Courts have recognized that ATS claims may be dismissed on international comity grounds.[27] Indeed, international comity is one of the prudential principles that the Second Circuit has recognized as a limitation on the availability of relief in federal courts for violations of customary international law. See Khulumani, 504 F.3d at 261-62 (per curiam opinion).[28]

---

[27] See Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004) (dismissing ATS and TVPA claims for lack of subject matter jurisdiction but noting that, "[i]f the Court had found that it properly could exercise jurisdiction over Plaintiffs' claims, it would have dismissed the Amended Complaint based on principles of comity" (internal citations omitted)); see also Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 490-491 (D.N.J. 1999) (dismissing ATS claims based on corporations' use of forced labor during World War II in deference to Germany's interest in determining the nature and scope of recovery available to victims of the Nazi regime).

[28] See also Sosa v. Alvarez-Machain, 542 U.S. 692, 761 (2004) (Breyer J., concurring in part and concurring in the judgment) (suggesting that courts should consider "whether the exercise of jurisdiction under the [ATS] is consistent with those notions of comity that lead each nation to respect the sovereign rights of other nations by limiting the reach of its laws and their enforcement. . . . Those comity concerns . . . arise when foreign persons injured abroad bring suit in the United States under the ATS, asking the courts to recognize a claim that a certain kind of foreign conduct violates an international norm.").

International comity in this case requires that the Complaint be dismissed in favor of allowing plaintiffs, and the Iraqi citizens they seek to represent (see Mastafa ¶ 69), to seek redress or reparations in Iraq, through the Iraqi legal system, for wrongs (such as torture and genocide) committed against them by the Hussein regime. As is clearly shown by plaintiffs' own pleadings, those wrongs, and a desire to be compensated for the suffering caused to the Iraqi people by its own government, are what this case is really about.

The Iraqi legal system is capable of addressing such compensation claims. Not only does Iraq have a functioning, independent judiciary capable of adjudicating civil claims of the kind brought here,[29] but the current Iraqi Government is attempting to address the legacy of the Hussein regime, having established a body – the Iraqi Special Tribunal – to try senior members of the Hussein regime for the same underlying human rights violations alleged by plaintiffs: crimes against humanity, war crimes, and genocide. See The Statesman's Yearbook 2008: The Politics, Cultures and Economies of the World 672 (Barry Turner ed., 2007) (Roeser Decl. Ex. E). Even plaintiffs acknowledge that the "new government of Iraq" has taken key steps to address the legacy of the Hussein regime. (See Mastafa ¶ 20.) Various Iraqi bodies, such as the Iraqi Jurists' Association, have recommended that victim compensation issues should

---

[29] See United Nations Development Programme: Programme on Governance in the Arab Region: Arab Countries Profiles: Iraq In Brief, available at www.pogar.org/countries/country.asp?cid=6 ("The Judiciary is independent and represented by courts of different kinds and levels, and they issue their rulings according to law. No authority can interfere in the judiciary or in the affairs of justice.") (Roeser Decl. Ex. D); see also Dan E. Stigall, Courts, Confidence, and Claims Commissions: The Case for Remitting to Iraqi Civil Courts the Tasks and Jurisdiction of the Iraqi Property Claims Commission (IPCC), 2005-Mar Army Law. 28, 40 (2005) (footnotes omitted) ("Iraq's courts, however, are functioning. The [Coalition Provisional Authority], during its existence, fostered effective and fair justice systems, rehabilitated each of Baghdad's courthouses to the point of functionality, and rehabilitated the Iraqi Judicial College (the site of judicial training). Ambassador L. Paul Bremer, former director of the Coalition Provisional Authority, noted as early as 9 October 2003 that, '[s]ix months ago there were no functioning courts in Iraq. Today nearly all of Iraq's 400 courts are functioning. Today, for the first time in over a generation, the Iraqi judiciary is fully independent.'").

be addressed in <u>Iraq</u>, and not in a foreign country such as the U.S.[30] The ability of Iraq to

manage that process is an important aspect of that country's newly-restored sovereignty, and one

to which this Court should defer. Claims by Iraqi citizens based upon injuries suffered as a result

of wrongdoing by their own government are properly the province of the Iraqi legal system, and

this Court should not frustrate Iraq's efforts to address the legacy of the Hussein regime by

adjudicating such claims itself. <u>See</u> <u>Iwanowa</u>, 67 F. Supp. 2d at 490-91. Plaintiffs' claims

should thus be dismissed on comity grounds. <u>Id.</u>; <u>see also</u> <u>Bi v. Union Carbide Chems. &</u>

<u>Plastics Co.</u>, 984 F.2d 582, 586 (2d Cir. 1993).

## IV.    THE ACT OF STATE DOCTRINE REQUIRES DISMISSAL OF PLAINTIFFS' CLAIMS.

This Court should dismiss plaintiffs' claims under the Act of State doctrine

because it cannot decide those claims without ruling on the legitimacy of the acts of a foreign

sovereign government, Australia. The Act of State doctrine bars adjudication where "a [U.S.]

court must decide – that is, when the outcome of the case turns upon – the effect of official

action by a foreign government". <u>W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l</u>,

493 U.S. 400, 406 (1990); <u>see also</u> <u>Banco Nacional de Cuba v. Sabbatino</u>, 376 U.S. 398, 401

---

[30] The Working Group on Transitional Justice in Iraq, a part of the U.S. government's "Future of Iraq Project", in cooperation with the Iraqi Jurists' Association, developed a Transitional Justice Plan for Iraq beginning in July 2002. That plan noted: "Addressing the regime's crimes through open and fair trials for those suspected of war crimes, crimes against humanity and other serious abuses is a cornerstone of this plan. In addition, Truth Committees with a mandate to discover the truth, establish a record and disseminate this information on the national and international levels are proposed. <u>Victim's compensation mechanisms are recommended as a key element in the effort to inhibit potential public demands for vengeance.</u>" <u>See</u> Transitional Justice Working Group, <u>The Future of Iraq Project: The Road to Re-establishing Rule of Law and Restoring Civil Society</u> 5 (Mar. 2003), <u>available at</u> www.gwu.edu/~nsarchiv/ NSAEBB/NSAEBB198/FOI%20Transitional%20Justice.pdf (emphasis added) (Roeser Decl. Ex. F). <u>See also</u> M. Cherif Bassiouni, <u>Postconflict Justice in Iraq</u>, Hum. Rts. Mag., Winter 2006, <u>available at</u> www.abanet.org/irr/hr/winter06/bassiouni.html ("[Post-conflict justice] mechanisms must be made part of an <u>Iraqi process</u> that enjoys national and international legitimacy and that would also have broad <u>Iraqi popular support</u>." (emphasis added)) (Roeser Decl. Ex. G).

(1964). The doctrine applies where either the relief sought or the defense interposed would require a court in the U.S. to declare invalid or illegal the official act of a foreign sovereign in its own territory.[31] Kirkpatrick, 493 US. at 405. That is precisely the decision plaintiffs seek here.

Plaintiffs' proposed class period is "1996 through March 2003". (Mastafa ¶ 69.) However, AWB Limited was not incorporated until March 12, 1998, and until July 1, 1999, was wholly-owned by the Australian Wheat Board, a statutory body of the Australian Government. (Phillips Decl. ¶¶ 14-16.) Consequently, prior to July 1, 1999, AWB Limited was itself an instrumentality of the Australian Government.[32] That fact has fatal consequences for plaintiffs' case.

First, it means that plaintiffs are alleging that prior to July 1999, the Australian Government aided, abetted and conspired with the Hussein regime in committing human rights violations in Iraq, with full knowledge thereof. (Mastafa ¶¶ 14, 44-45, 53.) Even putting aside (1) the fact that the Complaint contains no factual allegations to support that claim, and is thus insufficient under Bell Atlantic, 127 S. Ct. at 1964-65, and (2) the fact that plaintiffs' allegations against the Australian Government also fail for lack of a causal nexus that deprives plaintiffs of standing (see Section I, supra), the Act of State doctrine independently compels dismissal of this

---

[31] Courts have recognized that ATS claims may be dismissed based on the Act of State doctrine. See, e.g., Corrie v. Caterpillar, Inc., 403 F. Supp. 2d 1019, 1032-33 (W.D. Wash. 2005) (dismissing a lawsuit alleging that a foreign nation's "official policy violates international law"), aff'd, 503 F.3d 974 (9th Cir. 2007); Doe v. State of Israel, 400 F. Supp. 2d 86, 111, 114 (D.D.C. 2005) (dismissing the complaint on jurisdictional grounds but observing that "the Court would abstain from exercising jurisdiction because of prudential concerns embodied in the act of state doctrine" because the "Plaintiffs' complaint is littered with issues that the . . . act of state doctrine[] shield[s] from judicial review"). It is another of the prudential principles that operates to limit the availability of relief in the federal courts for violations of customary international law. See Sosa, 542 U.S. at 727-28.

[32] AWB (U.S.A.) Limited was not incorporated until July 20, 1999, after AWB Limited was privatized. (Roeser Decl. Ex. A.)

action, because it directly implicates a foreign sovereign as an alleged co-conspirator and would require this Court to adjudicate the legality of the Australian Government's actions within Australia.[33]

Second, to the extent that any wheat supply contracts about which plaintiffs complain were executed between March 12, 1998, and July 1, 1999, those contracts were, in effect, agreements between the governments of Iraq and Australia. Any such contracts were negotiated, concluded, drafted, and approved by each country's representatives entirely outside the U.S., in Australia and Iraq. Under the Act of State doctrine, their legality is not to be determined by a U.S. court. See Sabbatino, 376 U.S. at 401. Plaintiffs' claims should therefore be dismissed.

## V.    PLAINTIFFS' ATS CLAIMS (CLAIMS 1-7) MUST BE DISMISSED.

The ATS[34] provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States". 28 U.S.C. § 1350. The Supreme Court explained the application of the ATS in Sosa, holding that "the ATS is a jurisdictional statute creating no new causes of action", 542 U.S. at 724, which "enable[s] federal courts to hear claims in a very limited category defined by the law of nations and recognized at common law", id. at 712.

---

[33] See, O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A., 830 F.2d 449, 452-54 (2d Cir. 1987) (the Act of State doctrine barred an antitrust action against an instrumentality of the Colombian government that was based on Colombia's cargo reservation laws and alleged, inter alia, a conspiracy to exclude competitors); Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc., 686 F.2d 322, 326 (5th Cir. 1982) ("[T]he district court did not err in dismissing the conspiracy claim. Resolution . . . would require a determination of the legality of the Mexican government's action . . . .").

[34] The ATS is also referred to as the "Alien Tort Claims Act" ("ATCA"), see, e.g., Khulumani, 504 F.3d at 258 (per curiam opinion); Flores v. Southern Peru Copper Corp., 414 F.3d 233, 236 (2d Cir. 2003), and the "Alien Tort Act", see, e.g. Kadic v. Karadzic, 70 F.3d 232, 236 (2d Cir. 1995).

Despite the divergent opinions issued by the panel in the Second Circuit's recent Khulumani decision, the Court nevertheless agreed that in order to proceed with an ATS claim: (1) a plaintiff must plead and show a violation of the law of nations for which the defendant can be held responsible; and, if that requirement is met, (2) the court must, in the exercise of its discretion, then decide to recognize a federal common law cause of action to provide a remedy for that alleged violation. See 504 F.3d at 266-68 (Katzmann, J.), 284-85 (Hall, J.), 308-11 (Korman, J.). Because plaintiffs in this case fail to meet the first requirement, however, this Court need not even consider the second. Plaintiffs have not pleaded, and cannot show, a violation of the law of nations for which AWB can be held responsible.[35] Consequently, this Court lacks subject matter jurisdiction over plaintiffs' ATS claims, and plaintiffs have failed to state a claim against AWB for a violation of customary international law upon which relief can be granted.[36] Plaintiffs' ATS claims must be dismissed. Fed. R. Civ. P. 12(b)(1), (6).[37]

---

[35] Plaintiffs also have not pleaded, and cannot show, a violation by AWB of any "treaty of the United States". 28 U.S.C. § 1350. Plaintiffs fail to specify any U.S. treaties on which they purportedly base their ATS claims. Indeed, none of the treaties mentioned in passing in the Complaint – the Convention Against Torture, Common Article III and Protocol II of the Geneva Conventions, and the Convention on the Prevention and Punishment of the Crime of Genocide of 1948 (see Mastafa ¶ 49) – is self-executing. See S. Exec. Rep. No. 101-30, at II(3) (1990) (U.S. Senate Resolution of Advice and Consent to Ratification of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment) (U.N. Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment is not self-executing and provides "a private right of action for damages only for acts of torture committed in [the] territory under the jurisdiction of that State Party"); Iwanowa, 67 F. Supp. 2d at 439 n.16 ("Courts have unanimously held that neither the Hague nor Geneva Conventions are self-executing."); 18 U.S.C. § 1092 (The Genocide Convention Implementation Act of 1987, Pub. L. No. 100-606, 102 Stat. 3045 (1988), codified at 18 U.S.C. § 1091 et seq., which implemented the Convention on the Prevention and Punishment of the Crime of Genocide, shall not "be construed as creating any substantive or procedural right enforceable by law by any party in any proceeding".). Therefore, none of the treaties is judicially enforceable by plaintiffs under the ATS. See Iwanowa, 67 F. Supp. 2d at 439 n.16. Moreover, plaintiffs have failed to plead any facts to suggest that AWB ever violated a U.S. treaty.

[36] In the context of the ATS, the Second Circuit has consistently used the term "customary international law" as a synonym for the term "law of nations". See Flores, 414 F.3d at 237 n.2.

As an initial matter, plaintiffs do not allege that AWB itself violated the law of nations by engaging in any human rights violations in Iraq. AWB is not alleged itself to have committed crimes against humanity, war crimes, genocide, torture, extrajudicial killings, forced disappearances of persons, or cruel, inhuman, and/or degrading treatment and/or punishment. Any such allegation would be ludicrous and baseless. Instead, plaintiffs rest their claims solely on thinly pleaded allegations of secondary liability on the part of defendants for acts allegedly committed in Iraq by the Hussein regime.[38] (See, e.g., Mastafa ¶ 53 ("Defendants acted as a part of a conspiracy with the Saddam Hussein regime, aided and abetted the regime, and . . . acted as an accomplice to the regime").) However, plaintiffs' allegations are insufficient to establish that AWB violated customary international law, as is required for ATS liability.[39]

---

[37] Plaintiffs also allege that this Court should exercise jurisdiction based upon 28 U.S.C. § 1332 (i.e., diversity jurisdiction) and 28 U.S.C. § 1331 (i.e., federal question jurisdiction). (Mastafa ¶ 4.) Neither statute provides a basis for federal subject matter jurisdiction here. It is well settled that diversity is absent "where on one side there are citizens and aliens and on the opposite side there are only aliens". Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579, 581 (2d Cir. 2002). That is plainly the case here. Defendants are "citizens and aliens": AWB is an Australian corporation; AWB USA is a Delaware corporation; and BNP Paribas is a French bank. (Mastafa ¶¶ 27-28.) On the opposing side, "there are only aliens": both plaintiffs are "Kurdish wom[en] who [have] lived and continue[] to live in Erbil, Iraq". (Id. ¶¶ 25-26.) The Complaint refers to § 1331 only in connection with the claim for cruel, inhuman, and/or degrading treatment and/or punishment (id. ¶ 137) – a claim to which federal question jurisdiction clearly does not apply. Nor could plaintiffs invoke this Court's federal question jurisdiction based on their TVPA claim because, as discussed below (see Section VI, infra), plaintiffs fail to state a claim under the TVPA. Therefore, this Court lacks subject matter jurisdiction. See Arndt, 342 F. Supp. 3d at 142 (holding that inadequate TVPA pleadings "do[] not state a claim for relief within the subject matter jurisdiction of this Court").

[38] As noted earlier (see p. 3, supra), plaintiffs have failed to plead a factual predicate for any of the human rights violations allegedly committed by the Hussein regime in Iraq, which AWB supposedly aided and abetted. Plaintiffs' failure adequately to plead a primary violation of customary international law precludes them from establishing a secondary violation of the kind of which they accuse AWB, under the pleading standard set forth in Bell Atlantic. 127 S. Ct. at 1964-65; see also Stutts v. The De Dietrich Group, No. 03-CV-4058 (ILG), 2006 WL 1867060, at *11 (E.D.N.Y. June 30, 2006).

[39] Plaintiffs also purport to bring their New York state law claims (Claims 9-13) under the ATS. However, none of those claims – aiding and abetting wrongful death (Mastafa ¶ 157), negligence (id. ¶ 166), battery (id. ¶ 174), intentional infliction of emotional distress (id. ¶ 185),

A.    **Plaintiffs Fail Adequately to Plead, and Cannot Show, That AWB Aided or Abetted the Hussein Regime's Alleged Violations of Customary International Law.**

The Second Circuit recently held that a plaintiff may plead a theory of aiding and abetting liability under the ATS.[40] Khulumani, 504 F.3d at 260 (per curiam opinion). While the opinions of the panel diverged in many respects, Judges Katzmann and Korman agreed on the following test for aiding and abetting liability in the ATS context: "a defendant may be held liable under international law for aiding and abetting the violation of that law by another when the defendant (1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the purpose of facilitating the commission of that crime". Id. at 277 (Katzmann, J., concurring); see id. at 333 (Korman, J., concurring in part and dissenting in part). Plaintiffs' pleadings fail to meet that standard with respect to AWB.

First, the Complaint includes no factual allegations in support of plaintiffs' claim that AWB provided practical assistance to the Hussein regime, much less that such assistance had a "substantial effect" on the perpetration of the Iraqi Government's alleged human rights violations. Rather, plaintiffs rely solely on the conclusory allegation (repeated throughout the Complaint) that AWB "aided and abetted the Saddam Hussein regime by knowingly providing

---

and negligent infliction of emotional distress (id. ¶ 194) – is a violation of customary international law. See, e.g., Benjamins v. British European Airways, 572 F.2d 913, 916 (2d Cir. 1978) (The "Alien Tort Claims Act does not provide a basis for jurisdiction over this action" alleging a wrongful death claim against an international air carrier.). Plaintiffs provide no factual allegations in support of their bald assertion that such claims "constitute torts committed in violation of the law of nations or a treaty of the United States under 28 U.S.C. § 1350". (Mastafa ¶¶ 159, 168, 176, 187, and 196 (internal quotation marks omitted).) They point to no competent source of international law norms that has considered such claims to be part of customary international law. Plaintiffs cannot bring them under the ATS.

[40] That holding will be appealed. Defendants in Khulumani have stated their intention shortly to file a petition for writ of certiorari to the Supreme Court, seeking review of the Second Circuit's decision. See Khulumani v. Barclay Nat'l Bank Ltd., Nos. 05-2141-CV, 05-2326-CV, 2007 WL 4180152, at *1 (2d Cir. Nov. 27, 2007).

practical assistance and/or encouragement through direct payments in violation of international law which had [a] substantial effect on the perpetration" of crimes against humanity (Mastafa ¶ 84), war crimes (id. ¶ 93), genocide (id. ¶ 100), torture (id. ¶ 110), extrajudicial killings (id. ¶ 119), forced disappearances of persons (id. ¶ 129), and cruel, inhuman, and/or degrading treatment and/or punishment (id. ¶ 138). Plaintiffs then aver that such claims "constitute torts committed in violation of the law of nations or a treaty of the United States under 28 U.S.C. § 1350". (Id. ¶¶ 83, 95, 102, 112, 121, 131, and 140 (internal quotation marks omitted).) Such "allegations" of secondary liability – consisting entirely of legal conclusions and utterly devoid of any facts at all – do not come close to satisfying the pleading standard enunciated in Bell Atlantic, 127 S. Ct. at 1964-65.[41]

   Second, plaintiffs' do not – and cannot – plead any facts suggesting that AWB, which simply sold wheat to Iraq under the OFFP, acted with the purpose of facilitating the commission of the human rights violations allegedly perpetrated by the Hussein regime. (See Mastafa ¶¶ 29-45.) Judges Katzmann and Korman made clear that "a defendant is guilty of aiding and abetting the commission of a crime only if he does so '[f]or the purpose of facilitating the commission of such a crime'". Khulumani, 504 F.3d at 275, 332 (emphasis added; alteration in original; citation omitted). It is not enough simply to allege that a defendant provided a wrongdoer with funds – even knowing or having good reason to believe that the recipient would use those funds in financing enterprises conducted in violation of either national or international law – so long as the funds were not provided with the purpose of facilitating the wrongdoer's

---

[41] See Bell Atlantic, 127 S. Ct. at 1964-65 (For purposes of a Rule 12(b)(6) motion, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted).).

illegal activities. See id. at 276, 292-93, 333. Plaintiffs do not allege – nor could they – that AWB ever acted with that purpose. (See, e.g., Mastafa ¶ 45.) Indeed, it is not only offensive, but facially implausible to suggest that AWB, as a supplier of wheat under the OFFP, paid certain Government-mandated inland transportation and after sale service fees with the specific purpose of aiding and abetting the Hussein regime's alleged human rights violations against its own citizens. Plaintiffs thus have not shown, and cannot show, that AWB ever aided and abetted the Hussein regime, for purposes of establishing ATS liability. Khulumani, 504 F.3d at 277, 333.

Plaintiffs have similarly failed to meet the standard for aiding and abetting liability under the ATS advanced by Judge Hall in his concurrence. Judge Hall proposed that aiding and abetting liability should be found only where a defendant furthered the violations of a clearly established international law norm in one of three ways: (1) by knowingly and substantially assisting in the commission of an act that violates a clearly established international law norm, (2) by soliciting the commission of an act with actual or constructive knowledge that a clearly established customary international law norm will be violated in the process of its completion, or (3) by facilitating the commission of human rights violations by providing the tools, instrumentalities, or services to commit those violations with actual or constructive knowledge that they will be (or only could be) used in connection with that purpose. Id. at 288-89 (Hall, J., concurring).

In proposing that standard, Judge Hall explained that he intended aiding and abetting liability to attach only in the limited circumstance in which "a defendant played a knowing and substantial role in the violation of a clearly recognized international law norm". Id. at 289. The first category of aiding and abetting liability was "designed to capture the case of a

26

principal tortfeasor who seeks assistance from a defendant to commit an act that violates international law norms, such as the extrajudicial killing of an opposition political figure". Id. The second was "designed to cover circumstances where the alleged aider and abettor is accused of having purchased security services with the knowledge that the security forces would, or were likely to, commit international law violations in fulfilling their mandate". Id. The third was designed to apply to facts like The Zyklon B Case, see Trial of Bruno Tesch and Two Others (The Zyklon B Case), 1 Law Reports of Trials of War Crim. 93 (1947) (British Military Ct., Hamburg, Mar. 1-8, 1946) (where the principal defendant was the sole owner of a firm that proposed using Zyklon B, a highly dangerous poison gas, to exterminate human beings; undertook to train the S.S. in this "new method of killing"; was aware that, by June 1942, the gas was being used for such a purpose; and distributed the gas to Auschwitz and other concentration camps from 1941 to 1945). Khulumani, 504 F.3d at 290. For the same reasons discussed above, the Complaint here pleads nothing remotely like any of the three categories of claims articulated by Judge Hall.

Consequently, under either standard enunciated by the Second Circuit in Khulumani, 504 F.3d at 277, 288-89, 333, plaintiffs have not pleaded, and cannot show, that AWB should be held responsible for a violation of customary international law on aiding and abetting grounds. Id. Thus, plaintiffs have failed to, and cannot, state a claim under the ATS against AWB upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), and this Court lacks subject matter jurisdiction under the ATS, Fed. R. Civ. P. 12(b)(1). Plaintiffs' ATS claims must be dismissed with prejudice.

**B.    Plaintiffs Fail Adequately to Plead, and Cannot Show, That AWB Either Conspired with the Hussein Regime or Served as Its Accomplice with Respect to Any Alleged Violations of Customary International Law.**

In addition to alleging that AWB "aided and abetted the Saddam Hussein regime", plaintiffs assert that AWB "acted as a part of a conspiracy with the Saddam Hussein regime" and "acted as an accomplice to the regime". (Mastafa ¶ 53.) Plaintiffs also fail to state a claim under those theories of secondary liability.

First, plaintiffs' conspiracy allegations are insufficient on their face. Plaintiffs make no allegation that AWB conspired with the Hussein regime to commit any alleged human rights violations. Nor could they. Such a conspiracy theory would be implausible, to say the least. At most, plaintiffs seem to suggest, in passing, that AWB conspired with the Iraqi Government to violate U.N. Resolution 986. (See id. ¶ 54.) That bald assertion of conspiracy – unsupported by any factual allegations – is insufficient under Bell Atlantic. See 127 S. Ct. at 1964-65. As discussed above, plaintiffs do not, and cannot, offer any factual allegations linking AWB's alleged fee payments (i.e., the supposed violation of U.N. Resolution 986) to the alleged human rights violations committed by the Hussein regime. Indeed, the plain fact is that, based on plaintiffs' own allegations, AWB's alleged conduct is wholly unrelated to plaintiffs' claims. Consequently, the Complaint fails to state a claim based on any conspiracy theory. See In re Sinaltrainal Litig., 474 F. Supp. 2d 1273, 1296 (S.D. Fla. 2006) (dismissing "murky allegations of a vague conspiracy" for lack of subject matter jurisdiction under the ATS because the allegations failed to inform the defendants of the nature of the alleged conspiracy).

Second, plaintiffs' conclusory allegations of accomplice liability, consisting of two isolated incantations of the word "accomplice" in the Complaint, are just as inadequate. The Complaint alleges that "[t]he Defendants were accomplices in the egregious human rights violations complained of herein" (Mastafa at 2) and "acted as an accomplice to the [Hussein]

28

regime" (id. ¶ 53). That is all. Such empty allegations, devoid of any facts, are precisely the sort of "labels and conclusions" that the Supreme Court found insufficient to state a claim in Bell Atlantic. See 127 S. Ct. at 1964-65.

## VI.    PLAINTIFFS' TVPA CLAIM (CLAIM 8) MUST BE DISMISSED.

As noted above, under the TVPA, "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to torture . . . or extrajudicial killing" is liable to that individual for damages. 28 U.S.C. § 1350 (note, § 2(a)). Plaintiffs allege that their husbands, as well as other class members, "were tortured by [] persons under the control and authority of the Saddam regime" (Mastafa ¶ 144) and "were subject to extrajudicial killings by persons under the control of or who represented the Saddam regime" (id. ¶ 145). They do not allege that AWB itself engaged in torture or extrajudicial killings, but rather base their TVPA claim against AWB on the theory that AWB aided and abetted (or is otherwise secondarily liable for) the Hussein regime's acts. (See, e.g., id. ¶ 53.) Even assuming AWB could be held secondarily liable under the TVPA, the pleading of this claim is fatally defective.

First, plaintiffs do not (and cannot) make any factual allegation that AWB "acted under color of law" for purposes of the TVPA. "By its plain language, the [TVPA] renders liable only those individuals who have committed torture or extrajudicial killing 'under actual or apparent authority, or color of law, of any foreign nation'." Kadic, 70 F.3d at 245. An individual "acts under color of law . . . when he acts together with state officials or with significant state aid". Khulumani, 504 F.3d at 259-60 (per curiam opinion) (internal quotation marks omitted) (affirming the district court's dismissal of the plaintiffs' aiding and abetting claim under the TVPA because the plaintiffs "failed to link any defendants to state aid or the conduct of state officials"). Plaintiffs allege in the Complaint, without any factual basis, that "[t]he persons who carried out the atrocities were acting under color of law and/or with apparent

29

or actual authority from the Saddam regime". (Mastafa ¶ 144.) That boilerplate pleading is not enough. Bell Atlantic, 127 S. Ct. at 1964-65. Rather, plaintiffs must show, in more than conclusory fashion, that AWB acted together with Iraqi officials or with significant aid from the Iraqi Government to commit torture and extrajudicial killings.[42] Plaintiffs have done no such thing. Plaintiffs do not, and cannot, allege any facts to establish any link between AWB's alleged conduct and the Hussein regime's alleged torture and extrajudicial killings. Plaintiffs' TVPA claim thus fails.

Second, corporations such as AWB Limited and AWB (U.S.A.) Limited are not subject to suit under the TVPA. As its plain language states, the TVPA authorizes suits only against "individuals" – not against corporations. In common and legal usage, the term "individual" denotes a natural, as opposed to an institutional, person. Moreover, the legislative history confirms that the omission of corporate liability from the scope of the TVPA was deliberate.[43] Further, numerous courts (including several in this Circuit) have held that corporations are not subject to suit under the TVPA.[44] Therefore, even assuming that the TVPA

---

[42] Cf. Bigio, 239 F.3d at 448-49 (holding that obtaining an indirect economic benefit from unlawful state action is not an "act under color of law" for purposes of the ATS and finding that the defendant did not act "together with" state actors simply because it had knowingly purchased the plaintiffs' wrongly confiscated property from, and thereby enriched, the Egyptian government).

[43] See S. Rep. No. 102-249, at 7 (1991) ("[T]he term 'individual' . . . make[s] [it] crystal clear that foreign states or their entities cannot be sued under this bill under any circumstances: only individuals may be sued".).

[44] See, e.g., In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 828 (S.D.N.Y. 2005); Arndt, 342 F. Supp. 2d at 141; Friedman v. Bayer Corp., No. 99-CV-3675, 1999 WL 33457825, *2 (E.D.N.Y. Dec. 15, 1999); Khulumani, 504 F.3d at 337 (Korman, J. concurring in part and dissenting in part); Doe v. Exxon Mobil Corp., 393 F. Supp. 2d 20, 28 (D.D.C. 2005), appeal dismissed, 473 F.3d 345 (D.C. Cir. 2007), petition for cert. filed, 76 U.S.L.W. 3050 (U.S. July 20, 2007) (No. 07-81).

imposes secondary liability, such liability must also be limited to "individuals". Since the TVPA claim here is pleaded against only corporations (and not individuals), the claim fails.

Third, plaintiffs have not exhausted their remedies in Iraq. The TVPA provides that "[a] court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred". 28 U.S.C. § 1350 (note, § 2(b)). Here, plaintiffs do not assert that they have exhausted their remedies in Iraq – presumably due to a supposed "lack of rule of law" in that country. (Mastafa ¶ 18.) But that is wrong – as discussed above, Iraq has a functioning, independent judiciary that has taken steps to address the Hussein regime's crimes and is capable of adjudicating civil claims of the kind brought here. Plaintiffs' remedies in Iraq are adequate and available.[45] Since plaintiffs have failed to exhaust those remedies, this Court should decline to hear their claim.[46]

## VII.    PLAINTIFFS' NEW YORK STATE LAW CLAIMS (CLAIMS 9-13) MUST BE DISMISSED.

Plaintiffs have brought claims under New York state law for wrongful death (Claim 9), negligence (Claim 10), battery (Claim 11), intentional infliction of emotional distress (Claim 12), and negligent infliction of emotional distress (Claim 13). Plaintiffs' state law claims must be dismissed because (1) they are barred by the applicable statutes of limitations and (2) plaintiffs have failed to state a claim under New York law in any event.[47]

---

[45] See Corrie, 403 F. Supp. 2d at 1025-26 ("A foreign remedy is adequate even if not identical to remedies available in the United States. Courts usually find a foreign remedy adequate unless it is no remedy at all." (internal quotation marks omitted)).

[46] The Supreme Court has indicated that an exhaustion-of-remedies requirement might apply under the ATS as well. See Sosa, 542 U.S. at 733 n.21. If so, plaintiffs have failed to meet that requirement, inasmuch as they do not even pretend to have exhausted their remedies in Iraq.

[47] In addition, since plaintiffs' federal law claims must be dismissed for the reasons stated

First, plaintiffs' claims are all barred by the applicable statutes of limitations. The longest statute of limitations for plaintiffs' state law claims is three years.[48] The most recent act alleged in the Complaint is the death of Plaintiff Ismail's husband on December 6, 2003 (id. ¶ 26), and plaintiffs' proposed class period actually ends eight months earlier (id. ¶ 69). Consequently, the alleged acts all occurred more than three years before plaintiffs filed their Complaint on September 11, 2007. The limitations period has expired.

Moreover, the statute should not be equitably tolled. Under New York law, the doctrine of equitable tolling "may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action". Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (quoting Doe v. Holy See (State of Vatican City), 17 A.D.3d 793, 794 (N.Y. App. Div. 3d Dep't 2005)) (internal quotation marks omitted). "Generally, mere silence or failure to disclose the wrongdoing is insufficient." Doe, 17 A.D.3d at 795 (internal quotation marks omitted).[49] Plaintiffs have not alleged, nor can they, that defendants ever communicated with them, much less induced them (by fraud, deception,

---

above, the Court should decline to exercise supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367.

[48] Under New York law, claims for negligence and negligent infliction of emotional distress are governed by a three-year statute of limitations. N.Y. C.P.L.R. § 214(5) ; see also Sotheby's Fin. Servs. v. Baran, No. 00 Civ. 7897 (BSJ), 2003 U.S. Dist. LEXIS 13079, at *29 (S.D.N.Y. July 29, 2003) (negligence), aff'd, 107 Fed. Appx. 235 (2d Cir. 2004); Oshinsky v. N.Y. City Hous. Auth., No. 98 Civ. 5467 (AGS), 1999 U.S. Dist. LEXIS 11534, at *8 (S.D.N.Y. July 29, 1999) (negligent infliction of emotional distress). A claim for wrongful death is subject to a two-year statute of limitations. N.Y. Est. Powers & Trusts Law § 5-4.1(1). A one-year statute of limitations applies to claims for battery and intentional infliction of emotional distress. N.Y. C.P.L.R. § 215(3) (battery); Oshinsky, 1999 U.S. Dist. LEXIS 11534, at *8 (intentional infliction of emotional distress).

[49] See also Abbas, 480 F.3d at 642 ("If a plaintiff cannot 'articulate[] any acts by defendants that prevented [him] from timely commencing suit' then he has 'failed to meet [his] burden of showing that [he was] wrongfully induced by defendants not to commence suit.'" (alterations in original; citation omitted)).

misrepresentations, or otherwise) to refrain from filing a timely action. (<u>Mastafa</u> ¶¶ 23-24.)

Further, even if the equitable tolling doctrine could apply here, it would not save

plaintiffs' state law claims from dismissal under the applicable statutes of limitations. Plaintiffs

admit that they could have learned of their claims in 2003 "when the conduct of the Defendants

was discovered by the public" (<u>id.</u> ¶ 23) – more than three years before the Complaint was filed.

Plaintiffs' claims under New York state law are, therefore, time-barred.[50]

Second, plaintiffs have failed to state a claim. Plaintiffs do not allege that AWB

itself violated New York law. Rather, plaintiffs once again claim that AWB aided and abetted

violations of New York law by the Iraqi Government. To state a claim for aiding and abetting

under New York (or federal) common law, a plaintiff must allege sufficiently: "(1) the existence

of a violation by the primary wrongdoer; (2) knowledge of this violation on the part of the aider

and abettor; (3) substantial assistance by the aider and abettor in the achievement of the primary

violation." <u>Stutts</u>, 2006 WL 1867060, at *12 (quoting <u>Williams v. Bank Leumi Trust Co. of</u>

<u>N.Y.</u>, No. 96 Civ. 6695 (LMM), 1997 WL 289865, at *4 (S.D.N.Y. May 30, 1997)); <u>see also</u>

<u>Pittman v. Grayson</u>, 149 F.3d 111, 123 (2d Cir. 1998). To meet that standard, plaintiff must

allege actual knowledge. <u>Stutts</u>, 2006 WL 1867060, at *13. Allegations of constructive

---

[50] A ten-year statute of limitations applies to claims under the ATS and TVPA. <u>See</u> 28 U.S.C. § 1350 (note, § 2(c)); <u>see, e.g.</u> <u>Javier H. v. Garcia-Botello</u>, 239 F.R.D. 342, (W.D.N.Y. 2006) ("It is well established that the ten-year statute of limitations of the Torture Victims Protection Act applies to Alien Tort [Statute] claims."); <u>Manliguez v. Joseph</u>, 226 F. Supp. 2d 377, 386 (E.D.N.Y. 2002); <u>Doe v. Karadzic</u>, No. 93 Civ. 0878 (PKL), 2000 U.S. Dist. LEXIS 8108, at *6 n.3 (S.D.N.Y. June 13, 2000). To the extent plaintiffs' claims under the ATS and TVPA are based on acts that occurred more than ten years before the Complaint was filed (<u>i.e.</u>, before September 11, 1997), those claims are time-barred. For example, Plaintiff Mastafa's claims are time-barred because they arose on or before July 24, 1997. (<u>Mastafa</u> ¶ 25.) Nor should the statute of limitations be tolled. The equitable tolling doctrine is similar under New York and federal common law. Under federal common law, a plaintiff must show that the defendant wrongfully concealed material facts relating to its wrongdoing and prevented the plaintiff's discovery of the claim. <u>Corcoran v. N.Y. Power Auth.</u>, 202 F.3d 530, 543 (2d. Cir. 1999). As discussed above, plaintiffs have made no such showing.

knowledge generally are insufficient. Id. Here, plaintiffs do no more than repeat the conclusory assertion that AWB "aided and abetted the Saddam Hussein regime by knowingly providing practical assistance and/or encouragement through direct payments in violation of international law which had [a] substantial effect on the perpetration of the actions". (Mastafa ¶¶ 157, 166, 174, 185, and 194.) As discussed above (see Section V, supra), plaintiffs make no factual allegations in support of that legal conclusion. Such pleadings are not sufficient to state a claim for aiding and abetting liability. Plaintiffs' New York state law claims must therefore be dismissed. Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, the motion of defendants AWB Limited and AWB (U.S.A.) Limited to dismiss the Class Action Complaint with prejudice should be granted.

December 14, 2007

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP

by

_____
Robert H. Baron
Timothy G. Cameron
Members of the Firm

825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants AWB Limited and
AWB (U.S.A.) Limited*

34