# EXHIBIT 8

SUPREME COURT OF VICTORIA

**BANQUE NATIONALE DE PARIS v. CARDIL PTY. LTD.**

SMITH J.

21 April, 9 May 1994

**Landlord and tenant — Retail tenancy — Jurisdiction — Arbitration — Claim for rectification of lease — Whether a dispute "arising under" a retail premises lease — Retail Tenancies Act 1986 (No. 106) ss. 21, 22 — Commercial Arbitration Act 1984 (No. 10167) ss. 4, 38.**

A claim for rectification of a retail premises lease did not give rise to a dispute "arising under" the lease and was therefore not arbitrable pursuant to s. 21 of the Retail Tenancies Act 1986.

*Exford Pines Pty. Ltd. v. Vlado's Pty. Ltd.* [1992] 2 V.R. 449, considered.

*Printing Machinery Co. Ltd. v. Linotype and Machinery Ltd.* [1912] 1 Ch. 566; *Crane v. Hegeman-Harris Co. Inc.* [1939] 4 All E.R. 68; *Mir Brothers Development Pty. Ltd. v. Atlantic Constructions Pty. Ltd.* (1984) 1 B.C.L. 80; *IBM Australia Ltd. v. National Distribution Services Ltd.* (1991) 100 A.L.R. 361, referred to.

**Appeal**

The plaintiff sought leave pursuant to s. 38 of the Commercial Arbitration Act 1984 to appeal from an arbitrator's determination that he had jurisdiction under the Retail Tenancies Act 1986 to order that a lease be rectified. The facts are stated in the judgment.

*I. S. Williams* for the plaintiff.

*R. L. Berglund* for the defendant.

*Cur. adv. vult.*

**Smith J.** By lease dated 1 April 1992 Banque Nationale de Paris (B.N.P.) leased to Cardil Pty. Ltd. (Cardil) premises at Level 3, 90 William Street, Melbourne, for a period of 10 years commencing from 1 February 1991 at a rent of $162,372 per annum. The lease provided that B.N.P., the lessor, could for each period of two years from 1 February 1991 increase the rent to an amount which in its opinion was the current market rent for the premises at the rent review date.

By letter dated 26 January 1993, B.N.P. advised Cardil that it had reviewed the rent and advised that in light of the prevailing rental market it proposed to maintain the current rate of rent. Discussions and correspondence then ensued between the parties about the terms of the lease and whether it reflected the original agreement between the parties.

By a notice dated 26 November 1993 Cardil gave notice of a dispute with B.N.P. to the Secretary-General of the Australian Centre of International Commercial Arbitration asking the Secretary-General to appoint an arbitrator

pursuant to s. 21 of the Retail Tenancies Act 1986 (the Act) to determine the dispute that had arisen between the parties. The nature of the dispute was described as follows:

> (1) Whether or not the lease as executed fully and accurately reflects the agreement made between the parties prior to execution of the lease.
> (2) Whether or not the rent review clause as contained in the lease should be rectified so as to provide that either party to the lease may initiate a rent review and that the rent may be either increased or decreased on such review or should be rectified in such other ways to accurately reflect the agreement or understanding between the parties made prior to execution of the lease.
> (3) Whether or not the rent review clause as contained in the lease is in breach of s. 10 of the Retail Tenancies Act in that it provides the rent cannot decrease on a rent review.

The notice also stated that the following relief or award was sought from the arbitrator:

> An order that:
> (1) Rectification of the lease be granted so that the second schedule of the lease will provide that either party may initiate a rent review and that the rent may then either increase or decrease.
> (2) The rent for the two years commencing 1 February 1993 be the market rent as set by a sworn valuer appointed by the President of the Victorian Division of the Australian Institute of Valuers and Land Administrators Inc.

Clyde Elliot Croft was nominated to arbitrate the dispute. On 17 December 1993 he held a preliminary conference. The question was raised whether the arbitrator had jurisdiction or power to order rectification. The arbitrator set the question down for hearing as a preliminary question of law. That preliminary question was heard on 15 March 1994. By an interim award dated 18 March 1994 the arbitrator found and determined that an arbitrator under the Act has jurisdiction to order that a lease, as defined by the Act, be rectified.

An arbitration conducted under the Act is subject to the provisions of the Commercial Arbitration Act 1984 (see s. 22 of the Retail Tenancies Act 1986). The Commercial Arbitration Act 1984 permits an appeal to the Supreme Court on any question of law arising out of an award: s. 38(2). Cardil does not consent to the appeal being brought and accordingly leave is required pursuant to s. 38(4)(b) of the Commercial Arbitration Act 1984. B.N.P. seeks that leave. The parties have requested that, if leave to appeal be granted, the appeal be heard forthwith.

The Commercial Arbitration Act 1984 limits the circumstances in which the Supreme Court may grant leave. It provides (s. 38(5)) that leave should not be granted unless the Supreme Court considers that:

> (a) having regard to all the circumstances, the determination of the question of law concerned could substantially affect the rights of one or more parties to the arbitration agreement; and
> (b) there is —
>   (i) a manifest error of law on the face of the award; or
>   (ii) strong evidence that the arbitrator or umpire made an error of law and that the determination of the question may add, or may be likely to add, substantially to the certainty of commercial law.

The question of law identified by the interim award in respect of which leave to appeal is sought is whether an arbitrator under the Act has jurisdiction to order that a lease, as defined by the Act, be rectified. Cardil does not dispute that

determining that question of law could substantially affect the rights of the parties in that it will affect the question of where the whole or part of the dispute between them is to be resolved. It cannot, I think, be disputed that the determination of the question may add substantially to the certainty of commercial law in that it will assist to define the scope of the Act and the powers of arbitrators under it. The leave application, however, is opposed by Cardil on the basis that there was no manifest error of law and that there is no "strong evidence" that the arbitrator made an error of law. I note that the definition of award includes interim award in Commercial Arbitration Act 1984 s. 4(1). Thus no issue arises as to whether an appeal lies from an interim award as opposed to a final award. I turn then to consider the arguments concerning the alleged error of law.

Section 21 of the Act contains the provision pursuant to which jurisdiction is conferred upon arbitrators under the Act. Section 21(1) provides:

> Any dispute between a landlord and a tenant arising under a retail premises lease, other than a claim by the landlord solely for the payment of rent or a dispute which is capable of being determined by a registered valuer . . . , must be referred to arbitration in accordance with this Part.

Section 21(4) provides:

> Despite anything to the contrary in the Commercial Arbitration Act 1984 and any other Act, a dispute which is capable of being referred to arbitration under this section is not justiciable in any court or tribunal.

It is common ground that provided the language with which the jurisdiction is conferred is sufficiently broad, jurisdiction can be conferred upon an arbitrator to consider a claim for rectification of an agreement and to order rectification. This proposition appears to be supported by several cases in which private arbitration agreements have been considered and interpreted. Thus, the courts have accepted that such a jurisdiction has been conferred by the expression "any dispute which may arise between the parties to this agreement . . . " (*Roose Industries Ltd. v. Ready Mixed Concrete Ltd.* [1974] 2 N.Z.L.R. 246), "any dispute or difference as to the construction of the (contract) or as to any matter or thing whatsoever arising thereunder or in connection therewith" (*Dowell Australia Ltd. v. Triden Contractors Pty. Ltd.* [1982] 1 N.S.W.L.R. 508), and "any dispute or difference . . . as to the construction of the contract or as to any matter arising under or out of this contract or in any way in connection therewith": *Drennan v. Pickett* [1983] 1 Qd. R. 445; see also *Kathmer Investments (Pty.) Ltd. v. Woolworths (Pty.) Ltd.* [1920] 2 S.A. 498.

On the other hand, the Court of Appeal in New South Wales has held (by majority) that jurisdiction to determine an issue of rectification was not conferred by an arbitration clause in a building contract which stated that:

> All disputes or differences arising out of a contract or concerning the performance or the non-performance by the party of his obligation under the contract, whether before or after the completion of the works, shall be determined as follows . . .

and that a later formal agreement to refer to arbitration "the matters in dispute between us . . . " did not give jurisdiction beyond that given by the original submission in the contract: *Mir Brothers Development Pty. Ltd. v. Atlantic Constructions Pty. Ltd.* (1984) 1 B.C.L. 80. In addition in *Printing Machinery Co. Ltd. v. Linotype and Machinery Ltd.* [1912] 1 Ch. 566 (followed in *Crane v. Hegeman-Harris Co. Inc.* [1939] 4 All E.R. 68) it was held that a claim for

rectification of "those presents" was not a dispute "touching the meaning or effect of these presents . . . or otherwise howsoever in relation to these presents".

It appears to be common ground that a phrase such as "arising under" tends to be regarded as narrower than phrases such as "arising out of" or "in connection with": see Tadgell J., *Exford Pines Pty. Ltd. v. Vlado's Pty. Ltd.* [1992] 2 V.R. 449 at 452. The issue to be decided, however, is the meaning of the expression "Any dispute between a landlord and tenant arising under a retail premises lease . . . ". It is to be determined in the context in which it is found — statutory, not contractual. Thus while the several contractual cases may provide some assistance in the analysis of the relevant concepts, of more significance are the decisions of this court analysing the provision itself.

The question of the jurisdiction of an arbitrator appointed under the Act has been the subject of decisions by several judges of this court.

It has been held that s. 21 of the Act does not apply to a dispute between persons who were parties to a retail premises lease which has come to an end. Thus, in *Jam Factory Pty. Ltd. v. Sunny Paradise Pty. Ltd.* [1989] V.R. 584, Ormiston J. held that a claim for relief against forfeiture was not a dispute arising under a lease. His Honour stated (at 587):

> The claim for relief may have arisen *out of* the lease and indeed required consideration of its terms and the extent to which the applicant had broken any of the covenants, but in relieving against forfeiture in these circumstances the court assumes the determination of the lease and restores it if, in its discretion, it thinks that remedy appropriate.

In *Klewet Pty. Ltd. v. Lansdown* [1989] V.R. 969, Ormiston J. also held that proceedings by the landlord to recover possession after termination of the lease were outside the scope of the provision: see also Gobbo J., *Haidar v. Blendale Pty. Ltd.* [1993] 2 V.R. 524.

A dispute between persons as to whether they are parties to a retail premises lease was held by McDonald J. not to be a dispute to which the section applies: *Waterend Pty. Ltd. v. Ennis Hickey & Co. Pty. Ltd.* [1992] 1 V.R. 430. His Honour expressed the view that for a dispute between a landlord and tenant to be a dispute "arising under" a retail premises lease under s. 21(1) there must exist a retail premises lease. The parties, however, were contesting the existence of the lease.

The most recent reported decision, and one both parties sought to rely upon, is that of Tadgell J. in *Exford Pines*. In that case an issue had arisen between the tenant and landlord about whether the tenant had been induced to enter a lease of retail premises relying on representations and warranties by the landlord. The tenant brought proceedings in the Supreme Court relating to those matters. It sought damages in respect of losses suffered as a result of the representations and breaches of warranty. It also sought variation of the rent payable under the lease. The landlord attempted to have the proceedings dismissed or stayed on the ground that the claim was not justiciable in the Supreme Court. His Honour held that the dispute was justiciable in the Supreme Court because it did not arise under a retail premises lease.

Counsel for Cardil submitted that the analysis of Tadgell J. in *Exford Pines* supports the arbitrator's decision. He relied upon the following analysis.

After describing the dispute as being whether the tenant was induced by the landlord to enter into the lease in circumstances giving rise to the relief claimed by the tenant, Tadgell J. said (at 451):

> The dispute the subject of the plaintiff's claim happens to arise during the subsistence of a retail premises lease but it is not in my opinion a dispute "arising under" the lease because the terms of the lease do not give rise to the dispute. There is no dispute about the application or the meaning or the effect of those terms, for they are not in contention. The plaintiff does not rely on the express terms of the lease in order to make out its claim, or rely on any implied term. It is true that the plaintiff must prove that the lease was made between the parties, but there is no dispute about that. What is in contention that the plaintiff must prove is that the alleged representations, or some of them, were made, and that they or some of them were untrue, and that the alleged warranties, or some of them, were given and that they were broken, and that accordingly the plaintiff has a right to relief, having entered into the lease.

His Honour indicated that he was prepared to decide the application on the simple ground that the dispute did not depend on or concern the terms of the retail premises lease and that therefore the dispute could not be said to arise under it.

After referring to the decisions in the cases of *Jam Factory Pty. Ltd.*, *Klewet Pty. Ltd.* and *Waterend Pty. Ltd.*, his Honour stated (at 451):

> It appears to be inherent in each of their decisions, however, that a dispute arising in respect of or out of or in relation to a retail premises lease does not arise "under" the lease if the dispute does not arise by reason of, or call for resolution by reference to, the provisions of the lease.

Later, his Honour said (at 454):

> It seems unlikely to me that s. 21(1), when referring to a dispute arising under the lease, intends to refer to a dispute which, although it may in a general sense be connected with the lease, does not depend for its resolution on the terms of the lease or a provision of the Act that relates to the lease.

His Honour stated that the dispute in that case relating to alleged misrepresentations and warranties was one that was independent of any dispute about the lease or its terms and could have arisen after the lease had been brought to an end.

Counsel for Cardil submitted that the dispute in this case is one which concerns the rights and obligations created by the lease itself and thus the dispute arose under the lease. Cardil submitted that the terms of the written lease did not reflect the common intention of the parties and that there is clearly a dispute as to what were the terms of the lease upon which Cardil holds possession of the property the subject of the lease. He further submitted that as long as B.N.P. maintained that the written lease contained the whole of the agreement between the parties and was binding upon them, and the tenant disputed these assertions, there was a dispute "arising under" the terms of the lease.

It is true that Tadgell J. used the fact of the absence of any connection with the terms of the lease as a basis for concluding that the dispute could not be said to arise under the lease. It does not follow, however, that a connection with the terms of the lease will enable a dispute to be characterised as one arising under the lease. His Honour did not have to consider that question. His Honour should not be regarded as expressing a view on the application of s. 21(1) in that situation. Plainly, there is a connection between the present dispute and the terms of the lease but the question to be resolved is whether the dispute "arises under" the lease.

Counsel for B.N.P. also relied upon Tadgell J.'s reasons to argue that the dispute in this case was not one "arising under the terms of the lease". Reliance was placed on the distinction made by his Honour between clauses in arbitration

agreements which refer to arbitration those disputes concerning the rights and obligations created by the contract itself and clauses which show an intention to refer some wider class of dispute. His Honour, after referring to the judgment of Evans J. in *Overseas Union Insurance Ltd. v. A.A. Mutual International Insurance Co. Ltd.* [1988] 2 Lloyd's Rep. 63 at 67, expressed his agreement with these propositions stated by Evans J.:

> There is, I suggest, a broad distinction which may be drawn between those clauses which refer to arbitration only those disputes which may arise regarding the rights and obligations which are created by the contract itself, and other clauses which show an intention to refer to some wider class or classes of disputes.

Tadgell J. at 455 expressed the view that the expression "arising under" was to be regarded as referring to:

> "only those disputes which may arise regarding the rights and obligations which are created by the contract itself" — in this case the lease.

B.N.P. submitted that the fact that the arbitration was compulsory supported the construction that would place the phrase "arising under a lease" in the former category and thus only refer to arbitration those disputes concerning the rights and obligations created by the lease itself.

It was also submitted for B.N.P. that the claim for rectification is not referable to a dispute concerning the rights and obligations created by the lease but the rights and obligations created by the pre-existing agreement between the parties. Counsel found support for this analysis in the case of *Printing Machinery Co. Ltd. v. Linotype and Machinery Ltd.* [1912] 1 Ch. 566 at 572-3 where Warrington J. stated:

> It seems to me that a claim for rectification is not a claim in relation to the deed which it is sought to rectify. It is a claim which may result in dealing in a particular way with the deed; but it is a claim which is founded upon and has relation to an agreement not expressed in the piece of paper or parchment on which the parties have sought to express the terms arrived at. It seems to me that it is not a question "touching the construction of these presents", nor touching the rights or liabilities of the parties "under these presents". Nor, in my judgment, is it a question "in relation to these presents."

A similar distinction was drawn was drawn by Samuels J.A. in *Mir Brothers* where he stated (at 83) that a claim for rectification did not arise out of the contract because:

> It is not generated by the contract but by the terms of the parties' alleged common intention. It will be answered not by examining the contract but by considering and assessing evidence external to it.

A similar distinction was also drawn by Tadgell J. in *Exford Pines*. His Honour held (at 455) that the application for relief in the form of a variation of the lease did not come within the expression "arising under the lease" because the jurisdiction to give such relief depended

> ... on the establishment of a contravention of the statute and not upon any dispute arising under the lease.

Counsel also relied upon the case of *Crane v. Hegeman-Harris Co. Inc.* [1939] 4 All E.R. 68. In that case again an issue arose as to whether an issue of rectification had been referred to an arbitrator under a submission to arbitration. It was held not to have been. Sir Wilfred Greene M.R. said (at 72):

Case 1:07-cv-07955-GEL    Document 25-9    Filed 12/14/2007    Page 8 of 10

> The submission relates to disputes which had arisen at its date with regard to a particular written document specified and identified in it, and the jurisdiction of the arbitrator under that submission was, in my opinion, confined to whatever matters relating to that document as an agreement between the parties fell within the description in the submission.
>
> The issue raised by the claim for rectification is an issue of a totally different description. It is an issue of fact which does not arise out of the particular written agreement in question, but which seeks to substitute for that particular document another agreement in terms different from those set out in the written document. Once that fact is appreciated, it appears to me to be clear, beyond argument, that any attempt by the respondents in the proceedings before the learned arbitrator to raise the issue of rectification could not have been successful without some further agreement by both parties to submit that particular matter of dispute, which lay outside the actual submission that was before him. [*Printing Machinery Co. Ltd.* was then cited.]

The submission provision was in the following terms (at 70-1):

> ... all such disputes questions and matters of difference between the parties hereto and all other matters in difference between the parties arising out of or relating to the said agreement or the subject matter thereof or as to the rights, duties or liabilities of either of the parties in connection with the premises are hereby referred ...

I note that these authorities were not followed by the Court of Appeal of New South Wales in *IBM Australia Ltd. v. National Distribution Services Ltd.* (1991) 100 A.L.R. 361 when interpreting a provision "any controversy or claim arising out of or related to this agreement or the breach thereof". A specific point of difference appears to be the interpretation of expressions such as "a claim in relation to the deed". The Court of Appeal took the view that this was in fact a wide expression, not a narrow one. It also distinguished *Mir Brothers* on the basis of the absence of a provision "of a wider relationship" (at 368-9).

Whatever may be the correct approach to the phrase "arising out of" or "in relation to" in a submission to arbitration, the issue in this case is the interpretation of "arising under" appearing in a statute. Further, the distinctions drawn in *Printing Machinery Co. Ltd.* and *Crane* remain valid even if they may not be decisive in determining the application of the phrases "arising out of ..." or "in relation to ... ". The distinctions can be relied upon by B.N.P. to argue that a dispute about rectification of a lease is not one "arising under" the lease — the dispute is founded upon a prior agreement and Cardil seeks to substitute a new lease for the existing lease.

The decisions of this court have consistently adopted a narrow rather than expansive view of the provision conferring jurisdiction on arbitrators under the Act. In *Exford Pines* Tadgell J. referred to the fact that counsel for the defendant had contended for a wide interpretation. The submission had been that the words "any dispute arising under a retail premises lease" cover a dispute

> arising by virtue of the existence of a retail premises lease, and any dispute between the parties to such a lease which emerges by virtue of the entry by the parties into the lease ... The argument or assertion was that a dispute upon a cause of action which arises collaterally to or which is ancillary to the lease arises "under" it if it is a dispute which is intimately bound up with the entry into the lease.
>
> [At 451.]

His Honour rejected the argument. He noted that a "not dissimilar argument" was rejected by McDonald J. in the *Waterend* case.

A narrow approach in my view is warranted and is justified not only because of the words themselves ("arising under") but because, in conjunction with

s. 21(4), they define a class of disputes that may not be determined by the courts. It is a rule of construction, in the context of which the legislation was drafted, that such provisions will be strictly construed. (*Goldsack v. Shore* [1950] 1 K.B. 708; *Magrath v. Goldsbrough Mort & Co. Ltd.* (1932) 47 C.L.R. 121 at 128, 134.) As Tadgell J. commented in *Exford Pines* (at 453):

> ... the nature and terms of the *Retail Tenancies Act* suggest a limited rather than an extended meaning of the formula used in s. 21(1).

Turning to the Act itself, his Honour commented (at 453):

> Although "retail premises lease" is not defined it is plain enough that such a lease might come into being in a variety of circumstances and forms. One may envisage a corresponding variety of disputes generated by or associated with the circumstances in which the lease was entered into and which would not in ordinary parlance be described as arising "under" the lease itself ... It seems unlikely that s. 21(1) was intended to apply to all these multifarious disputes. There is no compelling reason that it should do so unless the Parliament wished to deprive the courts of jurisdiction in any dispute having a connection with a retail premises lease. Rather it seems probable that the Parliament wished to grant exclusive jurisdiction to arbitrators in cases of dispute upon the term of the retail premises lease, which terms the Act seeks to regulate.

If Parliament had wished the jurisdiction of the arbitrator to be wide in its scope, there were obvious alternative phrases that could have been used to widen the class of dispute. There has also been ample opportunity to widen the scope of the arbitrator's jurisdiction since 1988 when Ormiston J. first considered the issue. That has not been attempted although the Act was amended in 1991. If it be relevant, I note that a review of the Act was completed in 1992 (*Retail Tenancies Act Review (First Draft)*, Department of Manufacturing and Industry Development, 1992). The review referred to jurisdictional problems (pp. 21, 28 and 29). It recommended that arbitration should not be mandatory and that s. 21(1) be amended to apply to leases that had expired (p. 19). No change has been made. An examination of Hansard does not assist in resolving the issue. The stated purpose of the legislation (s. 1) also does not assist.

In his reasons, the arbitrator drew attention to the undesirable practical consequences of the need for two separate proceedings in circumstances such as the present where rectification is raised. I share his concern. Regrettably, however, that result is difficult to avoid when a phrase such as "arising under" is used to define the arbitrator's jurisdiction.

In the present case, the claim for rectification may be said to arise from "a dispute in connection with the provisions of an agreement" (per Marks J., *State Electricity Commission of Victoria v. Alcoa of Australia Ltd.* (unreported, 24 November 1986) at 6). It does not, however, arise "under" the lease in this case because the dispute concerns the common intention of the parties formed prior to the execution of the lease and the relief sought involves the establishment of a lease with terms different from those in the lease that exists. The dispute is connected with the lease and, arguably, arises out of the lease but it does not "arise under" the lease.

    For the foregoing reasons, the applicant has made out its case of error of law. Leave to appeal should be given and the appeal should be heard forthwith. I am persuaded, for the foregoing reasons, that the appeal should be allowed.

5

*Leave to appeal granted and appeal allowed.*

    Solicitors for the plaintiff: *Phillips Fox.*

10

    Solicitors for the defendant: *Carroll & Dillon.*

A. ZIARAS
BARRISTER-AT-LAW

15

20

25

30

35

40

45

50