# EXHIBIT G

Member Login

- ABA Home
- Join
- About the ABA

- Section Home
- Membership
- Calendar
- Leadership
- Committees
- Publications
- Resources
- Awards
- AIDS Coordinating Project
- Death Penalty Moratorium Implementation Project
- Internships
- Contact Us

# American Bar Association
## — Defending Liberty, Pursuing Justice —



Search: [____] [Web Site ▼] [Go]   Advanced Search   Topics A-Z

Print | Email This Page



Section of **Individual Rights and Responsibilities**
AMERICAN BAR ASSOCIATION

## Postconflict Justice in Iraq

Winter 2006 Human Rights Magazine

By M. Cherif Bassiouni

*M. Cherif Bassiouni is distinguished research professor of law and president of the International Human Rights Law Institute at DePaul University College of Law in Chicago. This article is adapted, with the author's permission, from a comprehensive analysis published by the Cornell International Law Journal, Vol. 38, No. 2 (2005). Footnotes have been omitted.*

The former Ba'ath regime in Iraq is estimated to have killed more than 500,000 Iraqi citizens from 1968 to 2003. No one knows what the actual numbers are, as no international or national investigation has ever documented summary executions and disappearances at the hands of the regime. Many of the disappeared and executed were subsequently discovered in unmarked mass graves. Among the better known facts are the killing of some 8,000 Kurds of the Barzani clan in 1983; the brutal repressive campaign carried out against the Kurds in 1987 and 1988, known as the Anfal Campaign, which resulted in an estimated 182,000 deaths; the deaths by gassing of some 4,000 to 5,000 Kurds in Halabja; and the forceful removal of an estimated 140,000 Shi'a from the Marshland region on the Iranian border. Notwithstanding the dreadful catalogue of crimes committed by this repressive regime and countless brazen abuses of power by Saddam Hussein, his sons, and his relatives, the international community tolerated the situation, and major powers maintained economic and financial ties to the regime.

Another aspect of the regime's malfeasance is the squandering of the country's assets on the development of weapons of mass destruction and the embezzlement of public funds by Saddam and his sons and relatives. It is also noteworthy that the regime's two aggressive wars, the Iraq-Iran War (1980–88) and the Gulf War (1990–91), led to the death of what is estimated to be more than one million Iraqis. Further, United Nations sanctions are estimated to have caused the deaths of 500,000 children and gravely ill and older persons. Admittedly, the international community deserves blame for maintaining sanctions that had such a negative impact on the civilian population, but the Saddam regime had made decisions on allocating resources that produced these results. This terrible tragedy will not be accounted for.

In a perverse way, Saddam's regime will escape responsibility for aggression against its two neighboring states and the resulting casualties suffered by his people because, after World War II, the



**About the Human Rights Magazine**

**Human Rights Magazine Home**

**Join the Section**

The Section's *Human Rights* magazine, published quarterly by ABA Publishing, covers a wide range of topics in the human and civil rights arena. While the subscription is free of charge for Section members, individual subscriptions may be purchased for $17 by calling the American Bar Association Service Center at 1-800-285-2221. Additional annual subscriptions for Section members are $3 each.

If you are a member of the ABA but not the Section of Individual Rights and Responsibilities then we encourage you to join today. If you are not a member of the ABA then we encourage you to visit the ABA membership page. You can also resolve membership issues by calling 1-800-285-

major powers did not declare aggression an international crime. Regrettably, the March 2003 invasion by coalition forces, the international violence in Iraq since the occupation, the Abu Ghraib torture by U.S. forces, and the battle of Fallujah have overshadowed the Iraqi and Arab peoples' concerns for postconflict justice against the Saddam regime. Moreover, the need for political stability in this transitional stage of Iraq's history may induce the new Iraqi government to make postconflict justice a low priority. Were that to be the case, it would be a missed opportunity joining a long series of post–World War II conflicts where impunity has prevailed.

2221.

**The Goals of Postconflict Justice**

Given the widespread and systematic nature of the political violence committed by Saddam Hussein and his repressive Ba'ath regime for some thirty-five years, Iraq's future requires a thoughtful national reflection on past abuses and an assessment of postconflict justice needs. Iraq's reconstruction and future democratic and rule of law–based society can benefit from the new government's ability to openly engage itself and the people of Iraq with the principles and strategies of postconflict justice. This includes how the nation responds to the systematic violations of the previous regime, deals with that regime's victims, and transforms yesterday's tragedies into lessons for tomorrow that will enhance future deterrence and prevention.

Experiences in various parts of the world since World War II confirm that postconflict justice in Iraq should not be ignored and that its goals should include the following:
• Enhancing social reconciliation and avoiding individual acts of vengeance;
• Restoring an independent judiciary to Iraq and strengthening the sustainability of a modern legal system there;
• Sustaining the democratic future, territorial integrity, and stability of Iraq and supporting the establishment of a new democratic government based on the principles of the rule of law;
• Creating a precedent in the Arab world for holding officials responsible for systematic repression and abuse, and contributing to the worldwide experience of enforcing international criminal justice through domestic legal processes to which international prosecutions are complementary;
• Prosecuting Saddam Hussein and the senior leaders of the Ba'ath regime before a specialized tribunal for violations of international humanitarian law, gross violations of international human rights law, and crimes committed by the regime against the Iraqi people in violation of international law and domestic criminal law. Retributive justice in these cases is necessary to reinforce future deterrence and prevention. To accomplish other goals, these prosecutions must have legitimacy and credibility in the eyes of Iraqis and Arabs, and they must be conducted fairly and effectively;
• Prosecuting less prominent perpetrators of war crimes and torture before one or more chambers of Iraq's criminal courts to avoid impunity for certain perpetrators;
• Providing victims of these crimes with reparation and other redress remedies. It has been recognized in the Draft Basic Principles and Guidelines on the Right to Restitution, Compensation and Rehabilitation for Victims of Gross Violations of Human Rights and Fundamental Freedoms that "in honouring the victims' right to benefit from remedies and reparation, the international community keeps faith and human solidarity with victims, survivors and future human generations, and reaffirms the international legal principles of accountability, justice and the rule of law." Victim compensation should also provide popular support for prosecutions and become the

basis for an oral history recordation and a historic commission, as described below; and
•Establishing an objective historical record of past political violence in order to educate future generations about the crimes and, generally, to inform those future generations of the perils of undemocratic governance that commits gross violations of fundamental human rights. The sequel to such a historical recordation should be the development of public educational programs at all levels to strengthen the capacity of civil society.

Four postconflict justice mechanisms should be used to achieve these goals:
• Prosecution of Saddam Hussein and senior leaders of his regime before a specialized tribunal;
• Prosecution of lesser offenders before one or more specialized chambers of the Iraqi criminal courts;
• A victim compensation scheme; and
• A historic commission.

These mechanisms must be made part of an Iraqi process that enjoys national and international legitimacy and that would also have broad Iraqi popular support.

**Prosecuting Saddam Hussein**

The first of these mechanisms—the prosecutions of Saddam Hussein and senior leaders of his regime before a specialized tribunal—will be faced with the criticism that it is focused only on a few members of a defeated regime, namely, Saddam Hussein and some of his senior subordinates. In the Arab world and elsewhere, these prosecutions will be perceived as victors' vengeance or unfair because they are selective. It should be said, however, that selective justice, imperfect as it is, does no injustice to those who deserve prosecution. In light of the widespread atrocities committed by the Ba'ath regime, no one can argue that the persons considered for prosecution do not deserve to face justice. Nonetheless, every effort should be made to enhance the legitimacy, credibility, and fair outcomes of their prosecutions.

The establishment of the Iraqi Special Tribunal (IST) has been an important first step in the journey of postconflict justice in Iraq. Although the IST and the statute that established it do not sufficiently advance the goals of postconflict justice identified above, these flaws can be corrected by the repromulgation of an amended law, accompanied by an explanatory memorandum. The repromulgated, amended law should be drafted in the Arabic language by jurists familiar with the Iraqi legal system and international criminal law and should be based on existing Iraqi law and legal concepts.

Specifically, the repromulgated, amended law should provide for a victim compensation scheme that will create popular demand for justice in Iraq. More important, such a scheme also could be tied in to a historic commission, which would be an extremely valuable contribution to the strategies for postconflict justice in Iraq. This commission would investigate and document the political violence committed in Iraq between 1968 and 2003, and provide an objective, formal, and official account of that violence, detailing specific violations of human rights and humanitarian law as well as general patterns of repression. The commission would complete its work by issuing a less formal final report providing a detailed account of past violence and violations and making a series of specific policy recommendations for future dissemination and use in the Iraqi educational system and the Arab world. Both the commission's

detailed and popular reports could serve as a permanent reference for future generations.

### Building the Iraqi Legal System

In addition to the need for a repromulgated, amended law and for an accompanying explanatory record, there is a need for building the Iraqi legal system's institutional capacity and sustainability. The Iraqi justice system does not have enough qualified personnel with necessary expertise for handling cases involving a massive amount of evidence. The Iraqi judicial system lacks adequate logistical capabilities and the infrastructure necessary for a specialized tribunal. To address the issue of building institutional capacity and sustainability, significant international assistnce is required. This assistance, however, must be provided at the request and under the direction of Iraqis and should be complementary to and supportive of Iraqi efforts, not in place of such efforts. Investigations cannot be developed by U.S. prosecutors and investigators and then handed over to Iraqi investigating judges. Rather, the entire process of the specialized tribunal should function in a manner that builds sustainability and capacity within the Iraqi judiciary. While a process of this type may be difficult and time consuming, a more comprehensive, engaged approach will significantly improve the IST's legitimacy and provide an array of other benefits to Iraqi society.

Given the enormous task facing such a specialized tribunal, the importance of comprehensive and carefully planned training programs cannot be underestimated. Some of these programs have begun under the aegis of the Regime Crimes Liaison Office, but they must be continuous and be provided separately for sitting judges, investigative judges, and prosecutors, as well as the clerical staff. The separate training sessions should be topical, skill- and subject matter–specific, led by persons who are familiar with the Iraqi legal system, and conducted in Arabic. Better-trained legal professionals will significantly improve the success of the specialized tribunal, and uniform parallel training will enhance predictability, consistency, and coherence in the practice. This will reduce the need for external, foreign consultants and provide the foundation for a renewed professional judiciary in Iraq.

### Political Transition

Many observers believe that the success of the political transition in Iraq rests in the success of a broad-based postconflict justice strategy. How the nation faces its violent past is, to many, central to determining its future and its domestic and international legitimacy. It should be understood clearly, however, that opposition to such trials in the Arab world is widespread. The reasons are that this region has witnessed many regime changes, many of which were bloody and none of which resulted in anything resembling genuine postconflict justice. Obviously, this is not a justification, not even a valid reason, but popular wisdom seems to rebel against a new *ex post facto* practice, probably because it is viewed as an American idea. More significantly, however, *vox populi* is that the United States, viewed as the promoter of such trials, is delegitimized because its own "crimes" in Iraq and in the region exceed those committed by Saddam and his regime. Nowhere in the world is this so strongly felt as it is in the Arab world, and probably nowhere in the Arab world is it as strongly felt as in Iraq.

### A Historic Opportunity—Or Tragedy

Justice in Iraq is too great a historic opportunity to be missed and would be a tragic historic event if it were to fail. It therefore is imperative to set the process back on track by enacting a repromulgated, amended law as described above, generating popular Iraqi support for the trials, establishing a victim compensation scheme, and setting up a historic commission whose work can serve as a component of educating future generations. Such a comprehensive plan also will enhance the judiciary's capacity, sustain the rule of law, and enhance democracy.

The IST needs to be perfected, and those who support postconflict justice in Iraq should support the suggestions contained herein and any other constructive ideas. They also should lend their moral support to the courageous and dedicated men and women of the IST who have put their lives at risk to affirm the rule of law in their troubled country.

As published in *Human Rights*, Winter 2006, Volume 33, Number 1, pp.15-16, 24.

Back to Top

TOPICS A-Z    WEB STORE    ABA CALENDAR    CONTACT ABA



Defending Liberty
Pursuing Justice

American Bar Association | 740 15th Street, N.W. | Washington, DC 20005-1019 | 202.662.1000
ABA Copyright Statement   ABA Privacy Statement