**UNITED**
**NATIONS**

**S**



**Security Council**

Distr.
GENERAL

S/RES/986 (1995)
14 April 1995

RESOLUTION 986 (1995)

Adopted by the Security Council at its 3519th meeting,
on 14 April 1995

The Security Council,

Recalling its previous relevant resolutions,

Concerned by the serious nutritional and health situation of the Iraqi population, and by the risk of a further deterioration in this situation,

Convinced of the need as a temporary measure to provide for the humanitarian needs of the Iraqi people until the fulfilment by Iraq of the relevant Security Council resolutions, including notably resolution 687 (1991) of 3 April 1991, allows the Council to take further action with regard to the prohibitions referred to in resolution 661 (1990) of 6 August 1990, in accordance with the provisions of those resolutions,

Convinced also of the need for equitable distribution of humanitarian relief to all segments of the Iraqi population throughout the country,

Reaffirming the commitment of all Member States to the sovereignty and territorial integrity of Iraq,

Acting under Chapter VII of the Charter of the United Nations,

1. Authorizes States, notwithstanding the provisions of paragraphs 3 (a), 3 (b) and 4 of resolution 661 (1990) and subsequent relevant resolutions, to permit the import of petroleum and petroleum products originating in Iraq, including financial and other essential transactions directly relating thereto, sufficient to produce a sum not exceeding a total of one billion United States dollars every 90 days for the purposes set out in this resolution and subject to the following conditions:

(a) Approval by the Committee established by resolution 661 (1990), in order to ensure the transparency of each transaction and its conformity with the other provisions of this resolution, after submission of an application by the

95-10988 (E) /...

State concerned, endorsed by the Government of Iraq, for each proposed purchase of Iraqi petroleum and petroleum products, including details of the purchase price at fair market value, the export route, the opening of a letter of credit payable to the escrow account to be established by the Secretary-General for the purposes of this resolution, and of any other directly related financial or other essential transaction;

    (b) Payment of the full amount of each purchase of Iraqi petroleum and petroleum products directly by the purchaser in the State concerned into the escrow account to be established by the Secretary-General for the purposes of this resolution;

    2. _Authorizes_ Turkey, notwithstanding the provisions of paragraphs 3 (a), 3 (b) and 4 of resolution 661 (1990) and the provisions of paragraph 1 above, to permit the import of petroleum and petroleum products originating in Iraq sufficient, after the deduction of the percentage referred to in paragraph 8 (c) below for the Compensation Fund, to meet the pipeline tariff charges, verified as reasonable by the independent inspection agents referred to in paragraph 6 below, for the transport of Iraqi petroleum and petroleum products through the Kirkuk-Yumurtalik pipeline in Turkey authorized by paragraph 1 above;

    3. _Decides_ that paragraphs 1 and 2 of this resolution shall come into force at 00.01 Eastern Standard Time on the day after the President of the Council has informed the members of the Council that he has received the report from the Secretary-General requested in paragraph 13 below, and shall remain in force for an initial period of 180 days unless the Council takes other relevant action with regard to the provisions of resolution 661 (1990);

    4. _Further decides_ to conduct a thorough review of all aspects of the implementation of this resolution 90 days after the entry into force of paragraph 1 above and again prior to the end of the initial 180 day period, on receipt of the reports referred to in paragraphs 11 and 12 below, and _expresses its intention_, prior to the end of the 180 day period, to consider favourably renewal of the provisions of this resolution, provided that the reports referred to in paragraphs 11 and 12 below indicate that those provisions are being satisfactorily implemented;

    5. _Further decides_ that the remaining paragraphs of this resolution shall come into force forthwith;

    6. _Directs_ the Committee established by resolution 661 (1990) to monitor the sale of petroleum and petroleum products to be exported by Iraq via the Kirkuk-Yumurtalik pipeline from Iraq to Turkey and from the Mina al-Bakr oil terminal, with the assistance of independent inspection agents appointed by the Secretary-General, who will keep the Committee informed of the amount of petroleum and petroleum products exported from Iraq after the date of entry into force of paragraph 1 of this resolution, and will verify that the purchase price of the petroleum and petroleum products is reasonable in the light of prevailing market conditions, and that, for the purposes of the arrangements set out in this resolution, the larger share of the petroleum and petroleum products is shipped via the Kirkuk-Yumurtalik pipeline and the remainder is exported from the Mina al-Bakr oil terminal;

/...

7.   *Requests* the Secretary-General to establish an escrow account for the purposes of this resolution, to appoint independent and certified public accountants to audit it, and to keep the Government of Iraq fully informed;

8.   *Decides* that the funds in the escrow account shall be used to meet the humanitarian needs of the Iraqi population and for the following other purposes, and *requests* the Secretary-General to use the funds deposited in the escrow account:

(a)   To finance the export to Iraq, in accordance with the procedures of the Committee established by resolution 661 (1990), of medicine, health supplies, foodstuffs, and materials and supplies for essential civilian needs, as referred to in paragraph 20 of resolution 687 (1991) provided that:

(i)   Each export of goods is at the request of the Government of Iraq;

(ii)   Iraq effectively guarantees their equitable distribution, on the basis of a plan submitted to and approved by the Secretary-General, including a description of the goods to be purchased;

(iii)   The Secretary-General receives authenticated confirmation that the exported goods concerned have arrived in Iraq;

(b)   To complement, in view of the exceptional circumstances prevailing in the three Governorates mentioned below, the distribution by the Government of Iraq of goods imported under this resolution, in order to ensure an equitable distribution of humanitarian relief to all segments of the Iraqi population throughout the country, by providing between 130 million and 150 million United States dollars every 90 days to the United Nations Inter-Agency Humanitarian Programme operating within the sovereign territory of Iraq in the three northern Governorates of Dihouk, Arbil and Suleimaniyeh, except that if less than one billion United States dollars worth of petroleum or petroleum products is sold during any 90 day period, the Secretary-General may provide a proportionately smaller amount for this purpose;

(c)   To transfer to the Compensation Fund the same percentage of the funds deposited in the escrow account as that decided by the Council in paragraph 2 of resolution 705 (1991) of 15 August 1991;

(d)   To meet the costs to the United Nations of the independent inspection agents and the certified public accountants and the activities associated with implementation of this resolution;

(e)   To meet the current operating costs of the Special Commission, pending subsequent payment in full of the costs of carrying out the tasks authorized by section C of resolution 687 (1991);

(f)   To meet any reasonable expenses, other than expenses payable in Iraq, which are determined by the Committee established by resolution 661 (1990) to be directly related to the export by Iraq of petroleum and petroleum products permitted under paragraph 1 above or to the export to Iraq, and activities

/...

directly necessary therefor, of the parts and equipment permitted under paragraph 9 below;

(g) To make available up to 10 million United States dollars every 90 days from the funds deposited in the escrow account for the payments envisaged under paragraph 6 of resolution 778 (1992) of 2 October 1992;

9. *Authorizes* States to permit, notwithstanding the provisions of paragraph 3 (c) of resolution 661 (1990):

(a) The export to Iraq of the parts and equipment which are essential for the safe operation of the Kirkuk-Yumurtalik pipeline system in Iraq, subject to the prior approval by the Committee established by resolution 661 (1990) of each export contract;

(b) Activities directly necessary for the exports authorized under subparagraph (a) above, including financial transactions related thereto;

10. *Decides* that, since the costs of the exports and activities authorized under paragraph 9 above are precluded by paragraph 4 of resolution 661 (1990) and by paragraph 11 of resolution 778 (1991) from being met from funds frozen in accordance with those provisions, the cost of such exports and activities may, until funds begin to be paid into the escrow account established for the purposes of this resolution, and following approval in each case by the Committee established by resolution 661 (1990), exceptionally be financed by letters of credit, drawn against future oil sales the proceeds of which are to be deposited in the escrow account;

11. *Requests* the Secretary-General to report to the Council 90 days after the date of entry into force of paragraph 1 above, and again prior to the end of the initial 180 day period, on the basis of observation by United Nations personnel in Iraq, and on the basis of consultations with the Government of Iraq, on whether Iraq has ensured the equitable distribution of medicine, health supplies, foodstuffs, and materials and supplies for essential civilian needs, financed in accordance with paragraph 8 (a) above, including in his reports any observations he may have on the adequacy of the revenues to meet Iraq's humanitarian needs, and on Iraq's capacity to export sufficient quantities of petroleum and petroleum products to produce the sum referred to in paragraph 1 above;

12. *Requests* the Committee established by resolution 661 (1990), in close coordination with the Secretary-General, to develop expedited procedures as necessary to implement the arrangements in paragraphs 1, 2, 6, 8, 9 and 10 of this resolution and to report to the Council 90 days after the date of entry into force of paragraph 1 above and again prior to the end of the initial 180 day period on the implementation of those arrangements;

13. *Requests* the Secretary-General to take the actions necessary to ensure the effective implementation of this resolution, authorizes him to enter into any necessary arrangements or agreements, and *requests* him to report to the Council when he has done so;

14. <u>Decides</u> that petroleum and petroleum products subject to this resolution shall while under Iraqi title be immune from legal proceedings and not be subject to any form of attachment, garnishment or execution, and that all States shall take any steps that may be necessary under their respective domestic legal systems to assure this protection, and to ensure that the proceeds of the sale are not diverted from the purposes laid down in this resolution;

15. <u>Affirms</u> that the escrow account established for the purposes of this resolution enjoys the privileges and immunities of the United Nations;

16. <u>Affirms</u> that all persons appointed by the Secretary-General for the purpose of implementing this resolution enjoy privileges and immunities as experts on mission for the United Nations in accordance with the Convention on the Privileges and Immunities of the United Nations, and <u>requires</u> the Government of Iraq to allow them full freedom of movement and all necessary facilities for the discharge of their duties in the implementation of this resolution;

17. <u>Affirms</u> that nothing in this resolution affects Iraq's duty scrupulously to adhere to all of its obligations concerning servicing and repayment of its foreign debt, in accordance with the appropriate international mechanisms;

18. <u>Also affirms</u> that nothing in this resolution should be construed as infringing the sovereignty or territorial integrity of Iraq;

19. <u>Decides</u> to remain seized of the matter.

-----