i

I. INTRODUCTION ............................................................................................................. 1
  A. The International Tribunal ............................................................................................. 1
  B. Procedural Background ................................................................................................. 2
  C. The Indictment ............................................................................................................. 15

II. BACKGROUND AND PRELIMINARY FACTUAL FINDINGS ................................ 20
  A. The Context of the Conflict ......................................................................................... 20
    1. Historical and Geographic Background ..................................................................... 25
    2. The Disintegration of the Socialist Federal Republic of Yugoslavia ......................... 28
    3. Bosnia and Herzegovina ............................................................................................. 30
    4. Greater Serbia ............................................................................................................. 34
    5. Formation of Serb Autonomous Regions .................................................................. 36
    6. Formation of Crisis Staffs .......................................................................................... 36
    7. The Role of the JNA .................................................................................................. 36
      (a) The JNA in disintegrating Yugoslavia ................................................................... 38
      (b) The transformation of the JNA .............................................................................. 40
      (c) The division of the JNA ......................................................................................... 43
    8. Military Action ........................................................................................................... 45
  B. Op{tina Prijedor ............................................................................................................ 45
    1. The Importance of Op{tina Prijedor .......................................................................... 46
    2. Op{tina Prijedor before the Take-over ...................................................................... 46
    3. Background to the Take-over of Op{tina Prijedor ..................................................... 48
    4. Prelude to the Take-over of Op{tina Prijedor ............................................................ 49
    5. The Take-over of the Town of Prijedor ..................................................................... 50
    6. Prijedor after the Take-over: the Formation of the Crisis Staff ................................. 51
    7. The Incident at Hambarine and the Start of the Attack on the Outlying Areas ......... 51
    8. The Attack on the Kozarac Area ................................................................................ 53
    9. The Treatment of Non-Serbs ...................................................................................... 56
    10. Camps ....................................................................................................................... 63
  C. The Accused ................................................................................................................. 63

III. FACTUAL FINDINGS .................................................................................................. 69
  A. Paragraph 6 of the Indictment ...................................................................................... 69
    1. The Events Alleged .................................................................................................... 73
    2. The Role, if any, of the Accused ................................................................................ 81
    3. The Case for the Defence .......................................................................................... 81
    4. Findings of Fact ......................................................................................................... 81
  B. Paragraph 10 of the Indictment .................................................................................... 86
    1. The Events Alleged .................................................................................................... 87
    2. The Role, if any, of the Accused ................................................................................ 89
    3. The Case for the Defence .......................................................................................... 89
    4. Findings of Fact ......................................................................................................... 90
  C. Paragraph 7 of the Indictment ...................................................................................... 92
    1. The Events Alleged .................................................................................................... 92
    2. The Role, if any, of the Accused ................................................................................ 93
    3. The Case for the Defence .......................................................................................... 94
    4. Findings of Fact ......................................................................................................... 95
  D. Paragraph 8 of the Indictment ...................................................................................... 97

Case No. IT-94-1-T                                                   7 May 1997

---

**UNITED NATIONS**



International Tribunal for the
Prosecution of Persons
Responsible for Serious Violations of
International Humanitarian Law
Committed in the Territory of
Former Yugoslavia since 1991

Case No.   IT-94-1-T

Date:       7 May 1997

Original:   English

### IN THE TRIAL CHAMBER

**Before:**          Judge Gabrielle Kirk McDonald, Presiding
                    Judge Ninian Stephen
                    Judge Lal Chand Vohrah

**Registrar:**      Mrs. Dorothee de Sampayo Garrido-Nijgh

**Opinion and Judgment of:**    7 May 1997

**PROSECUTOR**

v.

**DU[KO TADI]** a/k/a "DULE"

### OPINION AND JUDGMENT

**The Office of the Prosecutor:**

Mr. Grant Niemann        Ms. Brenda Hollis        Mr. Alan Tieger
Mr. William Fenrick        Mr. Michael Keegan

**Counsel for the Accused:**

Mr. Michail Wladimiroff     Mr. Steven Kay              Mr. Milan Vujin
Mr. Alphons Orie             Ms. Sylvia de Bertodano   Mr. Nikola Kosti}

256

and assisting in the arrest and deportation. Denunciation in and of itself was not a war crime unless, by giving information, the informant became a party to or an accomplice in the commission of a war crime: "This condition is fulfilled if circumstances constituting complicity are present, e.g. if the informer knew that his action would lead to the commission of a war crime and either intended to bring about this consequence or was recklessly indifferent with regard to it. This decision was applied by the War Crimes Commission in numerous instances."[220] Thus not only does one not have to be present but the connection between the act contributing to the commission and the act of commission itself can be geographically and temporally distanced.

3.   Legal Findings

688.   The I.L.C. Draft Code draws on these cases from the Nürnberg war crimes trials and other customary law, and concludes that an accused may be found culpable if it is proved that he "intentionally commits such a crime" or, *inter alia*, if he "<u>knowingly</u> aids, abets or otherwise assists, <u>directly and substantially</u>, in the commission of such a crime . . . ."[221] The commentary to the I.L.C. Draft Code provides that the "accomplice must <u>knowingly</u> provide assistance to the perpetrator of the crime. Thus, an individual who provides some type of assistance to another individual without knowing that this assistance will facilitate the commission of a crime would not be held accountable."[222] In addition, the commentary notes that:

> the accomplice must provide the kind of assistance which contributes *directly* and *substantially* to the commission of the crime, for example by providing the means which enable the perpetrator to commit the crime. Thus, the form of participation of an accomplice must entail assistance which facilitates the commission of a crime in some significant way.[223]

While there is no definition of "substantially", it is clear from the aforementioned cases that the substantial contribution requirement calls for a contribution that in fact has an effect on the commission of the crime. This is supported by the foregoing Nürnberg cases where, in virtually every situation, the criminal act most probably would not have occurred in the same way had not someone acted in the role that the accused in fact assumed. For example, if there

---
[220] *Id.*
[221] I.L.C. Draft Code Art. 2(3)(a) & (d) (emphasis added).
[222] *Id.* 24 (emphasis in original).
[223] I.L.C. Draft Code, 24 (emphasis in original).

Case No. IT-94-I-T                                                                                                      7 May 1997

257

had been no poison gas or gas chambers in the *Zyklon B* cases, mass exterminations would not have been carried out in the same manner. The same analysis applies to the cases where the men were prosecuted for providing lists of names to German authorities. Even in these cases, where the act in complicity was significantly removed from the ultimate illegal result, it was clear that the actions of the accused had a substantial and direct effect on the commission of the illegal act, and that they generally had knowledge of the likely effect of their actions.

689.   The Trial Chamber finds that aiding and abetting includes all acts of assistance by words or acts that lend encouragement or support, as long as the requisite intent is present. Under this theory, presence alone is not sufficient if it is an ignorant or unwilling presence. However, if the presence can be shown or inferred, by circumstantial or other evidence, to be knowing and to have a direct and substantial effect on the commission of the illegal act, then it is sufficient on which to base a finding of participation and assign the criminal culpability that accompanies it.

690.   Moreover, when an accused is present and participates in the beating of one person and remains with the group when it moves on to beat another person, his presence would have an encouraging effect, even if he does not physically take part in this second beating, and he should be viewed as participating in this second beating as well. This is assuming that the accused has not actively withdrawn from the group or spoken out against the conduct of the group.

691.   However, actual physical presence when the crime is committed is not necessary; just as with the defendants who only drove victims to the woods to be killed, an accused can be considered to have participated in the commission of a crime based on the precedent of the Nürnberg war crimes trials if he is found to be "concerned with the killing". However, the acts of the accused must be direct and substantial.

692.   In sum, the accused will be found criminally culpable for any conduct where it is determined that he knowingly participated in the commission of an offence that violates international humanitarian law and his participation directly and substantially affected the commission of that offence through supporting the actual commission before, during, or after the incident. He will also be responsible for all that naturally results from the commission of the act in question.

Case No. IT-94-I-T                                                                                                      7 May 1997