UNITED
NATIONS

International Tribunal for the
Prosecution of Persons
Responsible for Serious Violations of
International Humanitarian Law
Committed in the Territory of the
Former Yugoslavia since 1991

| | |
|---|---|
| Case No.: | IT-95-17/1-T |
| Date: | 10 December 1998 |
| Original: | English |

## IN THE TRIAL CHAMBER

**Before:**      **Judge Florence Ndepele Mwachande Mumba, Presiding**
              **Judge Antonio Cassese**
              **Judge Richard May**

**Registrar:**      **Mrs. Dorothee de Sampayo Garrido-Nijgh**

**Judgement of:**      **10 December 1998**

## PROSECUTOR

v.

## ANTO FURUNDŽIJA

## JUDGEMENT

**The Office of the Prosecutor:**

**Ms. Brenda Hollis**
**Ms. Patricia Viseur-Sellers**
**Ms. Michael Blaxill**

**Counsel for the Accused:**

**Mr. Luka Misetj**
**Mr. Sheldon Davidson**

Case No.: IT-95-17/1-T                        10 December 1998

---

## CONTENTS

I.   INTRODUCTION .......................................................................1
     A.   The International Tribunal ...................................................2
     B.   Procedural Background ......................................................2
     C.   The Amended Indictment .................................................15

II.  THE SUBMISSIONS OF THE PARTIES .......................................17
     A.   The Prosecution ...............................................................17
         1.  Factual Allegations ......................................................17
         2.  Legal Arguments ........................................................18
           (a)  The Individual Criminal Responsibility of the Accused ..........18
           (b)  Violations of Common Article 3 of the Geneva Conventions of 1949 (torture) ..........18
           (c)  Violations of Additional Protocol II of 1977 (outrages upon personal dignity including rape) ..........19
     B.   The Defence .....................................................................20

III.  THE EXISTENCE OF AN ARMED CONFLICT ...............................21
     A.   The Prosecution Case ........................................................21
     B.   The Defence Case .............................................................24
     C.   Factual Findings ..............................................................24

IV.  THE LINK BETWEEN THE ARMED CONFLICT AND THE ALLEGED
     FACTS ................................................................................26
     A.   The Prosecution Case ........................................................26
     B.   The Defence Case .............................................................27
     C.   Factual Findings ..............................................................27

V.   THE EVENTS AT THE BUNGALOW AND THE HOLIDAY COTTAGE
     IN NADIOCI ........................................................................28
     A.   Introduction .....................................................................28
     B.   Background and Circumstances .........................................29
         1.  Witness A ..................................................................29
         2.  Witness D ..................................................................30
     C.   Events in the Large Room ..................................................31
     D.   Events in the Pantry .........................................................34

Case No.: IT-95-17/1-T                        10 December 1998

i

inference is warranted that the court applied a different law to these international crimes.[227] The service provided by the cremator may be analogous to that of the lookout, in that the knowledge that the bodies will be disposed of, in the same way that the knowledge that they will be warned of impending discovery in the lookout scenario, reassures the killers and facilitates their commission of the crime in some significant way.

205. Guidance can also be derived from the following cases, which were heard under the terms of Control Council Law No. 10.[228] In the Synagogue case, decided by the German Supreme Court in the British Occupied Zone, one of the accused was found guilty of a crime against humanity (the devastation of a synagogue)[229] although he had not physically taken part in it, nor planned or ordered it. His intermittent presence on the crime-scene, combined with his status as an "alter Kämpfer" (long-time militant of the Nazi party) and his knowledge of the criminal enterprise, were deemed sufficient to convict him.

206. The accused was convicted at first instance of a crime against humanity under the provision on co-perpetration of a crime ("Mittäterschaft") of the then German penal code (Art. 47 Strafgesetzbuch). The conviction was confirmed on appeal. The appellate decision noted that the accused was a militant Nazi. The court went on to find that he knew of the plan at least two hours before the commission of the crime.

207. It may be inferred from this case that an approving spectator who is held in such respect by the other perpetrators that his presence encourages them in their conduct, may be guilty of complicity in a crime against humanity.

208. The Synagogue case may be contrasted with the Pig-cart parade case, also from the German Supreme Court in the British Occupied Zone. The accused, P had attended,

---

[227] In English law, the law relating to accessories after the fact has generally been a separate statutory offence of "assisting an offender" rather than a form of aiding and abetting (see section 4(1) of the Criminal Law Act 1967).
[228] The judgements referred to in the following are to be found in Entscheidungen des Obersten Gerichtshofs für die Britische Zone. Entscheidungen in Strafsachen, Vol. I (1949). Several contain the proposition that in judging crimes against humanity under Control Council Law No. 10, no recourse may be had to German law on aiding and abetting, although others do apply German principles.
[229] Strafsenat. Urteil vom 10. August 1948 gegen K. und A. StS 18/48 (Entscheidungen, Vol. I, pp. 53 and 56).

as a spectator in civilian dress, a SA (Sturmabteilung) "parade" in which two political opponents of the NSDAP (Nationalsozialistische Deutsche Arbeiterpartei) were exposed to public humiliation. P had followed the "parade" without taking any active part. The court found that P,

> followed the parade only as a spectator in civilian clothes, although he was following a service order by the SA for a purpose yet unknown . . . His conduct cannot even with certainty be evaluated as objective or subjective approval. Furthermore, silent approval that does not contribute to causing the offence in no way meets the requirements for criminal liability.[230]

P was found not guilty. He may have lacked the necessary mens rea. But in any event, his insignificant status brought the effect of his "silent approval" below the threshold necessary for the actus reus.

209. It appears from the Synagogue and Pig-cart parade cases that presence, when combined with authority, can constitute assistance in the form of moral support, that is, the actus reus of the offence. The supporter must be of a certain status for this to be sufficient for criminal responsibility. This emphasis on the accused's authority was also affirmed in Akayesu. Jean-Paul Akayesu was the bourgmestre, or mayor, of the Commune in which atrocities, including rape and sexual violence, occurred. That Trial Chamber considered this position of authority highly significant for his criminal liability for aiding and abetting: "The Tribunal finds, under Article 6(1) of its Statute, that the Accused, having had reason to know that sexual violence was occurring, aided and abetted the following acts of sexual violence, by allowing them to take place on or near the premises of the bureau communal and by facilitating the commission of such sexual violence through his words of encouragement in other acts of sexual violence which, by virtue of his authority, sent a clear signal of official tolerance for sexual violence, without which these acts would not have taken place: [. . .]."[231] Furthermore, it can be inferred from this finding that assistance need not be tangible. In addition, assistance need not

---

[230] Strafsenat. Urteil vom 10. August 1948 gegen L. u. a. StS 37/48 (Entscheidungen, Vol. I, pp. 229 and 234).
[231] Case No. ICTR-96-4-T, para. 692, emphasis added.