UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
SAADYA MASTAFA and KAFIA ISMAIL,      :

       Plaintiffs,      :

   - against -      :  Civil Action No.
                                                            07-CV-7955 (GEL)
AUSTRALIAN WHEAT BOARD LIMITED a/k/a
AWB LIMITED and AWB (U.S.A.) LIMITED; and  :
BNP PARIBAS,      ECF CASE
                                            :

       Defendants.
                                            :
---------------------------------------------------------------- x


**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
DEFENDANT BNP PARIBAS TO DISMISS PLAINTIFFS'
CLASS ACTION COMPLAINT**

                Robert S. Bennett
                Alan Kriegel
                Jennifer L. Spaziano (pro hac vice)
                SKADDEN, ARPS, SLATE,
                 MEAGHER & FLOM LLP
                1440 New York Avenue NW
                Washington, DC 20005
                (202) 371-7000
                Email:  jen.spaziano@skadden.com

                William J. O'Brien, III
                SKADDEN, ARPS, SLATE,
                 MEAGHER & FLOM LLP
                Four Times Square
                New York, New York 10036
                (212) 735-3000
                Email:  wobrien@skadden.com

                Attorneys for Defendant BNP Paribas

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

I.  PLAINTIFFS LACK CONSTITUTIONAL STANDING .............................................. 3

II. PLAINTIFFS' ATS CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE THAT THE BANK VIOLATED CUSTOMARY INTERNATIONAL LAW OR A SELF-EXECUTING UNITED STATES TREATY ........................................................................................ 8

    A.  Plaintiffs Do Not—And Cannot—Allege That The Bank Aided And Abetted The Hussein Regime's Alleged Violations Of International Law ............. 8

    B.  Plaintiffs Do Not—And Cannot—Allege That The Bank Conspired To Commit A Violation Of International Law ........................................................ 10

III. PLAINTIFFS' TVPA CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST THE BANK ................................................................. 11

IV. PLAINTIFFS' SUPPLEMENTAL TORT CLAIMS FAIL AS A MATTER OF LAW .................................................................................................................... 12

    A.  Plaintiffs Have Not Alleged—And Cannot Allege—Facts Sufficient To Assert The Supplemental Tort Claims Against The Bank. ................................ 12

    B.  The Applicable Statutes Of Limitations Bar Plaintiffs' Supplemental Tort Claims ........................................................................................................ 15

CONCLUSION ................................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

Adeleke v. United States, 355 F.3d 144 (2d Cir. 2004) ................................................................. 6

Almog v. Arab Bank PLC, 471 F. Supp. 2d 257 (E.D.N.Y. 2007) ....................................... 5, 8, 9

Arndt v. UBS AG, 342 F. Supp. 2d 132 (E.D.N.Y. 2004) ............................................................ 11

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) ............................................................... 9, 12

Bigio v. Coca-Cola Co., 239 F.3d 440 (2d Cir. 2000) ................................................................... 6

Calcutti v. SBU, Inc., 273 F. Supp. 2d 488 (S.D.N.Y. 2003) ...................................................... 14

Dellums v. U.S. Nuclear Regulatory Comm'n, 863 F.2d 968 (D.C. Cir. 1988) ............................ 7

Eastman Kodak Co. v. Kavlin, 978 F. Supp. 1078 (S.D. Fla. 1997) ............................................. 6

Filartiga v. Pena-Irala, 630 F.2d 876 (2d Cir. 1980) .................................................................... 6

Garay v. Slattery, 23 F.3d 744 (2d Cir. 1994) ............................................................................... 6

Greenberg v. Bush, 150 F. Supp. 2d 447 (E.D.N.Y. 2001) ....................................................... 4, 7

In re African-American Slave Descendants Litigation, 304 F. Supp. 2d 1027 (N.D. Ill. 2004),
    aff'd in part, 471 F.3d 754 (7th Cir. 2006) .............................................................................. 7

Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1995) ............................................................................. 6

Khulumani v. Barclay Nat'l Bank Ltd., 504 F.3d 254 (2d Cir. 2007) ..................................... 8, 11

McGehee v. Albright, 210 F. Supp. 2d 210 (S.D.N.Y. 1999) ........................................................ 7

Presbyterian Church of the Sudan v. Talisman Energy, Inc.,
    244 F. Supp. 2d 289 (S.D.N.Y. 2003) .................................................................................. 4, 5

Salinas v. United States, 522 U.S. 52 (1997) .............................................................................. 10

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998) ..................................................... 4, 6

Stutts v. De Dietrich Group, No. 03-cv-4058 (ILG),
    2006 WL 1867060 (E.D.N.Y. June 30, 2006) .................................................................. 13, 14

Warth v. Seldin, 422 U.S. 490 (1975) ......................................................................................... 4, 7

Williams v. Bank Leumi Trust Co., No. 96 CIV 6695 (LMM),
    1997 WL 289865 (S.D.N.Y. May 30, 1997) ......................................................................... 13

Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000) ............................................... 6

**Statutes and Other Authorities**

28 U.S.C. § 1350................................................................................................................. passim

Torture Victim Protection Act of 1991, Pub. L. No. 102-256,
    106 Stat. 73 (March 12, 1992) ..................................................................................... 11

S. Rep. No. 102-249 (1991) ...................................................................................................... 11

N.Y. C.P.L.R. § 203................................................................................................................... 15

Defendant BNP Paribas (the "Bank") respectfully submits this reply memorandum of law in support of its motion to dismiss Plaintiffs' complaint.[1]

## PRELIMINARY STATEMENT

Through this action, Plaintiffs seek to hold the Bank responsible for alleged atrocities committed by the Hussein Regime based solely on the Bank's performance of its duties under its contract with the U.N. to maintain the U.N. Iraq Account in connection with the Oil-for-Food Programme.  As the Bank demonstrated in its opening brief, notwithstanding the horrific—and patently offensive—nature of their claims, Plaintiffs do not allege that the Bank:

- committed any acts of torture, forced disappearances or extrajudicial killings;
- directed or participated in any action that caused harm to them;
- paid hard currency to the Hussein Regime; or
- knew that hard currency was being paid to the Hussein Regime.

The Bank further demonstrated that the complaint and the documents cited therein assert that:

- The Hussein Regime was engaged in a "systemic" "campaign" of persecution against ethnic minorities and political dissidents in Iraq since long before the inception of the Programme.  (Compl. ¶¶ 51, 52.)

- AWB's alleged payments of fees to the Hussein Regime began three years <u>after</u> Plaintiff Mastafa's husband is said to have been captured by the Hussein Regime and two years <u>after</u> he is said to have been hanged.  (<u>Compare</u> Ex. 3 at xiv <u>with</u> Compl. ¶ 25.)

These alleged facts compel dismissal of the complaint for lack of constitutional standing because they affirmatively demonstrate that Plaintiffs' claimed injuries cannot be traced to Defendants' alleged conduct.  Plaintiffs' claims against the Bank also should be dismissed,

---

[1] Defined terms used herein have the same meanings as in the Bank's opening memorandum ("Mem."), filed December 14, 2007.  Numeric exhibit references are to the exhibits attached to the complaint.  Italicized terms reflect emphasis in the original.  Underlined terms reflect emphasis added.

among numerous other reasons, because Plaintiffs have not alleged—and cannot allege—facts to support their conclusory assertion that the Bank somehow aided and abetted the Hussein Regime's alleged wrongful conduct.

Plaintiffs' opposition does not compel a different conclusion. Like the plaintiffs in the related Karim action (No. 06-CV-15400), Plaintiffs misconstrue their pleading obligations and the Bank's right to dismissal of baseless claims that do not belong in this Court. (Opp. at 2-3, 22-23.) It is Plaintiffs' obligation to invoke the jurisdiction of this Court properly and to allege facts—not labels and conclusions—sufficient to raise their claimed right to relief above the speculative level.

Plaintiffs have not done so. Indeed, the vast majority of the complaint, including those paragraphs Plaintiffs cite as satisfying their pleading burden (see Opp. at 2, 8, 9), consists of legal conclusions and unwarranted deductions that cannot survive a motion to dismiss. (See Mem. at 8 & n.3.) The few facts alleged with respect to the Bank assert only that the Bank maintained the U.N. Iraq Account pursuant to its agreement with the U.N.—conduct that certainly is not actionable. (Id. at 2-3.) Plaintiffs concede as much in their opposition when they ask the Court to consider the IIC and Cole Commission Reports in determining the sufficiency of their complaint. (See Opp. at 2, 4, 5, 6, 7, 9-10, 16, 23, 32.)[2]

These reports do not save any of Plaintiffs' claims against the Bank. The Cole Commission Report does not address the Bank's conduct, and Plaintiffs do not and cannot cite anything in the IIC Report that constitutes a finding that the Bank knowingly facilitated any improper payments in connection with the Programme, much less that the Bank facilitated—

---

[2] Nothing in the Bank's pleadings before this Court constitutes an admission to any statement made in the IIC or the Cole Commission Reports, and the Bank reserves the right to object to the admissibility of these reports in any future proceedings.

knowingly or otherwise—the Hussein Regime's alleged human rights violations. To the contrary, the portion of the IIC Report quoted by Plaintiffs concluded only that the Bank "became an <u>instrument</u> for the payment" of improper surcharges on the oil side of the Programme "while doing little to <u>detect</u> or <u>prevent</u> such payments." (Opp. at 32 (quoting IIC Report at 461).) The IIC's conclusion that the Bank failed to "detect" or "prevent" the improper oil surcharges contradicts Plaintiffs' bare assertions that the Bank knowingly facilitated those surcharges and agreed with the Hussein Regime to violate international law. Indeed, the IIC Report states: "The Committee does not have evidence that [the Bank] was specifically aware of these illegal payments." (IIC Report at 452 (cited by Plaintiffs at Opp. at 7 n.8).)

In short, whether the complaint is considered on its own or in conjunction with the IIC and Cole Commission Reports, the result is the same: Plaintiffs lack standing to pursue their claims in this Court and, in any event, those claims may not be pursued against the Bank. Plaintiffs' claims against the Bank therefore should be dismissed with prejudice.

## I.   PLAINTIFFS LACK CONSTITUTIONAL STANDING

Plaintiffs lack constitutional standing because they fail to allege any injury fairly traceable to AWB's alleged payments, much less to the Bank's contractual role in maintaining the U.N. Iraq Account. (Mem. at 8-15.) Indeed, the complaint confirms that the alleged payments occurred <u>after</u> Plaintiff Mastafa's alleged injuries. (<u>Compare</u> Ex. 3 at xiv <u>with</u> Compl. ¶ 25.) This fact alone belies any assertion that Defendants' alleged conduct facilitated, contributed to, or otherwise affected Plaintiffs' asserted injuries. (<u>See</u> Mem. at 12-13.)[3]

---

[3]   Plaintiffs do not meaningfully address this point. They merely state, without citation, that the complaint "asserts that illicit payments were being made from the beginning of the Program." (Opp. at 3.) The complaint does not so allege, and the documents appended to the complaint contradict any such assertion. (<u>See</u> Ex. 3 at xiv; Compl. ¶ 33 (quoting Ex. 3 at xiv).)

3

Plaintiffs concede that they are subject to the causation requirements of Article III, but, relying primarily on Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F. Supp. 2d 289 (S.D.N.Y. 2003), contend that Article III's causation requirements are met if their "injury would not have happened in the same way, but for the actions of the Defendant." (Opp. at 12; see also id. at 14-15, 17.) This contention is unavailing.[4]

First, Plaintiffs' formulation articulates the substantive standard applied in Talisman for aiding and abetting liability under international law, not the causation requirement for standing under Article III. See Talisman, 244 F. Supp. 2d at 320-324. And while the Talisman decision may appear to elide the international aiding and abetting standard with its Article III causation analysis, see id. at 331-33, these two inquiries are analytically distinct. The standing requirements of Article III define the boundaries of the court's "constitutional *power* to adjudicate the case" and impose independent limits on federal court jurisdiction irrespective of the substantive law applied in a given case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89 (1998); see also id. at 88-102 (stressing "[t]he requirement that jurisdiction be established as a threshold matter"). Plaintiffs cannot circumvent the constitutional limitations of Article III simply by invoking formulations of secondary liability under international law.

Second, even if the aiding and abetting standard from Talisman were considered relevant to the Article III analysis, Plaintiffs have utterly failed to meet that standard. The complaint contains no allegations whatsoever regarding the manner in which the Hussein Regime expended

---

[4] Plaintiffs also quarrel with the Bank's citation to Warth v. Seldin, 422 U.S. 490 (1975), asserting that the Bank misquotes Warth and "mischaracterizes" its holding. (Opp. at 12-13.) These contentions are erroneous. First, the Bank's quotations of the causation standard articulated in Warth are correct. (See Mem. at 9, 12.) Second, the court in Greenberg v. Bush, 150 F. Supp. 2d 447 (E.D.N.Y. 2001), applied the very same formulation of Warth's causation standard in dismissing a complaint containing allegations of causation very similar to those presented here. See id. at 455; Mem. at 14 (quoting Greenberg).

4

the hard currency that it allegedly received, nor how any such expenditure contributed to (or altered the circumstances of) Plaintiffs' alleged injuries. In short, the complaint provides no factual basis upon which to infer a causal connection <u>of any kind</u> between AWB's alleged payments—much less the Bank's performance of its contractual duties—and the specific abuses alleged by Plaintiffs. Instead, the complaint confirms that no such connection exists. (<u>See</u> Mem. at 11-13.) Indeed, Plaintiffs' opposition can identify no relevant factual allegations—it cites only the complaint's conclusory, pro-forma recitation that Article III's requirements are met. (<u>See</u> Opp. at 11.) This is a far cry from the allegations in <u>Talisman</u>, which offered a detailed account of the corporate defendant's alleged extensive, direct involvement in the human rights abuses asserted in that case. (<u>See</u> Mem. at 20-21.)

Plaintiffs also rely on <u>Almog v. Arab Bank PLC</u>, 471 F. Supp. 2d 257 (E.D.N.Y. 2007), for the proposition that "[k]nowingly funding illegal activity clearly creates a causal connection under the law." (Opp. at 16-17). However, <u>Almog</u> did not address standing under Article III, and like <u>Talisman,</u> plaintiffs in <u>Almog</u> presented extremely robust allegations of causation, "provid[ing] the names of various suicide bombers and gunmen whose families received payment through the [defendant bank's] financing process . . . and whose attacks caused the injuries or deaths" at issue, and alleging "a <u>direct correlation</u>" between the number of terrorist attacks that occurred and the amount of funding provided through the defendant bank. <u>Almog</u>, 471 F.3d at 263. Nothing remotely comparable is alleged here, where the Bank is not alleged to have knowingly funded any misconduct. (<u>See</u> Mem. at 19-20.)

Plaintiffs' other cited cases are inapposite. (<u>See</u> Opp. at 14-17.) While they confirm generally that secondary liability is available under the ATS (an issue not in dispute given current Second Circuit authority), they all involve allegations of causation for which there are no

5

analogs here. Indeed, some of those cases involve claims against primary violators of international law, and none of them even purports to address standing under Article III.[5] Remarkably, Plaintiffs twice cite Bigio v. Coca-Cola Co., in which the Second Circuit dismissed an ATS claim for lack of causation where, as here, a corporate defendant's alleged misconduct post-dated the primary injurious conduct of government officials. 239 F.3d 440, 449 (2d Cir. 2000).

By contrast, the Bank's cited authorities are on point, and Plaintiffs' attempts to distinguish them, (see Opp. at 18-20), are unpersuasive. These cases all rejected for lack of Article III causation allegations, like those here, that the defendants provided only generalized

---

[5] See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 92-93 (2d Cir. 2000) (reversing dismissal of complaint on grounds of forum non conveniens; the underlying claims alleged that defendant corporation "provided money, weapons, and logistical support to the Nigerian military, including the vehicles and ammunition used in the raids on the villages, procured at least some of these attacks, participated in the fabrication of murder charges against [two local activists], and bribed witnesses to give false testimony against them"); Kadic v. Karadzic, 70 F.3d 232, 237 (2d Cir. 1995) (considering allegations that "the injuries perpetrated upon plaintiffs were committed as part of a pattern of systematic human rights violations that was directed by [defendant President of Bosnian-Serb republic] and carried out by the military forces under his command"); Filartiga v. Pena-Irala, 630 F.2d 876, 878 (2d Cir. 1980) (considering claims against Inspector General of Police in Asuncion, Paraguay, who was alleged to have tortured plaintiffs' family member to death); Eastman Kodak Co. v. Kavlin, 978 F. Supp. 1078, 1090-92 (S.D. Fla. 1997) (determining that the ATS's state action requirement was met where defendant distributor of plaintiff corporation's products in Bolivia was alleged to have conspired with members of the Bolivian justice system to incarcerate plaintiff's employee in order to extort a settlement from plaintiff).

Plaintiffs' suggestion that the Court may regard all of these inapposite authorities as having implicitly found Article III standing to exist since they proceeded to the merits of plaintiffs' claims, (Opp. at 17 n.22), is without merit. Not only would such an approach render every reported decision in the federal court system a de facto precedential ruling on Article III standing (and render superfluous any ruling in which Article III standing was found to exist), but it also would contravene the long-standing rule that "drive-by jurisdictional rulings of this sort . . . have no precedential effect." Steel Co., 523 U.S. at 91; see also Adeleke v. United States, 355 F.3d 144, 149-50 (2d Cir. 2004) (courts do not create binding precedent on questions of jurisdiction by assuming jurisdiction or passing on jurisdictional questions sub silentio); Garay v. Slattery, 23 F.3d 744, 745 n.2 (2d Cir. 1994) (citing the same rule and addressing jurisdictional challenge despite prior cases assuming jurisdiction).

financial or other support to an independent third party organization which, acting in its own discretion and pursuant to its own policies, under circumstances remote from the alleged acts of the defendants, inflicted an injury on plaintiffs. See, e.g., Dellums v. U.S. Nuclear Regulatory Comm'n, 863 F.2d 968 (D.C. Cir. 1988); Greenberg, 150 F. Supp. 2d 447, McGehee v. Albright, 210 F. Supp. 2d 210 (S.D.N.Y. 1999).[6]

In fact, Plaintiffs concede that "[t]here is no way for the Plaintiffs to know whether their spouses would have been the victims of the Hussein [R]egime without the assistance of [the Bank]." (Opp. at 3.) This statement undercuts the entire causal premise of Plaintiffs' claims against the Bank, even apart from the absence of factual allegations of "assistance," and it directly contradicts even the general, conclusory allegations of standing and causation contained in the complaint. With respect to Plaintiff Mastafa, of course, it is simply untrue.

The complaint thus falls of its own weight. Its allegations confirm that no causal relationship could possibly exist between Defendants' alleged actions and Plaintiff Mastafa's asserted injuries. As to Plaintiff Ismail, it "rel[ies] on little more than the remote possibility, unsubstantiated by allegations of fact, that [her] situation might have been better had [Defendants] acted otherwise." Warth, 422 U.S. at 507. Accordingly, Plaintiffs lack standing to sue under Article III.

---

[6] The fact that Dellums and Greenberg involved claims for equitable relief does not mitigate Plaintiffs' burden to demonstrate causation. (See Opp. at 18.) To the contrary, Warth, 422 U.S. 490, and In re African-American Slave Descendants Litigation, 304 F. Supp. 2d 1027 (N.D. Ill. 2004), aff'd in part, 471 F.3d 754 (7th Cir. 2006), confirm that the same Article III causation standard applies to suits for damages.

7

## II. PLAINTIFFS' ATS CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE THAT THE BANK VIOLATED CUSTOMARY INTERNATIONAL LAW OR A SELF-EXECUTING UNITED STATES TREATY

Plaintiffs' ATS claims fail both for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, because Plaintiffs have not alleged—and cannot allege—facts to support their conclusory assertion that the Bank was complicit in violating customary international law or a treaty of the United States. (Mem. at 16-24.) Far from providing a basis that would allow them to pursue their ATS claims against the Bank, Plaintiffs' opposition highlights the patent inadequacy and implausibility of those claims. (Opp. at 20-24.)[7]

### A. Plaintiffs Do Not—And Cannot—Allege That The Bank Aided And Abetted The Hussein Regime's Alleged Violations Of International Law

Plaintiffs argue (though they did not plead) that the Bank somehow aided and abetted the Hussein Regime's alleged conduct because the Bank was "in a unique position" to "prevent payments from being made," the Bank "failed to prevent such payments" and the Bank thereby "directly made payments, issued letters of credit for payment, and paid suppliers in recoupment for the illegal payments they made to the Hussein regime." (Opp. at 21, 22.) These facts do not plausibly support the conclusion that the Bank provided "knowing" and "substantial" assistance to the Hussein Regime in its alleged commission of international law violations.[8]

Plaintiffs' reliance on Almog is misplaced. (Opp. at 22-23.) As discussed at length in the Bank's opening brief and as noted above, the complaint in Almog alleged detailed facts regarding

---

[7] Plaintiffs do not even address the complaint's failure to plead an actionable violation of a U.S. treaty, effectively conceding the deficiency of the complaint in this regard. (See Mem. at 23.)

[8] Plaintiffs devote much of their ATS discussion to an endorsement of the federal aiding and abetting standard adopted by Judge Hall in his concurring opinion in Khulumani v. Barclay Nat'l Bank Ltd., 504 F.3d 254 (2d Cir. 2007), in lieu of the stricter international aiding and abetting standard adopted by Judges Katzmann and Korman in their opinions. (Opp. at 21-22.) This discussion is largely beside the point, as Plaintiffs have not stated an aiding and abetting claim against the Bank under either standard. (See Mem. at 18.)

8

Arab Bank's purported knowing provision of assistance to the primary perpetrators of the international law violations at issue there, as well as the effect of Arab Bank's purported assistance on those specific violations. (See Mem. at 19-20.) Plaintiffs make no attempt to address the Bank's analysis of the differences between the detailed factual allegations in Almog and the insufficient conclusory assertions contained in the complaint. Instead, they assert that the "crux" of their allegations "parallel[s] very closely to the allegations set forth in Almog" and blandly repeat their mantra that they have put Defendants on notice of the claims against them, (Opp. at 22-23), without any recognition that it is their obligation to plead the "grounds" of their "entitlement to relief." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

Plaintiffs also suggest that this case is "fairly unique" because the "facts" are documented in the IIC Report and the Cole Commission Report. (Opp. at 23.) However, as noted above, Plaintiffs do not and cannot cite anything in the IIC Report that constitutes a finding that the Bank knowingly facilitated any improper payments in connection with the Programme, much less that the Bank facilitated—knowingly or otherwise—the Hussein Regime's alleged human rights violations. The Cole Commission Report does not even address the Bank's conduct.

Finally, Plaintiffs argue that they should be permitted leave to amend because the complaint "is the first complaint filed by the Plaintiffs." (Opp. at 23.) In so arguing, Plaintiffs ignore their request that the Court consider the more than 3,000 pages that comprise the IIC Report and the Cole Commission Report, thereby effectively seeking to amend their complaint through their opposition. In any event, Plaintiffs do not even suggest that additional facts could be pled that would support their baseless claims against the Bank.

9

**B.     Plaintiffs Do Not—And Cannot—Allege That The Bank Conspired To Commit A Violation Of International Law**

With respect to their conspiracy claim, Plaintiffs again invoke the "liberal pleading standard" and assert that they have put the Bank on notice of the conspiracy claim against it. (Opp. at 23.)[9] Specifically, Plaintiffs assert that the complaint alleges (i) an association between the Hussein Regime and the Bank, and (ii) an unlawful objective between the Bank and the Hussein Regime "to fund the Hussein [R]egime with illegal kickbacks." (Id.) Yet the complaint is devoid of any facts that would support either of these propositions.

In any event, such allegations—even if they had been pled—would not state a claim against the Bank for conspiracy to commit crimes against humanity, war crimes, genocide, torture, extrajudicial killings, forced disappearances of persons and cruel, inhuman, and/or degrading treatment and/or punishment. It is not enough, as Plaintiffs contend, to assert that the Bank shared "the common objective to violate the sanctions scheme"—itself an assertion that is not supported by any facts alleged in the complaint or any of the findings contained in the IIC Report. (Opp. at 24.) To state a claim for conspiracy, Plaintiffs must allege that the Bank agreed to further the primary international law violations at issue. See Salinas v. United States, 522 U.S. 52, 63 (1997) ("The partners in a criminal plan must agree to pursue the same criminal objective[.]"). Plaintiffs effectively concede that they can make no such allegation here. (See Opp. at 23-24 (recognizing that the Bank's "motive may not have been to commit human rights abuses").) Absent the Bank's agreement to commit international law violations—which Plaintiffs cannot allege—the Bank cannot be held liable as a conspirator in the Hussein Regime's alleged international law violations.

---

[9]  Plaintiffs do not address the fact that customary international law does not recognize conspiracy liability for most of the primary violations they purport to allege. (Mem. at 22 n.14.)

### III. PLAINTIFFS' TVPA CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST THE BANK

The Bank established that Plaintiffs' TVPA claim must be dismissed because (i) the TVPA applies only to natural persons and not to corporations; (ii) the complaint does not allege—as it must—that the Bank acted under color of law; and (iii) the complaint does not allege that the Bank tortured or killed Plaintiffs' spouses (or anyone else) or that the Bank aided or abetted the Hussein Regime in doing so. (Mem. at 24-25.)

In urging the Court to reject the cases that have limited application of the TVPA to natural persons, (Opp. at 24-25), Plaintiffs simply discount the statute's legislative history. See S. Rep. No. 102-249 at 7 (1991) ("The legislation uses the term 'individual' to make crystal clear that foreign states or their entities cannot be sued under this bill under any circumstances: only individuals may be sued."); see also Arndt v. UBS AG, 342 F. Supp. 2d 132 (E.D.N.Y. 2004) (corporations "cannot be sued under the TVPA"). Further, in arguing that the Bank should be held liable under the TVPA notwithstanding that the complaint does not—and cannot—allege that the Bank acted under color of law, Plaintiffs ignore the only holding in Khulumani on which all three judges agreed—that the TVPA claim there was properly dismissed where, as here, the plaintiffs "failed to link any defendants to state aid or the conduct of state officials." 504 F.3d at 260.

Finally, Plaintiffs admit that they do not allege that the Bank tortured or killed anyone, but they persist in their assertion that the Bank can be held liable for such conduct by virtue of its provision of banking services to the U.N. in connection with the Programme. (See Opp. at 14, 25-26.) For all the reasons discussed above and in the Bank's opening brief, that contention must be rejected. (Mem. at 24-25.)

IV. **PLAINTIFFS' SUPPLEMENTAL TORT CLAIMS FAIL AS A MATTER OF LAW**

    A. **Plaintiffs Have Not Alleged—And Cannot Allege—Facts Sufficient To Assert The Supplemental Tort Claims Against The Bank**

Plaintiffs concede that they do no not seek to hold the Bank primarily liable for the Supplemental Tort Claims asserted in the complaint. (Opp. at 28 (confirming that "BNP did not itself commit the atrocities"); see also Mem. at 26-28.) Rather, like their other deficient claims against the Bank, the Supplemental Tort Claims too are predicated upon "concerted action" theories. (Opp. at 28.) As the Bank established, Plaintiffs have not alleged facts sufficient to state a claim against the Bank for aiding and abetting any of the Supplemental Tort Claims under New York law. (Mem. at 29-30.)

In response, Plaintiffs first assert that the Bank "misstate[d] the New York law governing aiding and abetting." (Opp. at 28.) However, Plaintiffs cite to the portion of the Bank's opening brief that discussed Plaintiffs' failure to allege primary liability against the Bank. (Id.; see also Mem. at 26-28 (establishing, as Plaintiffs now concede, that the complaint does not allege that the Bank is primarily liable to Plaintiffs for the Supplemental Tort Claims).) Where the Bank discussed the deficiencies in Plaintiffs' aiding and abetting theory, it cited the same three elements that Plaintiffs assert in their opposition: (i) the existence of an underlying tort; (ii) defendant's actual knowledge of the underlying tort; and (iii) defendant's provision of substantial assistance in the commission of the underlying tort. (Mem. at 29.)

Second, Plaintiffs assert that the Bank does not "challenge the first prong of the three-part test for aiding and abetting – the existence of a violation by the primary wrongdoer." (Opp. at 30.) This is simply incorrect. The Bank maintains that Plaintiffs' conclusory allegations are insufficient under Twombly to state a primary violation by the Hussein Regime. (See Mem. at 17 n.8.) Because Plaintiffs have failed to allege facts to support their conclusory allegations of

12

secondary liability, however, the Court need not answer the question whether the complaint sufficiently alleges such a primary violation.

Third, Plaintiffs assert that the knowledge requirement is satisfied because "it is not plausible" that the Bank did not know "the scope" of the "atrocities" of the Hussein Regime, which they allege "were well-known throughout the world." (Opp. at 30-31.) In other words, Plaintiffs assert that the Bank should have known of the particular alleged violations that injured them because the public purportedly "knew" generally that Saddam Hussein had committed human rights abuses in Iraq. Plaintiffs further assert that "it is at least plausible to infer" from the Bank's contractual role in maintaining the U.N. Iraq Account that "the [Bank] knew that the bribes secretly being funneled to the Iraqis could—and would—be used to facilitate the nefarious goals of Saddam Hussein." (Id. at 31.)[10] These are nothing more than assertions that the Bank had constructive knowledge, which cannot support an aiding and abetting claim under New York law. See Stutts v. De Dietrich Group, No. 03-cv-4058 (ILG), 2006 WL 1867060, at *13 (E.D.N.Y. June 30, 2006) ("New York law requires a plaintiff asserting an aiding and abetting cause of action to allege actual knowledge; constructive knowledge is insufficient"); Williams v. Bank Leumi Trust Co., No. 96 CIV 6695 (LMM), 1997 WL 289865, at *5 (S.D.N.Y. May 30, 1997) (same) (cited by Plaintiffs at Opp. at 28).[11]

---

[10] Significantly, the findings of the IIC Report contradict this inference that Plaintiffs ask the Court to draw: "The Committee does not have evidence that [the Bank] was specifically aware of these illegal payments." (IIC Report at 452 (cited by Plaintiffs at Opp. at 7 n.8).)

[11] Contrary to Plaintiffs' assertion, Stutts is directly applicable here. There, the court dismissed plaintiffs' aiding and abetting claims because "the plaintiffs failed to sufficiently allege the bank's knowledge of Hussein's primary wrongdoing." (Opp. at 31.) Plaintiffs argue that Stutts is distinguishable because the fund transfers there were "facially neutral," but the facts here are no different. The Bank's role with respect to goods delivered to Iraq under the Programme commenced only after the contract negotiation and approval process had been completed, and was limited to (i) the non-discretionary issuance of letters of credit at the
*(cont'd)*

Finally, Plaintiffs claim that they have alleged facts from which the Court can infer that the Bank substantially assisted the Hussein Regime in its supposed commission of the Supplemental Torts. (Opp. at 32-34.) But the complaint contains no such facts, (see Sections I and II, supra), and the IIC Report indicates exactly the opposite. Indeed, the portion of the IIC Report quoted by Plaintiffs supports the conclusion that the Bank took no action: "Once the surcharge scheme took root, [the Bank] itself became an instrument for the payment of millions of dollars in illegal surcharges while doing little to detect or prevent such payments." (Opp. at 32.) The conclusions that the Bank did not "detect" or "prevent" the surcharge scheme contradict any assertion that the Bank was an "active participant" in that scheme (id.), much less in the Hussein Regime's alleged tortious activity.

Nor does the Bank's failure to act provide an alternative basis for finding "substantial assistance." (Id.) Under New York law, aiding and abetting liability can be predicated on a failure to act only where the defendant had a duty to act. See Stutts, 2006 WL 1867060, at *14 n.24 ("[i]naction can only constitute substantial assistance for purposes of aiding and abetting liability where the defendant owes the plaintiff a fiduciary duty"). Plaintiffs have not alleged—and cannot allege—that the Bank owed any such duty to them.[12]

_____

*(cont'd from previous page)*
U.N.'s direction in favor of Iraq's chosen suppliers for the U.N.-approved contract price, and (ii) non-discretionary payment of those letters of credit upon presentation of documents specified therein. Nothing in the complaint or the IIC Report suggests otherwise.

[12] Calcutti v. SBU, Inc., 273 F. Supp. 2d 488 (S.D.N.Y. 2003), did not, as Plaintiffs suggest, create a general "public duty." (Opp. at 32-33.) It merely determined that professionals, such as attorneys and accountants, may have a "professional duty to the public not to mislead when making statements or submissions disseminated to, or affecting, the public." Calcutti, 273 F. Supp. 2d at 496; see also id. at 494 ("without an independent duty to disclose, mere inaction does not amount to substantial assistance for purposes of determining aider and abettor liability").

B.  **The Applicable Statutes Of Limitations Bar Plaintiffs' Supplemental Tort Claims**

Plaintiffs do not dispute that the statutes of limitations applicable to the Supplemental Tort Claims have all expired, but instead argue that their claims are subject to "equitable tolling." (Opp. at 34.) Even if equitable tolling were appropriate—and it is not—Plaintiffs were required to assert their claims "within two years after such actual or imputed discovery," which the complaint alleges occurred in 2003, (Compl. ¶ 23), "or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer." N.Y. C.P.L.R. § 203. Plaintiffs did not do so, and the Supplemental Tort Claims thus are time-barred. (Mem. at 30.)

## CONCLUSION

For all the foregoing reasons and for the reasons set forth in the Bank's opening memorandum, the complaint should be dismissed with prejudice.

Dated: April 7, 2008
Washington, DC

/s/ Jennifer L. Spaziano
Robert S. Bennett
Alan Kriegel
Jennifer L. Spaziano (pro hac vice)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue NW
Washington, DC 20005
(202) 371-7000
Email: jen.spaziano@skadden.com

William J. O'Brien, III
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Email: wobrien@skadden.com

Attorneys for Defendant BNP Paribas

15