UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAADYA MASTAFA and KAFIA ISMAIL,

Plaintiffs,

v.

AUSTRALIAN WHEAT BOARD LIMITED aka
AWB LIMITED, AWB (U.S.A.) LIMITED, and
BANQUE NATIONALE DE PARIS PARIBAS,

Defendants.

No. 07 CIV 7955 (GEL)

ECF CASE

REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS AWB LIMITED'S AND AWB (U.S.A.) LIMITED'S
MOTION TO DISMISS THE CLASS ACTION COMPLAINT WITH PREJUDICE

Robert H. Baron
Timothy G. Cameron
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants AWB Limited and
AWB (U.S.A.) Limited*

April 7, 2008

# TABLE OF CONTENTS

Page

Table of Authorities ...................................................................................................................... ii

Explanation of Citation Forms .......................................................................................................v

Preliminary Statement ....................................................................................................................1

Argument ........................................................................................................................................2

I.    Plaintiffs Lack Article III Standing ......................................................................................2

II.   Plaintiffs Fail to State an ATS or TVPA Claim and Thus the Court Lacks Subject
      Matter Jurisdiction .............................................................................................................4

      A.   Plaintiffs Fail to State an ATS Claim .........................................................................4

      B.   Plaintiffs Fail to State a TVPA Claim ........................................................................6

III.  The Doctrine of Forum Non Conveniens Requires Dismissal .............................................8

      A.   Plaintiffs' Choice of Forum in the U.S. Deserves Little Deference ...........................8

      B.   Australia Is an Adequate Alternative Forum ..............................................................9

      C.   Private Interest and Public Interest Factors Both Support Dismissal ......................10

           1.   Private Interest Factors Strongly Favor Dismissal .........................................10

           2.   Public Interest Factors Also Strongly Favor Dismissal ..................................10

IV.   The Doctrine of International Comity Requires Dismissal .................................................12

V.    The Act of State Doctrine Requires Dismissal ..................................................................13

VI.   Plaintiffs' State Law Claims Must Be Dismissed .............................................................14

Conclusion ...................................................................................................................................15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

Abbas v. Dixon, 480 F.3d 636 (2d Cir. 2007) ............................................................................. 14

Almog v. Arab Bank, PLC, 471 F. Supp. 2d 257 (E.D.N.Y. 2007) ...................................... 4, 6

Arndt v. UBS AG, 342 F. Supp. 2d 132 (E.D.N.Y. 2004) ....................................................... 12

Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 (1964) .................................................... 14

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) ...................................................... 6, 7

Bi v. Union Carbide Chemicals & Plastics Co., 984 F.2d 582 (2d Cir. 1993) .......................... 12

Bigio v. Coca-Cola Co., 239 F.3d 440 (2d Cir. 2001) .......................................................... 3, 7

Bowoto v. Chevron Corp., No. C 99-02506-SI, 2006 WL 2604591 (N.D. Cal.
Aug. 22, 2006) ........................................................................................................................ 7

Bowoto v. Chevron Corp., No. C 99-02506 SI, 2007 WL 2349341 (N.D. Cal.
Aug. 14, 2007) ........................................................................................................................ 7

Braka v. Bancomer, S.N.C., 762 F.2d 222 (2d Cir. 1985) ...................................................... 13

Cyberscan Technology, Inc. v. Sema Ltd., No. 06 Civ. 526 (GEL), 2006 WL
3690651 (S.D.N.Y. Dec. 13, 2006) ...................................................................................... 12

Dellums v. U.S. Nuclear Regulatory Commission, 863 F.2d 968 (D.C. Cir. 1988) ................... 4

Doe v. Holy See (State of Vatican City), 17 A.D.3d 793 (3d Dep't 2005) .............................. 14

Eastman Kodak Co. v. Kavlin, 978 F. Supp. 1078 (S.D. Fla. 1997) ........................................ 3

Greenberg v. Bush, 150 F. Supp. 2d 447 (E.D.N.Y. 2001) ...................................................... 3

In re Sinaltrainal Litigation, 474 F. Supp. 2d 1273 (S.D. Fla. 2006) ....................................... 6

Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424 (D.N.J. 1999) ............................................. 12

Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1995) ........................................................................ 3

Khulumani v. Barclay National Bank Ltd., 504 F.3d 254 (2d Cir. 2007) ..................... 4, 5, 6, 12

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ................................................................. 3

ii

Norex Petroleum Ltd. v. Access Industries, Inc., 416 F.3d 146 (2d Cir. 2005) ...... 9

Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F. Supp. 2d 289
(S.D.N.Y. 2003) ...... 3, 9, 13

Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26 (1976) ...... 2, 3

Sosa v. Alvarez-Machain, 542 U.S. 692 (2004) ...... 12

Stutts v. The De Dietrich Group, No. 03-CV-4058 (ILG), 2006 WL 1867060
(E.D.N.Y. June 30, 2006) ...... 5, 15

W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., International, 493
U.S. 400 (1990) ...... 14

Warth v. Seldin, 422 U.S. 490 (1975) ...... 4

Wiwa v. Royal Dutch Petroleum Co., No. 96 CIV. 8386 (KMW), 2002 WL
319887 (S.D.N.Y. Feb. 28, 2002) ...... 3

**Statutes and Rules**

28 U.S.C. § 1331 ...... 4

28 U.S.C. § 1332 ...... 4

28 U.S.C. § 1350 ...... passim

28 U.S.C. § 1350 (note) ...... passim

28 U.S.C. § 1367 ...... 15

Fed. R. Civ. P. 12(b)(1) ...... 1, 4

Fed. R. Civ. P. 12(b)(6) ...... 1, 4

**Other Authorities**

76 U.S.L.W. 3405 (U.S. Jan. 10, 2008) (No. 07-919) ...... 5

Paul A. Volcker, Chairman, Independent Inquiry Committee Into the United
Nations Oil-For-Food Programme, Manipulation of the Oil-For-Food
Programme by the Iraqi Regime (October 27, 2005) ...... v, 1, 8, 9

iii

S. Rep. No. 102-249 (1991)..............................................................................7

The Honourable Terence RH Cole AO RFD QC, Report of the Inquiry into
certain Australian companies in relation to the UN Oil-for-Food Programme
(November 2006)....................................................................................passim

iv

# EXPLANATION OF CITATION FORMS

The following citation forms are used in this reply memorandum of law:

- "ATS" for references to the Alien Tort Statute, 28 U.S.C. § 1350.

- "Cole Report" for references to The Honourable Terence RH Cole AO RFD QC, Report of the Inquiry into certain Australian companies in relation to the UN Oil-for-Food Programme (November 2006).

- "Complaint" or "Mastafa ¶ [ ]" for references to the Class Action Complaint filed in this matter, dated September 11, 2007.

- "Memorandum" or "Mem." for references to the Memorandum of Law in Support of Defendants AWB Limited's and AWB (U.S.A.) Limited's Motion to Dismiss the Class Action Complaint with Prejudice, dated December 14, 2007.

- "Murray Decl." for references to the Declaration of John T. Murray in Support of Plaintiffs Opposition to Defendants AWB Limited, AWB (U.S.A.) Limited, and BNP Paribas Motions to Dismiss, dated February 22, 2008.

- "OFFP" for references to the U.N. Oil-for-Food Programme.

- "Opposition" or "Opp." for references to the Memorandum of Law in Opposition to Australian Wheat Board's Motion to Dismiss, dated February 22, 2008.

- "Phillips Decl." for references to the Declaration of Craig Phillips in Support of Defendants AWB Limited's and AWB (U.S.A.) Limited's Motion to Dismiss the Class Action Complaint with Prejudice, dated December 14, 2007.

- "Supplemental Phillips Declaration" or "Supp. Phillips Decl." for references to the Supplemental Declaration of Craig Phillips in Further Support of Defendants AWB Limited's and AWB (U.S.A.) Limited's Motion to Dismiss the Class Action Complaint with Prejudice, dated April 7, 2008.

- "TVPA" for references to the Torture Victim Protection Act of 1991, 28 U.S.C. § 1350 (note).

- "Volcker Report" for references to Paul A. Volcker, Chairman, Independent Inquiry Committee into the United Nations Oil-For-Food Programme, Manipulation of the Oil-For-Food Programme by the Iraqi Regime (October 27, 2005).

Defendants AWB Limited and AWB (U.S.A.) Limited ("AWB USA") (collectively, "AWB") submit this reply memorandum of law in support of their motion to dismiss the Complaint with prejudice, pursuant to Rules 12(b)(1) and (6), Fed. R. Civ. P.[1]

## PRELIMINARY STATEMENT

AWB's Memorandum identified the fatal defects in plaintiffs' Complaint. Their Opposition fails to address those defects, most notably their failure to plead facts showing that AWB, by paying fees imposed by the Iraqi Government on sales of wheat, caused (or knowingly conspired in) the Hussein regime's commission of crimes against Iraqi citizens. The Complaint should be dismissed with prejudice[2] for the following reasons:

- **Article III Standing:** Plaintiffs lack Article III standing to sue because they cannot establish a causal connection between defendants' alleged conduct and their asserted injury. As plaintiffs admit, the Hussein regime committed the alleged human rights violations that underpin this case long before, as well as during and after, the OFFP. AWB's alleged payments of fees imposed by the Iraqi Government and/or the Proposed Class Period.

- **Jurisdiction/ATS/TVPA:** Subject matter jurisdiction over plaintiffs' claims is premised solely on 28 U.S.C. § 1350. Because plaintiffs fail to (and cannot) state a claim under either the ATS or the TVPA, there is no federal subject matter jurisdiction and the Complaint must be dismissed.

- **Inconvenient and Inappropriate Forum:** Iraqi plaintiffs' choice of a forum to which they have no connection should be rejected here. AWB cannot compel the testimony in this Court of the numerous Australian witnesses needed to defend against plaintiffs' claims; Australia is an adequate alternative forum (indeed, here it is superior) and has a far greater interest in this dispute than the U.S.; and this forum is both inconvenient and inappropriate for the adjudication of the claims asserted against AWB.

---

[1] AWB also joins in those arguments applicable to it that are set forth in the reply memorandum of law filed by defendant BNP Paribas ("BNP") in support of BNP's motion to dismiss.

[2] Plaintiffs request leave to amend their Complaint if the Court finds it inadequate. (Opp. 27, 35.) The defects described herein, however, cannot be cured by amendment and this Court should deny plaintiffs' request. Plaintiffs have already tried to remedy the deficiencies in their Complaint by purporting to incorporate the entirety of the Cole and Volcker Reports – more than 3,000 pages of additional material. (See id. 2 n.1.)

- **State Law Claims**: Plaintiffs fail to state a claim under New York law.

## ARGUMENT

### I.    PLAINTIFFS LACK ARTICLE III STANDING.

Plaintiffs concede that Article III standing requires a causal connection between their asserted injury and defendants' alleged conduct (Opp. 4) – i.e., that AWB's alleged fee payments caused the torture and murder of plaintiffs' spouses. See Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976). Plaintiffs claim that "AWB paid the Hussein regime in excess of $200,000,000 in illegal kickbacks when it knew . . . that the funds would be used to finance the wide-scale human rights abuses complained of in this action." (Opp. 1-2 (emphasis added).) There is absolutely no basis, in the Complaint or otherwise, for that bald assertion.

First, the Complaint alleges no facts suggesting "AWB knew that it was funding activities that amount[ed] to gross human rights violations". (Id. at 6.) The Complaint alleges only that AWB (1) paid the Iraqi Government certain fees imposed on suppliers under the OFFP (Mastafa ¶¶ 32-33, 35-36), (2) purportedly knew that the purpose of those fee payments was for the Iraqi Government to obtain "hard currency" (id. ¶ 40), and (3) purportedly understood that fee payments of "hard currency" to the Iraqi Government were prohibited by U.N. sanctions (id. ¶ 42). The Complaint contains no factual allegations showing that AWB's alleged fee payments were in any way related to, let alone caused, plaintiffs' injuries. (Mem. 7.)

Second, Plaintiffs concede that "[their] husbands were killed by the Hussein regime" (Opp. 10) – a third party not before this Court. Plaintiff Mastafa's husband died two years before AWB's alleged fee payments to the Hussein regime commenced and, indeed, before AWB Limited even existed as a corporate entity. (See Mastafa ¶ 25, Ex. 3; see also Phillips Decl. ¶¶ 6-21.) Plaintiff Ismail's husband died eight months after the end of "the period in which the Defendants were [allegedly] supporting the Saddam Hussein regime through kickbacks".

2

(Mastafa at 2, ¶¶ 26, 69.) Thus, the Complaint itself establishes that the independent actions taken by the Iraqi Government against its own citizens both pre-dated and post-dated – and were wholly unrelated to – the alleged "kickback scheme" at issue in this case. (Mem. 7-9.)[3] The fact that the Hussein regime engaged in those actions before, during, and after – i.e., regardless of – the pendency of the OFFP, and the alleged fee payments by AWB, breaks the causal chain between defendants' alleged acts and plaintiffs' alleged injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Simon, 426 U.S. at 44-46. (Mem. 7-8.)[4] Indeed, "[i]t would be difficult to imagine a clearer example of a third party's actions breaking the causal chain". Greenberg v. Bush, 150 F. Supp. 2d 447, 455 (E.D.N.Y. 2001). (Mem. 8.)[5]

Third, Plaintiffs say they need only show "that the injury would not have occurred in the same way but for the conduct of the defendant". (Opp. 4-5, 9.)[6] They are wrong. To establish standing, plaintiffs must show that there is a substantial probability their injuries would not have occurred absent defendants' conduct. (Mem. 9.)[7] Plaintiffs cannot come close to

---

[3] Plaintiffs argue that "the fact that abuses were happening prior to AWB's financial contributions to the Hussein regime goes to showing that AWB knew of the activities that it was supporting by funding the Hussein regime". (Opp. 8.) That is absurd. Neither AWB's sales of wheat to Iraq under the OFFP, nor the alleged fee payments by AWB, could have caused any alleged abuses that preceded those sales or fee payments.

[4] Plaintiffs' citations to Bigio v. Coca-Cola Co., 239 F.3d 440 (2d Cir. 2001), Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1995), and Wiwa v. Royal Dutch Petroleum Co., No. 96 CIV. 8386 (KMW), 2002 WL 319887 (S.D.N.Y. Feb. 28, 2002) (see Opp. 7-8), are off the mark. None of those cases addresses Article III standing. Rather, they all address jurisdiction and liability under the ATS. AWB discusses plaintiffs' claims of aiding and abetting liability under the ATS below. (See infra pp. 4-6.)

[5] Plaintiffs try unsuccessfully to distinguish Greenberg on the basis that it involved claims seeking equitable relief for an action by a government entity and, therefore, merged "causation" and "redressability". (Opp. 9-10.) However, Greenberg's discussion was not limited to cases seeking equitable relief, but rather addressed "traditional standing requirements". 150 F. Supp. 2d at 454-55.

[6] The cases cited by plaintiffs (Opp. 5, 9) do not support their argument. Article III standing was not even at issue in Eastman Kodak Co. v. Kavlin, 978 F. Supp. 1078 (S.D. Fla. 1997). Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F. Supp. 2d 289 (S.D.N.Y. 2003), nowhere establishes, or even suggests, the standard for which plaintiffs cite it.

[7] See Simon, 426 U.S. at 45 (standing will not exist where the plaintiffs use "[s]peculative

making the required showing. The Complaint alleges no facts even suggesting that, absent AWB's alleged fee payments, plaintiffs would not have been harmed by the Hussein regime's "wide-scale campaign of violence throughout the far corners of Iraq". (Opp. 11.) Nor could it. Any such assertion would be rank speculation, unprovable and utterly implausible. Therefore, plaintiffs lack standing, and their claims must be dismissed. See Dellums v. U.S. Nuclear Regulatory Comm'n, 863 F.2d 968, 974, 980 (D.C. Cir. 1988). (Mem. 9.)[8]

## II. PLAINTIFFS FAIL TO STATE AN ATS OR TVPA CLAIM AND THUS THE COURT LACKS SUBJECT MATTER JURISDICTION.

Subject matter jurisdiction over plaintiffs' claims depends solely on 28 U.S.C. § 1350.[9] Plaintiffs fail to (and cannot) state a cognizable claim under either the ATS or TVPA. Therefore, their ATS and TVPA claims must be dismissed, Fed. R. Civ. P. 12(b)(6), and there is no federal subject matter jurisdiction in this case, Fed. R. Civ. P. 12(b)(1). (See Mem. 22-23.)

### A. Plaintiffs Fail to State an ATS Claim.

Plaintiffs do not dispute that, in order to proceed with an ATS claim, they must plead a violation of the law of nations for which defendants can be held responsible. If that requirement is met, this Court may exercise its discretion to recognize a federal common law cause of action to provide a remedy for that alleged violation. See Khulumani v. Barclay Nat'l Bank Ltd., 504 F.3d 254, 266-68 (Katzmann, J.), 284-85 (Hall, J.), 308-11 (Korman, J.) (2d Cir.

---

[8] Plaintiffs try to distinguish Dellums on the ground that it "is referring to the Plaintiffs' burden when the Plaintiffs seek specific damages in the form of an injunction or other similar equitable relief". (Opp. 10.) Dellums is not so limited. It stands for the general proposition that, to establish standing, a plaintiff must show "the injury would abate" but for the defendant's challenged conduct. 863 F.2d at 980. Almog v. Arab Bank, PLC, 471 F. Supp. 2d 257 (E.D.N.Y. 2007), on which plaintiffs rely, is irrelevant here. As they acknowledge (see Opp. 10 & n.9), Almog does not address Article III standing.

inferences" to connect their alleged injury "to the challenged actions"); Warth v. Seldin, 422 U.S. 490, 507 (1975) (the plaintiffs cannot establish standing by relying on the "remote possibility, unsubstantiated by allegations of fact, that their situation might have been better had [the defendants] acted otherwise").

[9] Plaintiffs do not dispute that 28 U.S.C. §§ 1331 and 1332 do not provide a basis for federal subject matter jurisdiction here. (Mem. 23 n.37.) Nor do they dispute that they cannot bring their New York state law claims under the ATS. (Id. 23-24 n.39.)

2007).[10]  (Mem. 22.)  Plaintiffs' conclusory allegations of AWB's secondary liability for acts allegedly committed by the Hussein regime do not state a claim against AWB for a violation of customary international law.[11]  Plaintiffs invoke a standard for ATS aiding and abetting liability proposed in Judge Hall's Khulumani concurrence:  knowingly and substantially assisting in the commission of an act that violates a clearly established international law norm.  (Opp. 25-26.)  They then claim to have met that test by alleging that "AWB knowingly made direct payments to the Hussein regime", which "was openly conducting the atrocities complained of in the Class Action Complaint".  (Id. 26.)  Plaintiffs are wrong.  Their ATS claims must be dismissed.

Furst, as plaintiffs recognize (see id. 25), a majority of the Khulumani panel agreed that ATS aiding and abetting liability attached only "when the defendant (1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the purpose of facilitating the commission of that crime".  504 F.3d at 277 (Katzmann, J.); see id. at 333 (Korman, J.).  Plaintiffs' allegations do not pass that test.  (Mem. 24-26.)  Second, plaintiffs do not meet the standard advanced by Judge Hall, which was "designed to capture the case of a principal tortfeasor who seeks assistance from a defendant to commit an act that violates international law norms, such as the extrajudicial killing of an opposition political figure".  Khulumani, 504 F.3d at 289.  The Complaint includes no factual allegations that AWB knowingly and substantially assisted the Hussein regime's alleged crimes,

---

[10] Defendants in Khulumani have filed a petition for a writ of certiorari to the Supreme Court, seeking review of the Second Circuit's decision.  See 76 U.S.L.W. 3405 (U.S. Jan. 10, 2008) (No. 07-919).  The United States has submitted a brief as amicus curiae in support of the petitioners.

[11] Plaintiffs incorrectly assert that "AWB does not challenge . . . the existence of a violation by the primary wrongdoer".  (Opp. 33 n.17.)  In its Memorandum, AWB argued that plaintiffs "fail to plead a factual predicate for any of the alleged human rights violations that underlie their claims".  (Mem. 3; see also id. 23 n.38.)  Plaintiffs' failure to plead a primary violation of customary international law precludes them from asserting a secondary violation by AWB.  See Stutts v. The De Dietrich Group, No. 03-CV-4058 (ILG), 2006 WL 1867060, at *11 (E.D.N.Y. June 30, 2006).  (Mem. 23 n.38.)

5

and plaintiffs' unsupported legal conclusions are plainly insufficient. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). (Mem. 24 & n.41.) Under either standard, plaintiffs have not pleaded facts that come close to establishing aiding and abetting liability. (Mem. 27.)[12]

Plaintiffs' assertion that they "have alleged sufficient facts for conspiracy and accomplice liability under the ATS" (Opp. 27) is also wrong. First, the Complaint cannot meet the Bell Atlantic standard simply by alleging that defendants acted "as a part of a conspiracy" with the Hussein regime or "as an accomplice" to the regime (Mastafa ¶ 53). See Bell Atl. 127 S. Ct. at 1964-65. (Mem. 28-29.) Second, the Complaint does not allege "an association between the Hussein regime and AWB . . . to fund the Hussein regime with illegal kickbacks". (Opp. 28.) Plaintiffs do not and cannot make any factual allegations linking AWB's alleged fee payments to the Hussein regime's alleged human rights violations (see supra pp. 2-4) and fail to state a claim based on any conspiracy theory. See In re Sinaltrainal Litig., 474 F. Supp. 2d 1273, 1296 (S.D. Fla. 2006). Third, a plaintiff cannot plead accomplice liability simply by asserting that it "is akin to aiding and abetting liability" (Opp. 28), and in any event, plaintiffs have not adequately alleged aiding and abetting liability. (See supra pp. 4-6.)

B.     **Plaintiffs Fail to State a TVPA Claim.**

Plaintiffs do not dispute that their TVPA claim against AWB rests on the theory that AWB aided and abetted (or is otherwise secondarily liable for) the Hussein regime's acts. (Mem. 29.) However, plaintiffs not only fail to plead facts showing that AWB aided and abetted the Hussein regime's alleged crimes, but their TVPA claim has several fatal defects. (Id.)

---

12 Almog (Opp. 10 & n.9) is not instructive here. Almog was decided before the Second Circuit recognized aiding and abetting liability in the ATS context, see Khulumani, see Khulumani, 504 F.3d at 260 (per curiam opinion), and does not apply either standard articulated in Khulumani. Moreover, the Almog plaintiffs made detailed factual allegations to support their aiding and abetting claims, see Almog, 471 F. Supp. 2d at 260-65, 290-93 – something plaintiffs here have plainly failed to do and cannot conceivably do.

First, plaintiffs do not (and cannot) make any factual allegation that AWB "acted under color of law" for purposes of the TVPA. (Id.) The Complaint's boilerplate pleading (Mustafa ¶ 144) is insufficient. See Bell Atl., 127 S. Ct. at 1964-65. (Mem. 29-30.) Plaintiffs' attempt to replead this claim in their Opposition, alleging that the Hussein regime could not have tortured and killed their spouses without AWB's alleged fee payments. (Opp. 30.) Not only is such speculation absurd on its face and demonstrably false (see supra pp. 2-4), it is also insufficient to state a claim under the TVPA. Plaintiffs must allege, in more than conclusory fashion, that AWB acted together with Iraqi officials or with significant aid from the Iraqi Government to commit torture and extrajudicial killings. Cf. Bigio, 239 F.3d at 448-49. (Mem. 30 & n.42.) Plaintiffs have not alleged any such thing, and plainly cannot do so.

Second, the plain language of the TVPA authorizes suits only against "individuals", not corporations such as AWB Limited and AWB USA. (Mem. 30.) It is irrelevant whether, "[u]nder traditional common law claims, corporations are held accountable for their actions in the same fashion [as] individuals". (Opp. 29.) Despite plaintiffs' attempt to dismiss the legislative history (id.), Congress made it "crystal clear" that only individuals (i.e., natural persons) may be sued, see S. Rep. No. 102-249, at 7 (1991). (Mem. 30 & n.43.) Thus, "the better line of cases" (Opp. 28) – including decisions from several courts in this Circuit – holds that corporations are not subject to suit under the TVPA. (Mem. 30 & n.44.)[13]

Third, plaintiffs have not exhausted their remedies in Iraq. (Id. 31.) Plaintiffs assert that no such requirement exists in this case because New York was "the center of conduct"

---

[13] Plaintiffs' attempt (Opp. 29) to find support in Bowoto v. Chevron Corp., No. C 99-02506 SI, 2007 WL 2349341 (N.D. Cal. Aug. 14, 2007), for holding corporations liable under the TVPA is ludicrous. In a prior order, the Bowoto court had already flatly rejected that very argument. See Bowoto v. Chevron Corp., No. C 99-02506-SI, 2006 WL 2604591, at *1-*2 (N.D. Cal. Aug. 22, 2006) ("The Court concludes that Congress intended only that the TVPA reach natural persons, not corporations.")

7

for their claims. (Opp. 30.) That is false. Plaintiffs cannot establish that any U.S. conduct caused, or was even plausibly related to, their injuries. (See supra pp. 2-4 and infra p. 8.)[14]

## III. THE DOCTRINE OF FORUM NON CONVENIENS REQUIRES DISMISSAL.

Plaintiffs do not dispute that the following three-step inquiry determines whether a case should be dismissed on forum non conveniens grounds. (See Mem. 9-17; Opp. 11-20.) Each step strongly favors dismissal of this action in favor of an Australian forum.

### A. Plaintiffs' Choice of Forum in the U.S. Deserves Little Deference.

Plaintiffs do not dispute that this Court should accord little deference to a foreign plaintiff's choice of a U.S. forum – regardless of any alleged international law violations. (See Opp. 15-18.) Though plaintiffs argue that New York and Iraq are the "two core centers of operative facts in this case", [15] they ignore the facts that (1) all of AWB's decisions were made in Australia; (2) each of AWB's contracts with the Iraqi Grain Board during the OFFP was submitted, in Australia, to Australia's Department of Foreign Affairs and Trade ("DFAT"); and (3) each export from Australia pursuant to those contracts was subsequently approved in Australia by Australia's Minister of Foreign Affairs. (Cole Report Vol. 2 ¶¶ 11.52, 11.62-11.65, 12.4, 12.86; Volcker Report 253.) Thus, plaintiffs' assertion that Australia is "wholly unrelated to the events of this case" (Opp. 12) is frivolous. Plaintiffs are obviously forum shopping, and

---

[14] Plaintiffs also claim that "Iraq is not a feasible forum at this stage for this litigation due to the lack of security and lack of established rule of law". (Opp. 30.) At the same time, they acknowledge that Iraq's judiciary is "up and running" (id. 17) and insist that they may seek "redress for the Hussein regime's direct atrocities against them in the Iraqi judicial system or some other system of reparations established by the Iraqi government" (id. 21). Plaintiffs cannot have it both ways. They have failed to exhaust their remedies, and for that additional reason, this Court should decline to hear their TVPA claim.

[15] Plaintiffs' contention that "AWB went as far as to set up a New York office with its primary purpose to conduct business related to the [OFPP]" (Opp. 17) is plainly false. The New York office of the Australian Wheat Board (and later AWB Limited and AWB USA) opened for unrelated reasons in 1983, thirteen years before the commencement of the OFFP. (Supp. Phillips. Decl. ¶¶ 5-9.)

their choice of forum should be rejected.[16]

## B.    Australia Is an Adequate Alternative Forum.

Plaintiffs concede that "Australia is generally recognized as an adequate forum due to its independent and impartial judiciary" (id. 14-15), and they do not dispute that several potential claims exist under Australian law (Mem. 13; Phillips Decl. ¶¶ 47-48). Plaintiffs argue, however, that Australia is not an adequate forum in this case because an Australian court would (1) lack "a jurisdictional basis for the subject matter of Plaintiffs' claims" (Opp. 12-13, 15) and (2) fail to "recognize the gravity of the Plaintiffs' claims" (id. 13-14). Plaintiffs are wrong.

While plaintiffs argue that "the events leading to the torts occurred in New York and Iraq and the effects were felt in Iraq" (id. 12), their claims turn on events that occurred in Australia – as the Cole and Volcker Reports make clear (see supra p. 8; see also Cole Report Vol. 2 ¶¶ 11.32-11.73; Volcker Report 311-25). An Australian court would certainly have jurisdiction. (See Supp. Phillips Decl. ¶ 23.)[17] Plaintiffs offer no support, and we are aware of none, for their insulting suggestion that an Australian court would fail to recognize the gravity of, or provide redress for, human rights violations. (Opp. 13-14; see also Phillips Decl. ¶¶ 47-49.) Australia is clearly an adequate alternative forum in this case. See, e.g., Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 158 (2d Cir. 2005). (Mem. 12 & n.19.)[18]

---

[16] Plaintiffs claim "the sweeping assumption that Plaintiffs are forum shopping is unfounded and inappropriate". (Opp. 17.) Yet they do not dispute that, by filing in the U.S., plaintiffs (1) avoid the "loser pays" model for awarding costs and attorneys' fees, (2) take advantage of the presumed generosity of U.S. juries, (3) exploit AWB's likely unpopularity (as an alleged aider and abettor of the Hussein regime) before a U.S. jury, and (4) impose great expense and inconvenience on AWB. (Mem. 11-12.)

[17] Plaintiffs concede that "if these wrongs occurred within the borders of Australia, [they] would have an alternative forum." (Opp. 12.) It is absurd to suggest, in this factual setting, that AWB engaged in actionable conduct but none of that conduct occurred within Australia. (See supra p. 8.)

[18] Plaintiffs' citation of dicta in Talisman (Opp. 13-14) is unavailing. The plaintiffs in Talisman did not contest, and the court assumed, that Canada would be an adequate alternative forum, despite the absence of causes of action for international law violations. See Talisman, 244 F. Supp. 2d at 337-38.

## C.    Private Interest and Public Interest Factors Both Support Dismissal.

### 1.    Private Interest Factors Strongly Favor Dismissal.

Plaintiffs argue that private interest factors favor the U.S. because "New York is much closer and more convenient than Australia to most witnesses and documentary evidence that will likely be located in New York, Iraq and Europe". (Opp. 18.) That is demonstrably false. First, by far the majority of likely witnesses and the overwhelming preponderance of documentary evidence are in Australia, where AWB Limited is located. (Mem. 14 & n.23.) Indeed, there are at least 130 witnesses located in Australia who (1) may be required to testify in order to adjudicate this suit fairly but (2) could be compelled to testify at a trial only by an Australian court and only in an Australian court. (Id. 14-15 & nn. 24-25.)[19] Second, plaintiffs concede that litigating this case in Australia "would be cheaper and more convenient for AWB", and they do not claim that it would be more expensive or less convenient for the other parties. (Opp. 19.) Nor could they. Plaintiffs must retain foreign counsel in either the U.S. or Australia (Mem. 15) and can arrange funding for the litigation in either country (Supp. Phillips Decl. ¶¶ 16-20). Private interest factors strongly favor dismissal in favor of an Australian forum.

### 2.    Public Interest Factors Also Strongly Favor Dismissal.

Plaintiffs argue that public interest factors favor the U.S. because (1) this case arises out of the "abuse of the [OFFP], which was located in New York", so administrative difficulties and jury duty "would be no different" from this Court's other complex litigation; (2) "this case is international in nature and thus there is no one locality where the claims should clearly be brought", and (3) "[t]his case does not require that the court apply a foreign state's laws". (Opp. 19-20.) Plaintiffs are wrong. Even if the Complaint alleged conduct plausibly

_____

[19] See Supplemental Phillips Declaration ¶¶ 10-14 for an (inexhaustive) list of such witnesses.

connected to plaintiffs' injuries (and it does not), such conduct would have occurred in Australia and Iraq – not in New York. (See supra pp. 2-4, 8-9.) Plaintiffs should bring their claims in Australia.

Moreover, the interests alleged by plaintiffs pale in comparison to Australia's overriding interest in having its courts adjudicate whether Australian corporations and government officials complied with the law in connection with the OFFP. First, during the Class Period, the conduct complained of by plaintiffs was undertaken either by the Australian Wheat Board, a statutory authority of the Australian Government, or by AWB Limited, which exercised a statutory monopoly right to export bulk wheat from Australia. (Mem. 16.) Consequently, any claims concerning the Australian Wheat Board or AWB are of fundamental interest to Australia. (Id.) Second, governmental and regulatory bodies in Australia (including the Cole Commission, the Task Force, and the Australian Securities and Investments Commission[20]) have investigated or are investigating matters pertaining to AWB's involvement in the OFFP, and civil proceedings related to those same matters are pending in Australia. (Id.)[21] Third, plaintiffs' claims raise questions about the approval of the wheat contracts at issue (including the actions of DFAT and the export consents granted by the Australian Minister of Foreign Affairs (see supra p. 8)) that are integral to AWB's defense. Such questions – which involve the conduct, knowledge and potential liability of the Australian Government – can be adjudicated only by an Australian court. Thus, the public interest factors, along with the rest of the forum non conveniens inquiry,

---

[20] The Australian Securities and Investments Commission, the Australian analogue to the U.S. Securities and Exchange Commission, has initiated civil suits related to the OFFP in Australian state court against six former directors and officers of AWB. (Supp. Phillips Decl. ¶ 15.)

[21] Plaintiffs suggest that the U.N. Secretary-General has called upon this Court to adjudicate matters brought before it regarding the OFFP. (Opp. 20.) In fact, in the statement cited by plaintiffs, the U.N. Secretary-General expressed a "hope" that "national authorities . . . will take action, where appropriate, against companies falling within their jurisdiction". (Murray Decl. Ex. 7.) Australian authorities are doing just that, and their primary jurisdiction over Australian citizens can hardly be doubted.

strongly favor dismissal in favor of an Australian forum.[22]

## IV.    THE DOCTRINE OF INTERNATIONAL COMITY REQUIRES DISMISSAL.

Plaintiffs advance several meritless arguments why this case does not implicate the comity doctrine. First, Plaintiffs argue that this suit would not prevent plaintiffs (or other Iraqis) "from seeking redress for the Hussein regime's direct atrocities against them in the Iraqi judicial system or some other system of reparations established by the Iraqi government". (Opp. 21.) That does not alter the fact that this Court could hamper Iraq's efforts to address the legacy of the Hussein regime by adjudicating such claims itself. (Mem. 19.) Second, plaintiffs contend that AWB's corporate activities "do not deserve to fall under the rubric of international comity". (Opp. 21.) Courts regularly dismiss cases involving corporate action on comity grounds.[23]

Third, plaintiffs argue that this Court would contravene "established principles of international law" (without naming any) by dismissing jus cogens violations on comity grounds. (Id. 21-22.) To the contrary, courts have recognized that ATS claims, including those alleging jus cogens violations, may be dismissed on grounds of international comity,[24] one of the prudential principles limiting the availability of relief in federal courts for violations of customary international law.[25] Fourth, plaintiffs claim that a U.S. court should adjudicate this case because the U.N. Secretary-General "has called on member states to apply [their] applicable laws to corporations who acted illegally within the framework of the [OFFP]". (Id. 22.) However, here

---

[22] Another fact favoring dismissal is that Australian courts are far less congested than this Court. (Supp. Phillips Decl. ¶¶ 21-22.) See also Cyberscan Tech., Inc. v. Sema Ltd., No. 06 Civ. 526 (GEL), 2006 WL 3690651, at *12-*13 (S.D.N.Y. Dec. 13, 2006) ("Court congestion is of course always a concern in the Southern District of New York").

[23] See, e.g., Bi v. Union Carbide Chems. & Plastics Co., 984 F.2d 582, 586 (2d Cir. 1993); Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 490-491 (D.N.J. 1999).

[24] See Iwanowa, 67 F. Supp. 2d at 490-491; see also Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004). (Mem. 17 & n.27.)

[25] See Khulumani, 504 F.3d at 261-62 (per curiam opinion); Sosa v. Alvarez-Machain, 542 U.S. 692, 761 (2004) (Breyer, J., concurring in part and concurring in the judgment). (Mem. 17 & n.28.)

it is Australia to which that statement appropriately applies. (See supra p. 11 & n.21.) The Complaint does not allege any U.S. conduct that is plausibly connected to plaintiffs' injuries, and Australia has in fact taken steps to investigate and address AWB's involvement in the OFFP. (See supra pp. 2-4, 8-11.)[26]

## V.    THE ACT OF STATE DOCTRINE REQUIRES DISMISSAL.

Plaintiffs' claims would require this Court to rule on the legality of actions taken by Australia as both a party to, and regulator of, the contracts at issue. First, plaintiffs argue that the Act of State doctrine "does not apply to this case because AWB's actions occurred in Iraq and New York and the effects were felt in Iraq". (Opp. 23.)[27] That is false. To the extent that any wheat supply contracts about which plaintiffs complain were executed between March 12, 1998, and July 1, 1999, those contracts were negotiated, concluded, drafted, and approved by representatives of the governments of Australia and Iraq entirely outside of the U.S. – in Australia and Iraq. (Mem. 21.) Second, plaintiffs contend that "the Court may make factual findings that suggest that contracts at issue are illegal, but the legality of the contracts is not the issue of this case". (Opp. 24.) That, too, is false. The alleged fee payments at issue were part of export contracts between AWB and the Iraqi Government. (Mustafa ¶¶ 31-36.) Such contracts were reviewed by DFAT, required and received the approval of the U.N. 661 Committee, and were the subject of export consents granted by the Australian Minister of Foreign Affairs. (See supra p. 8.) The legality of those contracts, and the "official enactment[s] of Australia"

---

[26]  Talisman is yet again inapposite. In that case, the defendant "ask[ed] th[e] court to grant comity with regard to Sudan's allegedly genocidal acts" and "would [have] required[d] plaintiffs to seek justice from the very regime that [was] conducting a genocidal campaign against them". 244 F. Supp. 2d at 342-43. AWB makes no such request; it urges comity in light of the efforts of the current Iraqi Government to address the legacy of the Hussein regime. (Mem. 17-19.)

[27]  Plaintiffs also suggest that AWB's actions may fall into a "commercial activity exception" to the Act of State doctrine. (Opp. 23.) The Second Circuit has not adopted such an exception. See Braka v. Bancomer, S.N.C., 762 F.2d 222, 225 (2d Cir. 1985).

approving them (Opp. 24), are the issue in this case. Under the Act of State doctrine, a U.S. court cannot decide the legality of those approvals. See Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401 (1964) (quoted at Opp. 22). Plaintiffs' claims should therefore be dismissed.[28]

## VI.    PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED.

First, while plaintiffs do not dispute that the limitations periods for their state law claims have expired (Mem. 32), they argue that the claims are nevertheless timely because the statutes of limitations should be tolled until the publication of the Cole Report on November 24, 2006 (Opp. 32). That is nonsense. Contrary to plaintiffs' contention (id. 32), AWB's mere nondisclosure to plaintiffs, with whom AWB is not alleged ever to have communicated, of its alleged complicity in "the bribe scheme" is not a basis for equitable tolling. See Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007); Doe v. Holy See (State of Vatican City), 17 A.D.3d 793, 795-96 (3d Dep't 2005) (cited at Opp. 32). Moreover, plaintiffs admit that they could have learned of their claims in 2003 "when the conduct of the Defendants was discovered by the public". (Mastafa ¶ 23.) Plaintiffs' claims are time-barred. (Mem. 33.)

Second, plaintiffs contend that they have adequately pleaded aiding and abetting liability under New York law by alleging that AWB (1) knew of the Hussein regime's atrocities and (2) "substantially assisted" in their commission by paying "over $221.7 million in illicit fees". (Opp. 33-35.) The Complaint, however, does not make any factual allegation supporting a "link between the bribes [AWB] paid to the corrupt Iraqi regime and the atrocities being perpetuated" (id. 34), much less AWB's actual knowledge of such a link. As "proof" that AWB "was aware of the nefarious purposes to which the funds were being put", plaintiffs point to

---

[28] Plaintiffs' reliance on W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., International (Opp. 22-24) is misplaced. In that case, "neither the claim nor any asserted defense require[d] a determination that Nigeria's contract with [the defendant] was, or was not, effective". 493 U.S. 400, 406 (1990).

14

AWB's alleged concealment of the nature of the transactions, "the long duration of the illicit scheme", "the public notoriety of Saddam's genocidal activities" and "his apparently unquenchable thirst for money". (Id.) Yet neither plaintiffs' unpleaded assertions nor their citations to the Cole Report suggest that AWB knew of any link between its alleged fee payments and the Hussein regime's alleged atrocities. (See id. 33-34.) Plaintiffs fail to (and cannot) plead such a link or AWB's knowledge of it, and thus their claims must be dismissed. See Stutts, 2006 WL 1867060, at *13.[29]

## CONCLUSION

For the foregoing reasons and those set forth in the opening Memorandum, this Court should dismiss the Complaint with prejudice.

April 7, 2008

CRAVATH, SWAINE & MOORE LLP

by

    Robert H. Baron
    Timothy G. Cameron
    Members of the Firm

    825 Eighth Avenue
    New York, NY 10019
    (212) 474-1000
    rbaron@cravath.com
    tcameron@cravath.com

    Attorneys for Defendants AWB Limited and
    AWB (U.S.A.) Limited

---

[29] Plaintiffs do not dispute that, if their federal law claims are dismissed, this Court should decline to exercise pendent jurisdiction over their state law claims under 28 U.S.C. § 1367. (Mem. 31-32 n.47.)